# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHEET METAL WORKERS** | : | |
| **LOCAL 441 HEALTH & WELFARE** | : | |
| **PLAN, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **NO. 04-5898** |
| | : | |
| **GLAXOSMITHKLINE, PLC, et al,** | : | |
| **Defendants** | : | |
| | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                    **November 2, 2009**

This is a putative class action brought by indirect purchasers of Wellbutrin SR. Before the Court is defendants' motion for judgment on the pleadings (Docket # 221), in which they assert that because plaintiffs cannot state a cause of action under the laws of their respective home states, their claims must be dismissed. A resolution of this issue should precede the issues of class certification and summary judgment. For the reasons set forth below, I will grant defendants' motion as to all claims asserted under New York law, grant defendants' motion as to the consumer protection claims asserted under Illinois law, and deny defendants' motion as to the unjust enrichment claims asserted in Alabama and Illinois. I will grant plaintiffs leave to amend their complaint to allege causes of action in those states where reimbursement claims for Wellbutrin SR were made.

## I. BACKGROUND

GlaxoSmithKline, PLC and SmithKline Beecham Corporation d/b/a GlaxoSmithKline

(collectively, "GSK") manufacture and sell Wellbutrin SR, a drug used to treat depression.[1] Plaintiffs A.F. of L.-A.G.C. Building Trades Welfare Plan, IBEW-NECA Local 505 Health & Welfare Plan, MC-UA Local 119 Health and Welfare Plan, Sheet Metal Workers Local 441 Health and Welfare Plan, Sidney Hillman Health Center of Rochester, Inc., and United Food Commercial Workers Unions and Employers Midwest Health Benefits Fund (collectively, the "End-Payor Plaintiffs") are "indirect" purchasers of Wellbutrin SR. End-payors are the last parties in the chain of a drug's distribution and include consumers, health care benefit plans, health maintenance organizations, health insurers, hospitals, nursing homes, and self-insured employers. In contrast to direct purchasers, end-payors do not purchase the drug in question directly from GSK.

In this putative class action, the End-Payor Plaintiffs allege that: (1) GSK unlawfully extended its monopoly over Wellbutrin SR by making fraudulent assertions to the United States Patent and Trademark Office and by engaging in "sham" litigation against generic drug manufacturers seeking to market less expensive versions of the drug; and (2) because the litigation delayed the market entry of generic versions of Wellbutrin SR, the class members were forced to pay unnecessarily high prices for the drug because no generic alternatives were available for nearly two years after GSK's patent monopoly would have expired. Because they are not "direct purchasers" and therefore cannot bring a claim for damages under the Sherman

_____

[1]    Wellbutrin SR is a sustained release drug using the active ingredient bupropion hydrochloride. Defendant markets Wellbutrin SR in 100 mg, 150 mg, and 200 mg dosage strengths. The 200 mg strength is not at issue in this case.

Antitrust Act,[2] the End-Payor Plaintiffs bring claims under the antitrust statutes of twenty-four jurisdictions[3] and the consumer protection statutes of forty-four jurisdictions,[4] as well as unjust enrichment claims under the laws of all fifty states.[5]

On May 18, 2009, GSK filed this Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(2).[6]  In the Motion, GSK argues that the End-Payor Plaintiffs lack Article III standing and that because standing is a threshold issue, the Court

---

[2]     Under Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), an indirect purchaser cannot bring a damages claim under federal law based on an alleged antitrust violation.  As discussed in greater detail later in this Memorandum, some states permit indirect purchasers to recover for antitrust violations under their state antitrust statutes, while other states have adopted the Illinois Brick rule barring indirect purchaser claims.

[3]     In the Amended Complaint, the End-Payor Plaintiffs bring claims under the antitrust statutes of the following jurisdictions: Arizona, California, the District of Columbia, Florida, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[4]     The End-Payor Plaintiffs bring claims under the consumer protection statutes of the following jurisdictions: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and West Virginia.

[5]     In connection with their class certification motion, the End-Payor Plaintiffs have stated that they are not seeking to certify any unjust enrichment claims at this time.  See End-Payor Pls.' Resp. 12.  Nevertheless, because of the "hypothetical possibility on this Motion the Court may rule that a named plaintiff failed to state a claim under any state consumer protection or antitrust statute," id. at 12-13, the End-Payor Plaintiffs' Response also addresses GSK's arguments as to why the unjust enrichment claims should be dismissed.

[6]     Where, as here, a defendant has filed an answer to the complaint, a plaintiff's failure to state a claim may be raised through a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(h)(2)(B).

must rule on the instant Motion prior to ruling on the pending Motions for Class Certification

and for Summary Judgment. GSK maintains that the entire action is subject to dismissal because

no single End-Payor Plaintiff has a valid claim under the laws of its home state: either Alabama,[7]

Illinois,[8] or New York.[9] Two recent decisions of this court have addressed similar issues. On

April 15, 2009, Judge Brody issued a Memorandum and Order granting GSK's motion and

dismissing the entire "end-payor" complaint without prejudice. In re Flonase Antitrust Litig.,

610 F. Supp. 2d 409 (E.D. Pa. 2009). On July 30, 2009, Judge McLaughlin issued a

Memorandum and Order granting GSK's motion in part and dismissing certain "end-payor"

claims for failure to state a claim. In re Wellbutrin XL Antitrust Litig., 2009 U.S. Dist. LEXIS

66676 (E.D. Pa. July 30, 2009). The decisions are addressed at length in the body of this

Memorandum.


## II. LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c) is governed by the same standards as a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). See, e.g., Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir.

1991). Accordingly, the Court must accept all allegations of the Complaint as true and draw all

---

[7] A.F. of L.-A.G.C. Building Trades Welfare Plan, IBEW-NECA Local 505 Health & Welfare Plan, MC-UA Local 119 Health and Welfare Plan, and Sheet Metal Workers Local 441 Health and Welfare Plan are the End-Payor Plaintiffs based in Alabama.

[8] United Food Commercial Workers Unions and Employers Midwest Health Benefits Fund is the End-Payor Plaintiff based in Illinois.

[9] Sidney Hillman Health Center of Rochester, Inc. is the End-Payor Plaintiff based in New York.

reasonable inferences in favor of the End-Payor Plaintiffs.  Id.  To survive the instant Motion, the

End-Payor Plaintiffs "must allege facts that 'raise a right to relief above the speculative level on

the assumption that the allegations in the complaint are true (even if doubtful in fact).'"

Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (citations omitted in original) (quoting

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).


## III.  DISCUSSION

In response to the GSK's Motion, the End-Payor Plaintiffs contend that GSK's challenge

to "standing" is not an Article III challenge at all, but rather an argument that the End-Payor

Plaintiffs cannot state a claim for relief under the laws of the states in which they reside.  They

argue that because they may assert claims under the laws of all states in which their members

purchased Wellbutrin SR, GSK's motion must fail.[10]  Finally, they allege that, even if their claims

are limited to those arising from the laws of their "home states" (Alabama, Illinois, and New

York), the Motion must be denied because they state valid claims under the laws of those three

states.  I find that (1) the standing issue must be addressed prior to the determination of class

certification, (2) the plaintiffs may assert claims under the laws of the states in which their

members purchased Wellbutrin, and (3) all state claims except the unjust enrichment claims

arising under Alabama and Illinois law are dismissed.

---

[10]     Although an "end-payor" is not necessarily a welfare benefit plan, all named End-Payor Plaintiffs are welfare benefit plans.  As noted above, the named End-Payor Plaintiffs have never purchased Wellbutrin SR directly from GSK.  Because GSK argues that the End-Payor Plaintiffs may not raise any claims other than those under the laws of their home states, the Motion does not address the question of whether the End-Payor Plaintiffs would fail to state a claim based on the laws of the many states in which their members purchased Wellbutrin SR.

### A. Standing vs. Failure to State a Claim

The preliminary question is whether GSK's Motion—which is premised on its assertion that the End-Payor Plaintiffs "cannot state causes of action under [the laws of New York, Alabama, and Illinois],"—properly presents an issue of Article III standing. As the Third Circuit has explained, the question of whether a plaintiff can state a claim is distinct from the question whether a plaintiff lacks Article III standing. See Pitt News v. Fisher, 215 F.3d 354, 360 (3d. Cir. 2000) ("[O]ur determination of the likelihood of success on the merits of the case is a separate inquiry from the threshold issue of Article III standing. To demonstrate its standing to sue, a plaintiff must only allege that they have [sic] suffered sufficient injury to comply with Article III's 'case or controversy' requirement."); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n.2 (1998) ("[T]he Article III requirement of remediable injury in fact . . . has nothing to do with the text of the statute relied upon."); Long Term Care Partners, LLC v. United States, 516 F.3d 225, 241 (4th Cir. 2008) ("Article III limits federal court jurisdiction to 'cases or controversies,' U.S. Const. art. III, § 2, not 'cases or controversies that will be decided in the plaintiff's favor,' and whether a litigant has a sufficient personal stake in a suit is a different question than whether that litigant has stated a cause of action."). In order to meet the requirements for Article III standing, plaintiffs must show: (a) that they have suffered an injury in fact; (b) that there is a causal connection between the injury and the conduct complained of; and (c) that a favorable decision likely will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

However, the Third Circuit's decision in Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169-70 (3d Cir. 1987) clearly states that when the named plaintiff lacks a cause of action,

the Court should dismiss the action before proceeding to class certification. In Zimmerman, the plaintiff brought a putative class action against various cable television companies after the companies sent settlement demand letters to persons whom they accused of stealing cable programs. Id. at 1164-66. The district court dismissed the RICO claim against the defendants, and on appeal, the Third Circuit found that the plaintiff could not recover under RICO without an alleged injury to his property. Id. at 1169. The plaintiff, however, argued that "had the class been certified, class members who had paid money might have been located and persuaded to come forward as representatives" and that the district court erred by dismissing the complaint before considering the merits of class certification. Id. The Third Circuit rejected that argument, finding "no abuse of discretion in the district court's refusal to consider certification of a class before determining whether the named plaintiff, and a fortiori any putative class which the named plaintiff might properly seek to represent, had a federal cause of action." Id. at 1170.

Relying on Zimmerman, Judge Brody found in Flonase that "[e]ven if class certification is 'logically antecedent' to analyzing Plaintiffs' standing to bring claims under the laws of states where the named Plaintiffs did not suffer injury, it is still appropriate to analyze whether a named plaintiff has a cause of action under each claim before deciding whether to certify a class." Flonase, 610 F. Supp. 2d at 414.[11] Judge Brody held specifically that "at least one named

---

[11]     In Flonase, Judge Brody declined to apply the so-called "Ortiz exception," in which courts decide whether to certify a class before they address Article III standing issues. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) (explaining that a court may reach a class certification question first if it is "logically antecedent" to any standing question); Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002) ("We understand Ortiz to rest on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because '[a] properly certified class has a legal status separate from and independent of the

Plaintiff must have a cause of action on a claim for that claim to survive a motion to dismiss."
Id.  Judge McLaughlin similarly ruled that a standing analysis should not be deferred until after
class certification.  See Wellbutrin XL, 2009 U.S. Dist. LEXIS 66676 at *30-31.

Whether the GSK's motion addresses standing or failure to state a claim, the Court must
consider it before ruling on the class certification and summary judgment motions.  It is within
the Court's discretion, pursuant to Zimmerman, to ensure that the named plaintiffs state a cause
of action before allowing the parties to engage in the extensive and costly process of discovery.


### B.  Standing Analysis

Because the standing issue must be determined at this stage of litigation, the relevant
question becomes where the End-Payor Plaintiffs may bring their claims. Although courts are
split on this issue, the division appears to be whether the "injury" occurs in the location where
Wellbutrin was purchased and the overcharge took place, see Ferrell, 2004 U.S. Dist. LEXIS
15127, at *12-13, or is limited to the place where economic impact of that overcharge is felt, see
Rezulin, 392 F. Supp. 2d at 611 & n 85.  Economic impact and personal injury are assumed in
those states where plaintiffs reside or have a principal place of business.

### 1.  Standing In the States Where Members Purchased Wellbutrin

The End-Payor Plaintiffs argue that because they are attempting to recover for
reimbursements made to pharmacies for portions of what was paid on behalf of their members,
their injuries are not confined to the "home states" where they operate, but rather include all

---

interest asserted by the named plaintiff.'" (quoting Whitlock v. Johnson, 153 F.3d 380, 384 (7th
Cir. 1998))).  In response to the Motion, however, the End-Payor Plaintiffs do not argue that the
Court should apply the Ortiz exception.

states in which their members purchased Wellbutrin SR (i.e., the states where the "transaction" occurred).[12]  They maintain that because they purchased or made reimbursements for Wellbutrin SR on behalf of members residing in twenty-nine states,[13] they have potential causes of action under the laws of those states.

Judge McLaughlin accepted this argument in Wellbutrin XL, explaining that the end-payors in that case had standing to raise claims in states where their members purchased the drug:

> The named plaintiffs have identified an injury in fact that is fairly traceable to conduct taking place in states where their members purchased Wellbutrin XL. Those injuries would be redressed by a favorable determination under the laws of the states where their members purchased Wellbutrin XL.  The elements of a standing analysis of the plaintiffs' claims have clear connection to the states where the plaintiffs themselves are located and the states where their members made purchases of Wellbutrin XL.  Therefore, plaintiffs[] have standing to assert claims in those states.

2009 U.S. Dist. LEXIS 66676, at *34-35.

---

[12]	The parties agree that Pennsylvania's choice of law rules apply to this action. Under Pennsylvania law, the law of the jurisdiction with the most significant interest in the litigation generally applies.  See, e.g., Foulke v. Dugan, 187 F. Supp. 2d 253, 257 (E.D. Pa. 2002).  Among the factors relevant to this inquiry are "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, or place of business or incorporation of the parties; and (4) the place where the relationship between the parties is centered."  Id. (citing Restatement (Second) of Conflict of Laws § 145).  Given the fact that the alleged injury occurred in each of the fifty states, and given each state's strong interest in protecting its own consumers (but a far weaker interest in protecting consumers from other states), see In re Relafen Antitrust Litig., 221 F.R.D. 260, 277 (D. Mass. 2004), it is clear (and in the context of this Motion, the parties do not dispute) that the law of a particular state will govern any overcharge injury arising in that state.  See id. (discussing Pennsylvania's "functional" choice of law approach and rejecting the argument that a single state's law could be applied to out-of-state sales of the drug).

[13]	The states are: Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, North Carolina, Nevada, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, West Virginia, and Wisconsin.

In <u>Ferrell v. Wyeth-Ayerst, Labs., Inc.</u>, 2004 U.S. Dist. LEXIS 15127, at *12-13 (S.D. Ohio June 30, 2004), the district court explained why the end-payors were not limited to standing in their home states:

> [T]he Complaint alleges that the Funds have paid (or co-paid) for Premarin on behalf of their members residing in various states. The Court rejects [the defendant's] argument that they lack standing to prosecute claims anywhere but in their 'home' states, because the purchase of Premarin—the critical event causing the alleged antitrust injury—did not take place only in Illinois or Minnesota. The actual purchase allegedly took place in the various states where the Funds' members reside.

This approach was also followed in <u>In re Terazosin Hydrochloride Antitrust Litig.</u>, 220 F.R.D. 672, 681 (S.D. Fla. 2004), where the district court rejected the argument that an end-payor in a pharmaceutical antitrust action was limited to standing in its home state of Wisconsin. There, the court noted that "other courts have recognized the propriety of basing class eligibility on the state where the patient resides, as opposed to the state where the pharmacy or insurance company is located." <u>Id.</u> Instead, the Court allowed the end-payor to proceed under the laws of all states in which it made reimbursements. <u>Id.</u>

Other courts have reached the opposite conclusion, finding that an end-payor is limited to a cause of action in the state where it has its principal place of business. <u>See</u> <u>In re OSB Antitrust Litig.</u>, 2007 U.S. Dist. LEXIS 56617, at *40-42 (E.D. Pa. Aug. 3, 2007) (dismissing indirect purchaser claims brought under the state antitrust laws of Arizona, New Mexico, and South Dakota because no end-payor plaintiff resided in those states);[14] <u>In re Ditropan XL Antitrust</u>

---

[14] GSK's reliance on <u>In re OSB</u> appears misplaced, however, because the district court found that the plaintiffs had not alleged injury in the three states and therefore did not state a claim on their own behalf. In contrast, the End-Payor Plaintiffs in this case <u>do</u> allege injury in multiple states.

Litig., 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing indirect purchaser claims in twenty-four states where no named plaintiff resided in those states or allegedly purchased the drug there);[15] In re Rezulin Prods. Liab. Litig., 392 F. Supp. 2d 597, 611-12 & n.85 (S.D.N.Y. 2005) (applying New York law to a putative class action brought by a health plan with members in various states because "[t]he only injury asserted here—namely the loss [the plan] allegedly suffered when it overpaid for diabetes drugs—occurred in New York"). Because the End-Payor Plaintiffs are bringing claims on behalf of themselves and not their members, GSK argues that their injuries are confined to the states from which they issued the reimbursement checks. Cf. Caproni v. Prudential Sec., Inc., 15 F.3d 614, 619 (6th Cir. 1994) ("[T]o the extent that Caproni became a poorer woman because of her transactions with Sullivan, she became a poorer Kentuckian.").[16]

I find that the theory recognizing a cause of action only in those states where the economic impact of the overcharge is felt is unduly narrow. I adopt the view that a plan's claim arises where the overcharge occurs, and recognize that each plan may have a cause of action in

---

[15]     It is unclear the extent to which Ditropan supports GSK's position. From the Ditropan court's discussion, it is unclear whether the named health care plan plaintiffs were attempting to claim injury for reimbursements made outside their home state. The end-payor plaintiffs urged the district court to apply the Ortiz exception, but it is unclear what, if any, other arguments they made in response to the motion to dismiss. See 529 F. Supp. 2d at 1107 ("Indirect Purchaser Plaintiffs do not assert there is basis to confer standing on them to bring claims based on the state law of states in which they do not reside, but rather, argue that the determination of standing is premature prior to class certification."). After declining to apply the Ortiz exception, the district court stated only that "Plaintiffs bear the burden of demonstrating standing. They have not done so here." Id. (citation omitted).

[16]     Caproni and several other cases cited by GSK all involve securities fraud claims and follow the rule that a cause of action accrues where the fraud's impact is felt, generally the plaintiff's residence.

multiple states.

It remains an issue that the Plaintiffs' Amended Complaint currently does not contain even a single allegation that any named End-Payor Plaintiff sent a reimbursement into a particular state. Without specific allegations that the End-Payor Plaintiffs sent reimbursements into particular states, GSK maintains that the Court must presume that any alleged injuries occurred only in the "home states" of Alabama, Illinois, and New York. See Flonase, 610 F. Supp. 2d at 415 ("The Plaintiffs have alleged injury, but have not tied this injury to any particular state(s). At this stage, I will infer that each named Plaintiff can establish enough contacts in the state where they reside or have a principal place of business to allege injury under that state's law. In other words, I will infer that the named Plaintiffs have alleged particularized and personal injury under the laws of the states where they have a principal place of business.").

While the End-Payor Plaintiffs have, in their response to the instant Motion, identified the specific states in which they are claiming injury, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 176, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).[17] Plaintiffs are therefore granted leave to amend their complaint to allege injury in the states where their members purchased Wellbutrin.

### 2. Claims Under the Laws of the End-Payor Plaintiffs' "Home States"

#### a. Antitrust Claims

---

[17] The End-Payor Plaintiffs argue that if the Court views the Amended Complaint's failure to identify specific states as a pleading defect, they could remedy the defect by amending their pleading again. They argue that because GSK has had their claims data for several years, it would not be prejudiced since it has had the information upon which the amended allegations would be based.

### i. New York

The End-Payor Plaintiffs concede that they cannot maintain a class action under New York's antitrust statute, the Donnelly Act, N.Y. Gen. Bus. Law § 340, because class actions are prohibited for claims arising under that statute. See, e.g., Sperry v. Crompton Corp., 863 N.E.2d 1012, 1017 (N.Y. 2007) (affirming the dismissal of a class action bringing Donnelly Act claims).[18]

### ii. Alabama and Illinois

The End-Payor Plaintiffs do not bring antitrust claims under the laws of Alabama or Illinois.

### b. Consumer Protection Claims

### i. New York

The End-Payor Plaintiffs argue that they have stated a claim under New York's consumer protection act, N.Y. Gen. Bus. Law § 349. Because New York does not prohibit class actions

---

[18]     New York Civil Practice Law and Rules § 901(b) provides that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." Because the Donnelly Act, which is silent on the question of class recovery, requires the award of treble damages for any violation, class actions are not available to recover the Donnelly Act's treble damages "penalty." Sperry, 863 N.E.2d at 1017.

Although the End-Payor Plaintiffs concede that section 901(b) forecloses their ability to maintain a Donnelly Act class action, the Supreme Court has granted certiorari in a recent decision of the Second Circuit finding that section 901(b) is in fact a bar to a class action in federal court. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 549 F.3d 137 (2d Cir. 2008), cert. granted, 129 S. Ct. 2160 (2009). The question presented is: "Does a state statute limiting the availability of class actions in state courts restrict a federal court's power to certify a class under Federal Rule of Civil Procedure 23 in an action where jurisdiction is based on diversity of citizenship?" Brief for Petitioner, 2009 U.S. S. Ct. Briefs LEXIS 513 (July 10, 2009).

under section 349 where the class members seek only actual (as opposed to minimum or punitive) damages, the End-Payor Plaintiffs argue that they are not barred from bringing a class action for actual damages in this case. See, e.g., In re Auto. Refinishing Paint Antitrust Litig., 515 F. Supp. 2d 544, 551 (E.D. Pa. 2007); Leider v. Ralfe, 2004 U.S. Dist. LEXIS 15345, at *27-28 (S.D.N.Y. July 30, 2004); Relafen, 221 F.R.D. at 286; Cox v. Microsoft Corp., 778 N.Y.S.2d 147, 148-49 (App. Div. 2004).

Even if the End-Payor Plaintiffs are theoretically able to bring a consumer protection class action under section 349, the claim must be dismissed in this case because the alleged deceptive conduct in this case neither occurred in New York nor was directed at consumers. Numerous courts have held that the deceptive conduct giving rise to the section 349 claim must have occurred in New York state. See Leider, 2004 U.S. Dist. LEXIS 15345, at *20 ("To prevail under [section 349], a plaintiff must establish that the false advertising or deceptive practices alleged took place in New York."); Goshen v. Mut. Life Ins. Co., 774 N.E.2d 1190, 1196 (N.Y. 2002) ("To apply [section 349] to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349."). In the instant case, the End-Payor Plaintiffs have made no allegation that any deceptive conduct took place in New York. Deceptive conduct must be consumer-oriented in order to be actionable under section 349. See, e.g., Wellbutrin XL, 2009 U.S. Dist. LEXIS 66676, at *61 ("To state a claim [under section 349], a plaintiff must allege both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff." (citing Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 818 N.E.2d 1140, 1143 (N.Y. 2004))); In

re Auto. Refinishing, 515 F. Supp. 2d at 552 ("[T]o assert a claim under § 349, Plaintiff must

'charge conduct of the defendant that is consumer-oriented.'" (quoting Oswego Laborers' Local

214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995))).  The

deceptive conduct in this case—whether fraud on the patent examiners through

misrepresentations or on the federal courts through sham litigation—was not directed at

consumers.  Accordingly, the section 349 claim will be dismissed.

### ii.  Alabama

The End-Payor Plaintiffs do not bring consumer protection claims under Alabama law.

### iii.  Illinois

The End-Payor Plaintiffs concede that although they are attempting to bring a consumer

protection claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

Ill. Comp. Stat. Ann. 505/2 ("ICFA"), they may not maintain what is essentially an antitrust

claim under the ICFA.  See, e.g., Wellbutrin XL, 2009 U.S. Dist. LEXIS 66676, at *54 ("The

Court holds that the plaintiffs may not assert what are essentially antitrust claims in the guise of a

claim under the Illinois consumer protection statute."); Flonase, 610 F. Supp. 2d at 416 ("Under

Illinois law, classic antitrust claims, such as price-fixing allegations, cannot be brought under the

ILCFA." (listing cases)).

### c.  Unjust Enrichment

GSK argues that the End-Payor Plaintiffs should not be able to circumvent legislative

bars on recovery for antitrust and/or consumer protection violations by recasting their claim as

one for unjust enrichment.[19]  As a general matter, if a state (such as New York, Alabama, or

Illinois) prohibits claims against an antitrust defendant under its antitrust and consumer

protection statutes, plaintiffs foreclosed from statutory relief may be circumventing this

legislative decision by seeking equitable relief.  As one court has explained, permitting such

unjust enrichment claims "could result in restitution undermining another body of substantive

law, to the extent that the scope of antitrust laws and consumer protection statutes is designed to

permit unfettered economic activity in matters that are not within their proscription."  In re New

Motor Vehicles Canadian Exp. Antitrust Litig., 350 F. Supp. 2d 160, 209 (D. Me. 2004); see also

In re Terazosin Hydrochloride Antitrust Litig., 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001)

("State legislatures and courts that adopted the Illinois Brick rule against indirect purchaser

antitrust suits did not intend to allow 'an end run around the policies allowing only direct

purchasers to recover.'" (quoting Abbott Labs. (Ross Labs. Div.) v. Segura, 907 S.W.2d 503, 506

(Tex. 1995))).

        However, a court in this district has rejected this precise argument.  In D.R. Ward Constr.

Co. v. Rohm & Haas Co., 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006), the defendants raised the

same generalized "end run" argument GSK raises here: that unjust enrichment "is an

_____

        [19]     In a footnote, GSK also raises the argument that the End-Payor Plaintiffs have
failed to identify the states' laws of unjust enrichment under which they are proceeding, thus
requiring dismissal of the unjust enrichment claims.  Both Judge McLaughlin and Judge Brody
dismissed the unjust enrichment claims of the end-payors in Wellbutrin XL and Flonase,
respectively, for this reason.  See 2009 U.S. Dist. LEXIS 66676, at *71 ("The amended
complaint . . . does not reference any basis in law on which a claim for unjust enrichment might
proceed.  The plaintiffs fail to link their claim to the law of any particular state.  As a result of
this deficiency, the plaintiffs fail to state a cause of action under their third count."); 610 F. Supp.
2d at 419 (dismissing the unjust enrichment claim with leave to amend because the plaintiffs
failed to specify under which states' laws they brought the claim).

inappropriate attempt to circumvent the limitations of plaintiffs' statutory antitrust claims." The

district court found that:

> plaintiffs may bring independent unjust enrichment claims under Arizona,
> Tennessee, and Vermont law and that the viability of these claims does not hinge
> upon the success of the state statutory antitrust claims. The following reasons
> buttress this conclusion. First, the Tennessee Supreme Court expressly permits
> independent unjust enrichment claims by indirect purchasers, and defendants cite
> no cases under Arizona or Vermont law that preclude indirect purchasers from
> bringing unjust enrichment claims against the manufacturers of products subject
> to an alleged price-fixing conspiracy. Second, the success of plaintiffs' common
> law unjust enrichment claims should not necessarily depend upon the success of
> their state antitrust claims, particularly because the Federal Rules of Civil
> Procedure permit parties to plead claims in the alternative and because, in
> practice, equitable remedies for unjust enrichment claims are often awarded when
> state statutory claims prove unsuccessful. Third, even if an antitrust plaintiff's
> unjust enrichment claim under state law is tied to the remedies available under the
> state antitrust claim, defendants fail to analyze the statutory language of the AAA,
> the TTPA, and the VCFA to determine whether these antitrust statutes permit
> equitable remedies, such as the recovery of restitution.

Id. (citations omitted);[20] see also In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 669-71

(E.D. Mich. 2000) (rejecting the argument that an indirect purchaser claim barred by state

antitrust law cannot be maintained as an unjust enrichment claim because "courts often award

equitable remedies under common law claims for unjust enrichment in circumstances where

claims based upon contract or other state law violations prove unsuccessful"). In essence, the

---

[20] As GSK points out, however, the Court in D.R. Ward also found that even
assuming the validity of the "end run" argument, the plaintiffs still had viable unjust enrichment
claims because the three states at issue—Tennessee, Arizona, and Vermont—all permitted
antitrust claims. Thus, the court found that "an unjust enrichment claim would not circumvent
the procedural and substantive limitations of these antitrust statutes." 470 F. Supp. 2d at 507. At
least one court has found D.R. Ward distinguishable from cases where, as here, the states in
question bar antitrust recovery for indirect purchasers. See In re TFT-LCD Antitrust Litig., 599
F. Supp. 2d 1179, 1192 (N.D. Cal. 2009) (declining to follow D.R. Ward because the states at
issue barred antitrust claims for indirect purchasers and because "plaintiffs have not cited any
authority from [the states in question] holding that an indirect purchaser plaintiff may bring an
unjust enrichment claim when that same claim would be barred under state antitrust law").

End-Payor Plaintiffs argue that the lack of a statutory remedy under a particular state's law for antitrust or consumer protection violations does not create a per se rule barring unjust enrichment claims.

Aside from this generalized "end run" argument, GSK also offers specific reasons why unjust enrichment claims fail under the laws of New York, Alabama, and Illinois.

### i. New York

The End-Payor Plaintiffs apparently concede that they may not maintain an unjust enrichment claim under New York law, as they have not responded to GSK's argument that they are unable to do so. In any event, because the End-Payor Plaintiffs have no relationship with GSK, New York law likely would not permit an unjust enrichment claim in this case. Although strict privity between the plaintiff and defendant is not required to bring an unjust enrichment claim, New York courts have found numerous relationships "too attenuated" to support such a claim. See Sperry, 863 N.E.2d at 1018 (finding that, in a case where chemical producers allegedly fixed prices and overcharged tire manufacturers, consumers who purchased tires could not bring unjust enrichment claims against the chemical producers because "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support such a claim");[21] see also In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 532 (S.D.N.Y. 2008) ("[T]o state a claim for unjust

---

[21]     Moreover, the New York Court of Appeals has stated that in cases where, as here, the plaintiffs may not maintain a class action for antitrust violations, "it is not appropriate to substitute unjust enrichment to avoid the statutory limitations on the cause of action created by the Legislature." Sperry, 863 N.E.2d at 1018. While, as discussed supra, the End-Payor Plaintiffs have argued that a state's decision not to permit an antitrust claim on these facts does not create a per se bar against an unjust enrichment claim, that argument cannot succeed where the New York courts have addressed the question specifically.

enrichment [under New York law], there must be some relationship between the parties, though it need not be as close as privity of contract."); State of New York v. Daicel Chem. Indus., Ltd., 840 N.Y.S.2d 8, 12 (App. Div. 2007) (finding that the state could not bring an unjust enrichment claim on behalf of the end-users of food additives in a price-fixing case because the relationship between the additive producers and end-users was "too attenuated"). In the instant case, the end-payor—whether a consumer using the drug or a welfare benefit plan paying benefits for its members—has no relationship with GSK because it "purchases" the drug not from GSK but from a "direct purchaser," such as a national drug wholesaler.

## ii. Alabama

GSK argues that the End-Payor Plaintiffs may not maintain a class action for unjust enrichment under Alabama law because Alabama courts have "repeatedly held that such claims are unsuitable for class-action treatment." Avis Rent A Car Sys., Inc. v. Heilman, 876 So. 2d 1111, 1123 (Ala. 2003); see also White v. Microsoft Corp., 454 F. Supp. 2d 1118, 1134 n.25 (S.D. Ala. 2006) ("The Alabama Supreme Court has spoken out emphatically against certification of a class in the unjust enrichment context."). However, in Avis, the Alabama Supreme Court was interpreting its own class action rule, which like Federal Rule of Civil Procedure 23, requires a finding of predominance and superiority. That Alabama interprets its own class action certification rule as precluding certain types of claims does not mean that the same class claims would be barred in federal court. See In re Air Cargo Shipping Servs. Antitrust Litig., 2008 U.S. Dist. LEXIS 107882, at *178 (E.D.N.Y. Sept. 26, 2008) ("Where state law lacks or limits the class action device, courts have found a direct collision with Rule 23, and

permitted plaintiffs to proceed in a class." (listing authorities)).[22]  Because Alabama's class

action rule merely sets forth the procedural requirements for maintaining a class action, the Court

must follow Federal Rule 23 when deciding whether to certify a class in this case.  See In re

Katrina Canal Breaches Consol. Litig., 2009 U.S. Dist. LEXIS 69708, at *265-67 (E.D. La. Aug.

6, 2009) (explaining that because Federal Rule of Civil Procedure 23 and Louisiana's civil rule

governing class action certification are in "direct collision," the court must follow Rule 23 absent

"any substantive reason to question congressional authority or that authority delegated to the

Supreme Court to promulgate Rule 23");[23]  In re New Motor Vehicles Canadian Exp. Antitrust

Litig., 241 F.R.D. 77, 83 (D. Me. 2007) ("Mississippi does not provide for class actions in its

state courts at all.  That is Mississippi's choice to make as a matter of state procedure for its state

courts, but not for the federal courts.  The defendants have drawn to my attention no attempt by

Mississippi to limit the plaintiffs' substantive rights under Mississippi's antitrust law . . . .

Federal Rule of Civil Procedure 23 sets the procedural criteria for when class actions are

permitted in federal court and a federal judge must follow that Rule.  I conclude that a class is

---

[22]     Pursuant to the Supreme Court's decision in Hanna v. Plumer, 380 U.S. 460
(1965), where there is a "direct collision" between a state law and a federal rule of civil
procedure, a court sitting in diversity must apply the federal rule unless the rule is invalid.  See
id. at 471 ("When a situation is covered by one of the Federal Rules, the question facing the court
is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to
apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and
Congress erred in their prima facie judgment that the Rule in question transgresses neither the
terms of the Enabling Act nor constitutional restrictions.").

[23]     In reaching its decision, the court in Katrina distinguished New York's CPLR §
901(b) by stating that there was no "direct collision" between that rule and Federal Rule 23.  See
2009 U.S. Dist. LEXIS 69708, at *265-66.  As noted above, the Supreme Court has granted
certiorari to resolve that question.

properly certifiable under Federal Rule 23 to enforce Mississippi antitrust law."); 7A Charles

Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1758 (3d ed.

2005) ("The Hanna decision resolves any doubt as to the availability of a class action in a federal

court under Rule 23 in a diversity action, even in a state that does not recognize the procedure.

Federal and not local standards also will determine the various procedural elements of the class

action, such as the adequacy of representation and the manner in which the court administers the

action."). Whether or not Alabama would certify an unjust enrichment class such as this one has

no bearing on the viability the claim.[24]

Therefore, I will deny GSK's motion as to claims arising under Alabama's unjust

enrichment law.

### iii. Illinois

With respect to Illinois law, GSK reiterates that because the End-Payor Plaintiffs are

precluded from bringing statutory claims for antitrust or consumer protection violations, they

should not be permitted to circumvent statutory law by recasting their claim as one for unjust

enrichment. To support its argument, GSK relies on Bober v. Glaxo Wellcome Plc, 246 F.3d

934 (7th Cir. 2001), and Scott v. GlaxoSmithKline Consumer Healthcare, L.P., 2006 U.S. Dist.

LEXIS 18630 (N.D. Ill. Apr. 12, 2006). In Bober, the Seventh Circuit Court of Appeals affirmed

the dismissal of a plaintiff's ICFA claim on the grounds that the defendants' statements were not

---

[24] Despite Alabama's reservations about certifying unjust enrichment classes under state law, at least one federal court has certified an end-payor class bringing an unjust enrichment claim under Alabama law. See Terazosin, 220 F.R.D. at 702.

deceptive as a matter of law.  246 F.3d at 940.[25]  After dismissing the ICFA claim on the merits,

the Seventh Circuit also affirmed the dismissal of the plaintiff's unjust enrichment claim, finding

that "in the absence of any deception on the part of the defendants, the requisite violation of

fundamental principals [sic] of justice, equity, and good conscience is not present."  Id. at 943

(internal quotation marks omitted).  Likewise, in Scott, the district court dismissed the plaintiff's

ICFA claim because the complaint failed to plead the claim with the requisite particularity.  See

2006 U.S. Dist. LEXIS 18630, at *12.  Turning to the unjust enrichment claim, the court

explained, "Plaintiff does not and cannot deny that her unjust enrichment claim is predicated

upon the validity of her claim under the ICFA.  The retention of the money paid by Scott and the

potential class is only unjust if GSK committed a violation.  Since that underlying ICFA claim is

dismissed, the unjust enrichment claim must also be dismissed."  Id. at *15.

    As the End-Payor Plaintiffs point out, however, both the Bober and Smith courts

dismissed the unjust enrichment claims only after determining that the ICFA claims failed on

their merits.  The fact that courts dismissed claims for unjust enrichment after determining the

acts complained of were, as a matter of law, not deceptive does not support GSK's argument that

the absence of a valid ICFA claim for a non-merits-based reason (e.g., a statutory bar against

class actions) requires dismissal of any unjust enrichment claim.  The End-Payor Plaintiffs argue

that they, unlike the plaintiffs in Bober and Smith, have demonstrated that GSK's retention of

---

[25]     In an alternative holding, the Seventh Circuit found that the statements did not
violate the ICFA because they were authorized by federal law and therefore exempted from the
ICFA's coverage.  246 F.3d at 941 n.4, 943.

-22-

their money would be "unjust" and that the claim should be allowed to proceed on its merits.[26]

This argument is persuasive, and I will deny GSK's motion as to the unjust enrichment claims

arising under Illinois law.


## IV. CONCLUSION

Zimmerman requires analysis of the End-Payor Plaintiffs' ability to state their own claims

for relief at this stage of the litigation, rather than after class certification.

Because it is clear that the named End-Payor Plaintiffs have no statutory claims under the

laws of New York, Alabama, or Illinois, GSK's motion is granted with respect to all antitrust and

consumer protection claims, as no named End-Payor Plaintiff has such a claim. See Flonase, 610

F. Supp. 2d at 414 ("[A]t least one named Plaintiff must have a cause of action on a claim for

that claim to survive a motion to dismiss."). Furthermore, because the End-Payor Plaintiffs

concede that they may not maintain an unjust enrichment claim arising under New York law,

Sidney Hillman is dismissed from this action as a Plaintiff because there is no claim it can pursue

under New York law.[27] Therefore, I will deny defendant's motion only as to the claims for unjust

---

[26] At least one federal court has allowed an unjust enrichment claim to proceed despite the dismissal of the ICFA claim. See Strategic Reimbursement, Inc. v. HCA, Inc., 2007 U.S. Dist. LEXIS 57052, at *9-13 (N.D. Ill. Aug. 2, 2007). However, as both parties recognize, the court in Strategic Reimbursement was not faced with the "end run" argument Defendant presents here.

[27] Sidney Hillman is the only End-Payor Plaintiff that did not reimburse members for purchases outside of its home state. See End-Payor Pls.' Resp. 12-13 (explaining that all other End-Payor Plaintiffs sent reimbursements into other states). Therefore, even assuming the Court allows the other named plaintiffs to raise claims in other states, Sidney Hillman must be dismissed because it was not injured in any state aside from New York.

enrichment arising under Alabama and Illinois law. [28]

Because I recognize the plaintiffs' right to bring a cause of action in those states where overcharges for Wellbutrin took place, I will grant plaintiffs leave to amend their complaint to specify the states in which these causes of action arise. An appropriate order follows.

---

[28]     Aside from these general arguments about unjust enrichment, GSK also raises specific challenges to unjust enrichment claims under Alabama and Illinois law. However, as discussed above, I do not feel that these specific challenges carry any additional weight, as the argument about Alabama class certification is irrelevant in federal court and the cases cited from Illinois do not support GSK's argument.