## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sheet Metal Workers Local 441 Health & Welfare Plan, et al., | ) ) ) ) |
| | ) **DEFENDANTS' MOTION TO DISMISS** |
| | ) **THE CONSOLIDATED SECOND** |
| vs. | ) **AMENDED END-PAYOR CLASS** |
| | ) **ACTION COMPLAINT** |
| | ) |
| GlaxoSmithKline, PLC, et al. (End-Payor Actions) | ) Judge Lawrence F. Stengel ) ) ) |

Defendants GlaxoSmithKline, plc and SmithKline Beecham Corporation d/b/a GlaxoSmithKline (collectively, "GSK") hereby move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the Consolidated Second Amended End-Payor Class Action Complaint filed against GSK.  In support of its Motion, GSK incorporates herein the accompanying Memorandum of Law.

Respectfully submitted,

Dated:  January 11, 2010

 */s/  Arthur Makadon*
Arthur Makadon
Edward D. Rogers
Susanna R. Greenberg
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665.8500

David P. Gersch
James W. Cooper
Daniel S. Pariser
**ARNOLD & PORTER LLP**
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942.5000

*Counsel for Defendants GlaxoSmithKline, PLC and SmithKline Beecham Corp., d/b/a GlaxoSmithKline*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sheet Metal Workers Local 441 Health & Welfare Plan, et al., | ) ) ) ) Civil Action No. 2:04-cv-5898 |
| vs. | ) ) |
| GlaxoSmithKline, PLC, et al. (End-Payor Actions) | ) ) Judge Lawrence F. Stengel ) ) ) ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED END-PAYOR CLASS ACTION COMPLAINT

David P. Gersch
James W. Cooper
Daniel S. Pariser
**ARNOLD & PORTER LLP**
Washington, D.C. 20004
(202) 942-5000

Arthur Makadon
Edward D. Rogers
Susanna R. Greenberg
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

COUNSEL FOR DEFENDANTS GLAXOSMITHKLINE, PLC and
SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **INTRODUCTION** ................................................................................. 1

II.    **BACKGROUND** ................................................................................. 1

     A.    **The November 2 Order Dismissing A Majority of Claims in The End-Payor's Amended Consolidated Complaint** ....................................... 1

     B.    **The SAC** ................................................................................. 3

III.    **STANDARD OF REVIEW** .................................................................. 4

IV.    **ARGUMENT** ....................................................................................... 6

     A.    **The SAC Should Be Dismissed Because The Plans' Claims Are Governed By Their Home State Laws, Which Do Not Permit Recovery** ................................................................................. 6

         1.    The Interests of the Reimbursement States ................................ 7

         2.    The Interests of The Home States ............................................. 8

         3.    "Physical" Contacts with Relevant Jurisdictions ...................... 9

     B.    **Even If the Plans Can Invoke All State Claims in the SAC, All But One State Statutory Claim Fails on Individual State Law Grounds** ............ 11

         1.    Indirect Purchasers Cannot Bring Claims Under Four of the Antitrust and State Consumer Protection Statutes ................................... 12

         2.    Welfare Benefit Plans, Such as Plaintiffs, Cannot Bring Claims Under Four Consumer Protection Statutes ................................. 14

         3.    Plaintiffs Fail to Plead the Intrastate Conduct or Effects That Fourteen State Laws Require ...................................................... 14

         4.    Plaintiffs Do Not Allege the Type of Conduct Proscribed by Thirteen Consumer Protection Statutes .................................... 15

         5.    Allegations of Unilateral Monopolization Do Not State a Claim Under the Laws of Four Other States ....................................... 17

         6.    Plaintiffs Failed to Meet Mandatory Pre-Filing Notice Requirements of One State .................................................... 17

     **C.**     **Plaintiffs' Unjust Enrichment Claims Fail to State a Claim in All But One State** ........................................................................................................... 19

          1.     Unjust Enrichment Cannot Be Used To Circumvent A State's Adoption of *Illinois Brick* ...................................................................... 19

          2.     Plaintiffs Cannot Recover for Unjust Enrichment Under the Laws of States That Either Do Not Allow Equitable Remedies for Antitrust Violations or Do Not Allow These Plaintiffs to Recover ......... 19

          3.     An Unjust Enrichment Plaintiff Must Confer A Direct Benefit on Defendant ................................................................................................ 21

          4.     An Unjust Enrichment Plaintiff Must Not Be Too Remote from Defendant ................................................................................................ 21

          5.     An Unjust Enrichment Plaintiff Must Exhaust Remedies Against The Party With Whom It Has Privity to Recover Benefit ....................... 22

**V.**     **CONCLUSION** ......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .......................................................5, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................4, 5

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550 (E.D. Pa. 2002).........5, 23

*Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166 (3d Cir. 2005)...........................10

*California v. ARC America Corp.*, 490 U.S. 93 (1989) ........................................7

*Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) ....................................7, 8

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998) ........................5

*Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685 (3d Cir. 1989)..............................................................................6

*D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006) ..............................................................................19, 20

*In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409 (E.D. Pa. 2009) ............................2, 15

*In re K-Dur Antitrust Litig.*, No. 01-1652, 2008 WL 2660783 (D.N.J. 2008) ...................8

*Levy v. Keystone Food Prods.*, Nos. 07-5502 *et al.*, 2008 WL 4115856 (E.D. Pa. Aug. 28, 2008) ....................................................................7

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)..............9

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000) .....................................6, 10, 16

*McMahon v. Digital Equip. Corp.*, 944 F. Supp. 70 (D. Mass. 1996)..............................18

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ........................................5

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004).................................................................................20

*Provda v. Farkas*, No. 94-0084, 1995 WL 42308 (S.D.N.Y. Feb. 1, 1995).....................11

*Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007)................................4

*In re Relafen Antitrust Litig.*, 225 F.R.D. 14 (D. Mass. 2004) ............................................8

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ...........................9

*Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins., Co.*, 549 F.3d 137 (2d Cir. 2008) ..........................................................................................................12

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, plc*, No. 04-5898, 2009 WL 3617790 (E.D. Pa. Nov. 2, 2009) .............................2, 3, 8, 19

*Shields v. Consolidated Rail Corp.*, 810 F.2d 397 (3d Cir. 1987) .......................................6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008) ..............................................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................................................................14

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2004) ................................................................................................................17

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009) ...............2, 13, 14, 17

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) .............................................23

*Zabilansky v. American Bldg. Restoration Prods., Inc.*, No. 200101985, 2004 WL 2550458 (Mass. Super. Oct. 13, 2004) ........................................................................18

## STATE CASES

*City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 106 (Mass. 1987) ..........................17-18

*Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002)..................................................7

*Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) ...................................9

*Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007)...................................................7

*PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773 (Fla. 2003) ...........................17

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002)................................16

*Spring v. Geriatric Auth. of Holyoke*, 475 N.E.2d 727 (Mass. 1985)...............................18

## DOCKETED CASES

*In re: Flonase Antitrust Litig.*, No. 2:08-3301 (E.D. Pa. 2008)............................12, 13, 15

*In re: Wellbutrin XL Antitrust Litig.*, No. 2:08-2433 (E.D. Pa 2008)...............................12

## STATE STATUTES

Cal. Bus. & Prof. Code §§ 16700-16761 ...........................................................................17

Cal. Bus. & Prof. Code §§ 17200-17210 ..........................................................................17

Defendants (collectively, "GSK") submit this Memorandum of Law in support of their Motion to Dismiss the Consolidated Second Amended End-Payor Class Action Complaint (the "SAC").

## I.  INTRODUCTION

Plaintiffs' first amended complaint asserted a total of 119 state law claims.  The Court dismissed all but **two** of these claims in its November 2, 2009 Order and Opinion (the "November 2 Order") on GSK's Motion for Judgment on the Pleadings and granted plaintiffs leave to amend to assert claims under the laws of states in which Wellbutrin SR was sold to consumers who were members of the named plaintiff plans ("Plans").  In their SAC, plaintiffs assert claims under 54 state laws.

At this juncture, there are two overriding inquiries:  (1) determining, by applying well-settled choice of law principles, which state's law governs each Plan's claims; and (2) determining whether, under the applicable state's law, each Plan can recover.  Here, choice of law principles dictate that the laws of the Plans' home states (the "Home States") govern their claims.  But even assuming, *arguendo,* that the Court were to conclude otherwise and thus consider all 54 state laws individually, the Plans' claims under all but Arizona law still fail.  Before turning to a detailed discussion of these issues, we provide a brief summary of the action.

## II.  BACKGROUND

### A.  The November 2 Order Dismissing A Majority of Claims in The End-Payor's Amended Consolidated Complaint

The first amended complaint asserted claims under the antitrust laws of 24 jurisdictions and the consumer protection laws of 44 jurisdictions, and for unjust enrichment, presumably in all 50 states plus the District of Columbia.  GSK moved for judgment on the

pleadings based on the grounds that none of the Plans could state viable claims for relief under the laws of the states they had standing to invoke.

In the November 2 Order, the Court agreed with two recent decisions in this District that "it is [] appropriate to analyze whether a named plaintiff has a cause of action under each claim before deciding whether to certify a class . . . [A]t least one named Plaintiff must have a cause of action on a claim for that claim to survive a motion to dismiss." *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, plc*, No. 04-5898, 2009 WL 3617790, at *3 (quoting *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 414 (E.D. Pa. 2009) (Brody, J.) and citing *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (McLaughlin, J.)).  As a result, the Court dismissed all of plaintiffs' 68 statutory claims because the first amended complaint could not support an inference that the Plans had standing outside their home states and "[b]ecause it is clear that named End-Payor Plaintiffs have no statutory claims under the laws of [their home states]."  2009 WL 3617790, at *9.  The only claims remaining were unjust enrichment claims under the laws of two of the Plans' home states, Illinois and Alabama.

Accordingly, the Court granted the Plans leave to amend their complaint to assert claims under the laws of specific states in which their members purchased Wellbutrin SR, but not to replead any dismissed claims under the laws of their home states or of states in which they do not have purchasing members.

**B.** **The SAC**

On December 2, 2009, the Plans (consisting of the same six welfare benefit plans that filed the first amended complaint) filed the SAC,[1] alleging that, collectively, they "purchased and/or provided reimbursement for Wellbutrin SR purchases" in the following states: Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Idaho, Iowa, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, West Virginia, and Wisconsin.  (SAC ¶¶ 9-14).  In total, the SAC asserts claims under the antitrust statutes of 11

---

[1]     The named plaintiffs are:  IBEW-NECA Local 505 Health & Welfare Plan, which claims to be a welfare benefit plan located in Mobile, Alabama; Sheet Metal Workers Local 441 Health & Welfare Plan, which claims to be a welfare benefit plan located in Mobile, Alabama; MC-UA Local 119 Health and Welfare Plan, which claims to be a welfare benefit plan located in Mobile, Alabama; A.F. of L. – A.G.C. Building Trades Welfare Plan, which claims to be a welfare benefit plan located in Mobile, Alabama; United Food and Commercial Workers Union and Employers Midwest Health Benefits Fund, which claims to be an employee welfare benefit plan and employee benefit plan located in Cook County, Illinois; and Sidney Hillman Health Center of Rochester, Inc., which claims to be a multi-employer employee welfare benefit plan but does not allege its location.  The one individual plaintiff named in the first amended complaint, Joanne Gaddy, was eliminated when Plaintiffs conceded that she failed to state a claim under the laws of her home states of Illinois. (*See* Plaintiff's Reply Memorandum of Law in Support of End-Payor Plaintiffs' Motion for Class Certification at 76 n.22 (Docket No. 66) (E.D. Pa. Feb. 23, 2007).)

Although the Court clearly did not grant plaintiff Sidney Hillman leave to amend its claims, it has done so in the SAC and now purports to have members in other states, which contradicts prior pleadings that informed this Court's decision.  *See Sheet Metal Workers*, 2009 WL 3617790, at *9 n. 27 ("Sidney Hillman is the only End-Payor Plaintiff that did not reimburse members for purchases outside of its home state.  Therefore, even assuming the Court allows the other named plaintiffs to raise claims in other states, Sidney Hillman must be dismissed because it was not injured in any state aside from New York.") (citation omitted).  This plaintiff was not granted leave to amend and should not be permitted to advance its claims further, though the reasons for their original dismissal are re-asserted in this motion for the Court's reference.

states, the consumer protection statutes of 16 states, and unjust enrichment claims under the common law of 27 states.[2]

The SAC contains no other allegations pertaining to the Plans, nor does it contain new factual allegations regarding GSK.  Although it alleges that GSK's conduct affected "interstate and foreign commerce" (SAC ¶ 164) and that GSK "manufactured and sold substantial amounts of Wellbutrin SR in a continuous and uninterrupted flow of commerce across state and national lines and throughout the United States" (SAC ¶ 163), like the first amended complaint, the SAC does not allege that GSK's conduct occurred in or substantially affected the intrastate commerce of any of the 27 states whose laws are invoked.  In addition, the Plans do not contend that GSK engaged in any unfair or deceptive conduct, or made any misrepresentation, directed to consumers or to the plaintiffs.

## III.    STANDARD OF REVIEW

The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "well-pleaded allegations" should be taken as true, *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61 (3d Cir. 2007), "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice

---

[2]    The SAC's monopolization claims are Count One and Four.  The unfair and deceptive trade practices claims are Count Two and Five.  The unjust enrichment claims are Count Three and Six.  Counts One, Two and Three raise claims under the laws of states in which the named plaintiffs have standing under this Court's November 2 Order while Counts Four, Five and Six raise claims under the laws of states in which no named plaintiff purchased or provided reimbursement for Wellbutrin SR, solely to "preserve the appellate rights of the Plaintiffs" in light of the November 2 Order dismissing those claims without leave to amend.  GSK preserves its right to oppose the claims preserved in Counts Four, Five and Six on an individual basis at a later date if necessary.

to prevent a motion to dismiss." *Bailey v. Reed*, 29 F. App'x 874, 875 (3d Cir. 2002) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

In particular, an antitrust complaint must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  As the Supreme Court has explained, because "proceeding to antitrust discovery can be expensive . . . 'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'"  *Id.* at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

Recently, the Supreme Court, in *Ashcroft v. Iqbal*, amplified its holding in *Twombly*, admonishing that "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  129 S. Ct. 1937, 1949 (2009).  That is, conclusory or vague allegations do not suffice.  *Id.*  Instead, Rule 8 requires that "the plaintiff pleads **factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (emphasis added).  *See also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.").  Thus, the Court should not accept "unsupported conclusions and unwarranted inferences."  *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998).  In short, the Court must dismiss an antitrust complaint when the plaintiff fails to plead facts to support an essential element of its claim.  *See Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 570-71 (E.D. Pa. 2002) (dismissing antitrust claims under the Sherman Act where the complaint "provided no factual allegations" that would support a core element of the claim).

## IV.   ARGUMENT

### A.   The SAC Should Be Dismissed Because The Plans' Claims Are Governed By Their Home State Laws, Which Do Not Permit Recovery

In its November 2 Order, the Court determined that the Plans had standing under the laws of states in which their members purchased Wellbutrin SR (the "Reimbursement States"), and granted the Plans leave to amend to add allegations regarding the specifics.  But in deciding the standing issue, we do not believe that the Court engaged in the full choice of law analysis that is essential in considering the Plans' claims.[3]  We note that footnote 12 of the Court's November 2 Order refers briefly to choice of law, and to the extent that the Court intended to decide all choice of law issues in that footnote, we would respectfully ask the Court to reconsider its decision.  An analysis of the considerations governing choice of law leads to the conclusion that the law of the Plaintiffs' Home States governs their claims.[4]

The interests at play in the choice of law analysis include:

- The interests of the Reimbursement States in allowing recovery to their citizens – interests that will be fully preserved even though the Plans cannot invoke the laws of those states;

---

[3]   Federal courts apply the choice of law rules of the forum state (*i.e.*, Pennsylvania law) to determine which states' substantive law governs the plaintiffs' claims.  *Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 399 (3d Cir. 1987).  As noted, those rules come into play when there is a conflict among the laws that may apply, *i.e.*, when the law of one state affords recovery while the law of the other state does not.  *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 211 (E.D. Pa. 2000).

[4]   Pennsylvania's choice of law rules employ a "flexible approach which combines a relationship and interest analysis," *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 688 (3d Cir. 1989), in order to identify the jurisdiction "most intimately concerned with the outcome of [the] particular litigation."  *Lyon*, 194 F.R.D. at 212 (citing *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 22, 203 A.2d 796, 806 (1964)).  This approach entails an analysis of the "interest" of the relevant states, and the "contacts" of the parties with those states, *Lyon*, 194 F.R.D. at 212.

- The interests of the Home States, which will not be furthered, and may even be undermined, if the Plans are permitted to invoke the Reimbursement States' laws; and

- The "physical" contacts, which compel application of the Home States' laws to the Plans' claims.

### 1. The Interests of the Reimbursement States

The legislatures of Reimbursement States that provide causes of action, for example, by allowing indirect purchasers to bring damages claims under state antitrust or consumer protection laws, have made a conscious choice to protect their own consumers. *See Levy v. Keystone Food Prods.*, Nos. 07-5502 *et al*., 2008 WL 4115856, at *6 (E.D. Pa. Aug. 28, 2008) (Stengel, J.) ("[S]tate consumer protection laws are designed to protect the residents of the state in which the statutes are promulgated.") (internal quotation omitted); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) ("Each Plaintiff's home state has an interest in **protecting its consumers** from in-state injuries caused by foreign corporations and in delineating the scope of recovery for **its citizens** under its own laws.") (emphasis added); *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 447 (Iowa 2002) (noting that state antitrust laws are enacted to protect in-state consumers); *cf. Lorix v. Crompton Corp.*, 736 N.W.2d 619, 627 (Minn. 2007) (citing expansive protection from "sharp commercial practices" afforded to Minnesota citizens by state antitrust law).

Thus, in providing these causes of action, the legislatures in Reimbursement States were not attempting to provide causes of action to benefit plans located in other states. Rather, as the United States Supreme Court expressly noted in *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989), they were protecting the interests of consumers who reside or buy within their borders by providing them with causes of action, as states have historically done.

And by dismissing the Plans' claims, the Court will in no way subvert the interests of those Reimbursement States in permitting consumers who purchased Wellbutrin SR in those states' pharmacies, *i.e.*, Plan members, from vindicating their own rights..  The claims of Plan members are not before this Court, and thus would be totally unaffected by a ruling that the Plans' claims are governed by their Home States' laws.[5]  Plan members who have a cause of action against GSK for paying supra-competitive prices for Wellbutrin SR are free to bring such claims, whether as individuals or putative class representatives.

### 2.    The Interests of The Home States

As this Court has previously ruled, the Plans do not have any statutory causes of action in their Home States, *see Sheet Metal Workers*, 2009 WL 3617790, at *9, reflecting a legislative choice on the part of these states not to permit recovery under state law in the circumstances of this case.  *See Chin*, 182 F.R.D. at 457 ("Each Plaintiff's home state has an interest in . . . delineating the scope of recovery for **its citizens** under its own laws.") (emphasis added); *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 25 (D. Mass. 2004) ("[L]egislative choices-even choices not to act-must be respected: 'Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic . . . .'".).

To give meaning to this legislative choice, the Court should apply the Home States' laws to the Plans' claims.  *See In re K-Dur Antitrust Litigation*, No. 01-1652, 2008 WL 2660783, at *5 (D.N.J. 2008) (declining to permit union benefit plans to have their indirect purchaser antitrust claims governed by the laws of the state in which the underlying purchases

---

[5]    As the plaintiffs themselves note, they "do not seek recovery based on their members' out-of-pocket payments [but rather] seek to recover reimbursements made to pharmacies for portions of what was paid on behalf of their members."  End Payor Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings, at 9 (Docket No. 222).

were made by their members because "the state with the greatest interest in a [plan's] claims brought on its own behalf is the state where the [plan] has its principal place of business and from which it presumably paid the allegedly supracompetitive prices."); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 611 & n.85 (S.D.N.Y. 2005) (applying law of health plan's home state to putative class claim based on overpayment for members' prescription drugs).

Because the Home States' laws demonstrate a strong interest in circumscribing recovery for their own citizens, including the Plans, it would make absolutely no sense to permit the Plans to thwart the Home States' legislative scheme by recovering under the Reimbursement States' laws. *Cf. In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 396 (D.D.C. 2002) ("basing class eligibility on pharmacy location would result in anomalous situations in which a Maryland resident, for example, could benefit from the District [of Columbia's] *Illinois Brick* repealer even though the Maryland legislature has chosen not to afford its residents such protections.").

### 3. "Physical" Contacts with Relevant Jurisdictions

An analysis of the relevant "contacts" for choice of law purposes also supports application of the Plans' Home States' laws to their claims. The Pennsylvania Supreme Court has stated that the "[c]ontacts considered vital in determining the state of most significant relationship include place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered." *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 15, 203 A.2d 796, 802-03 (1964).

A Plan's principal place of business is a crucial factor; courts have held that "[t]he plaintiff's domicil or residence, if he is a natural person, or the principal place of business, if plaintiff is a corporation, are **contacts of substantial significance when the loss is pecuniary in its nature**. This is so because a financial loss will usually be of greatest concern to the state with

which the person suffering the loss has the closest relationship." *Lyon*, 194 F.R.D. at 215 (citing Restatement (Second) of Conflicts of Laws § 148 cmt. i).

No other contacts weigh strongly against this conclusion. Purchases by Plan members in other states – whether while on vacation, visiting family, or just passing through – could not conceivably create a relationship between the Plans and those states. Notably, because the Plans do not allege how many reimbursements they made to members residing in Reimbursement States, there is no factual basis in the SAC from which to infer systematic contacts between the Plans and any Reimbursement State. Nor does the SAC contain allegations connecting GSK's alleged conduct to any of the relevant states. Finally, courts have rejected the defendants' domicile as a substantial factor. *See, e.g.*, *id.* at 215 ("[P]utative class members' residence is a contact of greater significance than defendant's principal place of business."). As a result, the states with the most significant relationship to the claims are the Plans' home states.

Applying the laws of the Plans' Home States will also help ensure uniformity of result and ease of administration. *See Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005) (uniformity and ease of administration are relevant factors in the choice-of-law analysis) (citing Restatement (Second) of Conflict of Laws § 6). It is far simpler and fairer to apply a single state's law to each individual Plan than to apply a hodge-podge of different state laws to that Plan depending on where a particular reimbursement was made. Applying the law of the Plans' Home States would also simplify the Court's task considerably by eliminating the need to decide the viability of each Plan's claims under a multitude of different state laws.

*          *          *

In sum, taking both state interests and contacts into account, Pennsylvania choice of law rules lead to the conclusion that the Plans' claims will be governed by the laws of their

Home States, in which they allegedly became poorer due to GSK's conduct.  *See Provda v. Farkas*, No. 94-0084, 1995 WL 42308, at *2 (S.D.N.Y. Feb. 1, 1995).  Accordingly, because the Court has already decided that the Plans' statutory claims in their Homes States fail, no statutory claims remain.[6]

> **B.      Even If the Plans Can Invoke All State Claims in the SAC, All But One State Statutory Claim Fails on Individual State Law Grounds**

Assuming *arguendo* that the foregoing choice of law discussion does not result in the disposition of all statutory claims, the Court should still dismiss every state statutory claim raised in the SAC, with the exception of a claim under Arizona antitrust law, for failure to state a cause of action.  GSK's arguments as to the remaining statutory claims may be summarized as follows:

- Indirect purchasers cannot bring claims under five of the statutes.

- Four of the consumer protection statutes do not recognize standing of welfare benefit plans, or similar entities, to bring claims.

- Plaintiffs have not pled the intrastate conduct or effects required by fourteen of the statutes.

- Plaintiffs do not allege unfair, fraudulent, deceptive, and/or unconscionable conduct as required by thirteen of the consumer protection statutes.

- Plaintiffs' allegations of unilateral monopolization do not state a claim under four of the antitrust statutes.

- Plaintiffs have failed to meet the pre-filing notice requirement of one consumer protection statute.

---

[6]     In Section C, we will discuss the Plans' two remaining Home State common law unjust enrichment claims, as well as the other 25 unjust enrichment claims brought under Reimbursement States' laws.

For ease of reference, GSK attaches Appendix 1 (a chart summarizing the grounds for dismissal of each relevant statute) and Appendix 2 (a chart that provides authority for each of GSK's individual state law arguments, which are generally discussed in the following sections.)[7]

As a preliminary matter, GSK notes that the Plans have re-pled three New York state law claims that this Court dismissed without leave to amend in its November 2 Order.  *See* 2009 WL 3617790, at *1.  The Plans misleadingly ask this Court to defer ruling on "the New York claims" until the United States Supreme Court rules in *Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2160 (2009).  However, as in its prior motion, GSK offers several alternative bases for dismissal of the New York antitrust claim, rendering the requested deferral pointless.  Moreover, contrary to plaintiffs' insinuation, a decision in *Shady Grove* would be irrelevant to this Court's holding on New York consumer protection law and unjust enrichment law.  The Plans have therefore re-pled these dismissed claims without leave to do so and with no new basis for asserting them. They should accordingly be dismissed.  *See* 2009 WL 3617790, at *5-7.  However, these claims are included in the discussion below to refresh the Court's memory as to the multiple grounds for dismissal.

1. **Indirect Purchasers Cannot Bring Claims Under Four of the Antitrust and State Consumer Protection Statutes**

In *Illinois Brick v. State of Illinois*, the Supreme Court held that indirect purchasers lack standing to seek damages under the federal antitrust laws.  431 U.S. 720, 746

---

[7]     Three plaintiffs in this action are also plaintiffs in one or both of two pending antitrust actions against GSK in this District, *In re Wellbutrin XL Antitrust Litigation*, No. 2:08-cv-2433 (E.D. Pa) (McLaughlin, J.) and *In re Flonase Antitrust Litigation*, No. 2:08-cv-3301 (E.D. Pa) (Brody, J.).  To the extent that plaintiffs have raised claims here that were conceded or lost in those litigations, such inconsistencies are noted here.

(1977).  This bright-line rule prevents duplicative recoveries by indirect and direct purchasers for the same alleged conduct and relieves federal district courts of the burden of making complex apportionments of damages among multiple levels of distribution.  *Id.* at 745-46.  As determined in *Flonase* and *Wellbutrin XL*, the state antitrust statutes of Florida and Massachusetts also prohibit indirect purchaser claims, and thus plaintiffs cannot sue under these two states' antitrust laws.[8]  (*See In re: Flonase Antitrust Litig.*, No. 2:08-3301, Docket No. 37, at 20 (conceding that Florida and Massachusetts antitrust laws bar indirect purchaser claims)); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 160-61 (E.D. Pa. 2009) (dismissing Florida antitrust claim due to indirect purchaser bar).

For the same reason, the Plans also cannot state claims under the consumer protection statutes of three states.  Two of these states – Idaho and Missouri – expressly bar indirect purchasers from bringing claims under their consumer protection or unfair trade statutes, because indirect purchasers are either not contemplated by the state's statute or are too remote.  The third state, Oklahoma, more specifically bars indirectly injured plaintiffs from evading *Illinois Brick* by bringing antitrust claims as violations of its state consumer protection statute.  The Plans' consumer protection claims under the laws of these three states should therefore be dismissed for this additional reason.[9]

---

[8]     The case citations supporting the statutory arguments in Section IV.B are set forth in Appendix B, according to the subsection of the brief.  For citations to cases supporting this particular argument, see Appendix B at 1.

[9]     *See* Appendix B at 1.

**2.     Welfare Benefit Plans, Such as Plaintiffs, Cannot Bring Claims Under Four Consumer Protection Statutes**

The consumer protection statutes of two states – North Carolina and Oklahoma – only provide a cause of action for consumers or business competitors of the defendant.  Two other states – Pennsylvania and Rhode Island – limit the reach of their consumer protection statutes to persons that purchase goods primarily for personal, family, or household purposes.[10]

Here, plaintiffs do not – and cannot – allege that they are consumers of Wellbutrin SR, or that they purchased the drug for primarily personal, family, or household purposes.  Instead, plaintiffs are welfare benefit plans and similar entities that "purchase and/or provide reimbursement" for their members' purchases.  (SAC ¶¶ 9-14.)  Accordingly, the Plans cannot assert claims under the consumer protection statutes of the above-mentioned states, *i.e.*, North Carolina, Oklahoma, Pennsylvania, and Rhode Island.  *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 908-09 (N.D. Cal. 2008) (dismissing Rhode Island and Pennsylvania consumer protection claims where plaintiffs were business entities); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1128-30 (N.D. Cal. 2008) (same).

**3.     Plaintiffs Fail to Plead the Intrastate Conduct or Effects That Fourteen State Laws Require**

Fourteen of the state antitrust and consumer protection laws cited in the SAC require that a defendant's actions either occur, at least in part, within the state, or affect intrastate commerce in a substantial way.  New York's antitrust statute applies only to wholly intrastate conduct, whereas four other state antitrust laws – Massachusetts, Michigan, Nevada, and West Virginia – require that the alleged anticompetitive conduct must have occurred, at least in part, in the state.  The antitrust laws of California, Minnesota, North Carolina, and Wisconsin extend to

---

[10]     *See* Appendix B at 2.

claims only where there are allegations of substantial intrastate effects.[11]  At least five state

consumer protection laws — Arizona, Florida, Missouri, New York and North Carolina — also

require some nexus of this nature.[12]

Plaintiffs do not allege conduct within any particular state, nor do they allege that

GSK's actions had substantial effects on any one state's intrastate commerce.  On the contrary,

plaintiffs have alleged that GSK's actions substantially "affected interstate and foreign

commerce" (SAC ¶ 164); that "GSK manufactured and sold substantial amounts of Wellbutrin

SR in a continuous and uninterrupted flow of commerce across state and national lines and

throughout the United States" (SAC ¶ 163); and that GSK's activities were within the flow of

and have substantially affected interstate commerce.  (SAC ¶¶ 163-64.)  Since plaintiffs allege

no facts to support intrastate conduct or substantial intrastate effects in any state, their claims

under these nine antitrust laws and five consumer protection laws fail.

### 4.    Plaintiffs Do Not Allege the Type of Conduct Proscribed by Thirteen Consumer Protection Statutes

Thirteen of the statutes identified in the SAC require that a claim be based on a

fraudulent, deceptive, or, in some cases, unconscionable commercial practice.  The states are

Arizona, Arkansas, California, Colorado, Idaho[13], Michigan, Minnesota, Missouri, Nevada, New

---

[11]    *See* Appendix B at 3-4.  Judge McLaughlin's decision in *Wellbutrin XL Antitrust Litigation* not to dismiss the Wisconsin antitrust claim on this basis, despite recognizing that the complaint was "short on specifics as to the exact impact of the defendants' actions within any particular state," 260 F.R.D. at 166-67, was directly contrary to Judge Brody's prior decision to dismiss the Tennessee antitrust claim on the same basis and should not be followed here.  *See Flonase Antitrust Litig.*, 610 F. Supp. 2d at 416.

[12]    *See* Appendix B at 4-5.

[13]    This claim was conceded by three of the same plaintiffs and their counsel in the Flonase Antitrust Litigation on the same basis that GSK moves to dismiss it here.  (*See In re: Flonase Antitrust Litig.*, No. 2:08-cv-3301, Docket No. 37, at 22 n.21).

York, Oklahoma, Pennsylvania, and Rhode Island.[14]  In some of these states, the conduct in question must also be directed to consumers.  Plaintiffs, however, do not allege as part of their "sham litigation" claim that GSK committed any fraudulent or deceptive conduct, or that it engaged in unconscionable commercial practice, nor do they allege that any such conduct was directed at consumers.  Instead, plaintiffs merely claim that they overpaid for Wellbutrin SR as a result of the filing of "objectively baseless" patent infringement suits that allegedly delayed market entry of generic competition.  *See, e.g.,* SAC ¶ 5, ¶ 71, ¶ 85, ¶ 116.[15]

As another court in this District has recognized, the purpose of state consumer protection statutes is to protect consumers from fraudulent, deceptive or unfair practices in trade or commerce.  *See Lyon*, 194 F.R.D. at 215-16.  Each of the consumer protection acts invoked by plaintiffs requires a showing of fraud, deception, or unfairness.  Yet, plaintiffs include no factual allegations that they were defrauded or deceived by GSK's alleged conduct here, *i.e.* pursuing allegedly baseless patent litigation.  Plaintiffs' attachment of conclusory labels to this conduct, which they describe without elaboration as "unfair, unconscionable, deceptive or fraudulent acts or practices," is insufficient.  (SAC ¶ 202).  As the Supreme Court held in *Ashcroft*, "the conclusory nature of respondent's allegations . . . disentitles them to the presumption of truth."  *Ashcroft*, 129 S. Ct. at 1951.

Nor could GSK's conduct meet the widely accepted definition of "unfair" practices in this context because "**charging an unconscionably high price generally is**

---

[14]     *See* Appendix B at 6-8.

[15]     Plaintiffs' *Walker Process* claim does allege that GSK made misrepresentations to the Patent and Trademark Office ("PTO").  *See, e.g.,* SAC ¶ 118.  But such alleged misrepresentations are not directed at consumers and do not constitute sales conduct or a commercial practice.

**insufficient to establish a claim for unfairness**." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (dismissing unfair trade practices claim against hospitals based on allegedly unfair billing practices) (emphasis added); *see also PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (adopting same standard for unfairness as *Robinson*).  Plaintiffs' allegations thus are insufficient to state consumer protection claims and should be dismissed.

> **5.** **Allegations of Unilateral Monopolization Do Not State a Claim Under the Laws of Four Other States**

By their plain language, the state antitrust statutes of California,[16] New York, Nevada and Wisconsin do not apply to unilateral anticompetitive conduct,[17] *i.e.,* monopolization, which is all that plaintiffs allege here.  These four state antitrust claims should therefore be dismissed because they do not involve the concerted, inter-enterprise action required by the state statutes.  *See Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 159 (recognizing antitrust statutes of California, New York, Nevada and Wisconsin to be limited to claims based on concerted action or conspiracy to monopolize).

> **6.** **Plaintiffs Failed to Meet Mandatory Pre-Filing Notice Requirements of One State**

Under the Massachusetts consumer protection law, a plaintiff cannot bring a claim unless she alleges and can prove that she made written demand for relief at least 30 days prior to

---

[16]   Plaintiff's duplicative inclusion of its consumer protection claim under Cal. Bus. & Prof. Code §§ 17200-17210 in both Counts One and Two in order to avoid this limitation in the California antitrust law, Cal. Bus. & Prof. Code §§ 16700-16761, should not be permitted.  *See In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1378-79 (S.D. Fla. 2004) (finding unilateral monopolization proscribed under the Unfair Competition Law, but not the Cartwright Act).

[17]   *See* Appendix B at 9.

the filing of the action.[18]  *See City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 106, 109 (Mass. 1987) ("The failure of the City to allege the sending of a demand letter is fatal to its [chapter 93A] claim."); *Spring v. Geriatric Auth. of Holyoke*, 475 N.E.2d 727, 735-36 (Mass. 1985) (dismissing for failure to provide notice under Mass. Gen. Laws ch. 93A, § 9(3)); *Zabilansky v. American Bldg. Restoration Prods., Inc.*, No. 200101985, 2004 WL 2550458, at *13 (Mass. Super. Oct. 13, 2004) (citing *Spring*) ("**A demand letter listing the specific unfair and deceptive practices** alleged is a prerequisite to suit and is a special element of a 93A claim **that must be alleged** and proved") (emphasis added); *see also McMahon v. Digital Equip. Corp.*, 944 F. Supp. 70, 77 (D. Mass. 1996) ("The plaintiff has not alleged that she sent a 30-day demand letter to [defendant], a prerequisite to bringing a suit . . . Such a failure is fatal on a motion to dismiss.").  GSK received no such demand and, moreover, no such demand has been alleged.[19] This claim therefore must be dismissed – as the Supreme Judicial Court of Massachusetts did in *City of Boston* and *Spring*.

   Accordingly, assuming *arguendo* that each statutory claim in the Reimbursement States must be analyzed, they all must be dismissed for the reasons discussed above, except the claim under Arizona antitrust law.

---

[18]  *See* Appendix B at 9.

[19]  The exceptions to the statute's demand requirement do not apply.  The requirement is waived only if the defendant "does not **maintain a place of business or does not keep assets within the commonwealth**."  Mass. Gen. Laws. 93A, § 9(3) (emphasis added). Neither exception applies here because, as its public website makes clear, GSK maintains a global research facility in Massachusetts, constituting both a place of business and in-state assets. *See* http://us.gsk.com/html/career/career-working-locations.html.

C.    **Plaintiffs' Unjust Enrichment Claims Fail to State a Claim in All But One State**

Plaintiffs' claims under the unjust enrichment laws of twenty-seven states can be dismissed for various reasons, as discussed below.[20]

1.    **Unjust Enrichment Cannot Be Used To Circumvent A State's Adoption of *Illinois Brick***

In its November 2 Order, the Court declined to adopt a universal rule that parties cannot assert unjust enrichment claims based on alleged anticompetitive conduct as a means to avoid an indirect purchaser bar on state antitrust claims, *see Sheet Metal Workers*, 2009 WL 3617790, at *7, but it expressed openness to state-specific arguments, *id.* at *7 n.21 (dismissing unjust enrichment where state courts "have addressed the question specifically," as in New York).  Here, eight states in addition to New York – California, Florida, Indiana, Louisiana, Massachusetts, Minnesota, Pennsylvania and West Virginia – specifically bar unjust enrichment claims that circumvent state law provisions, such as indirect purchaser bars, and those claims should be dismissed.[21]

2.    **Plaintiffs Cannot Recover for Unjust Enrichment Under the Laws of States That Either Do Not Allow Equitable Remedies for Antitrust Violations or Do Not Allow These Plaintiffs to Recover**

In its prior opinion, the Court referred to, but did not expressly rule on, GSK's "generalized" argument that plaintiffs may not utilize unjust enrichment as a means to circumvent limitations imposed by state antitrust laws.  *See Sheet Metal Workers*, 2009 WL 3617790, at *6-7 (citing *D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 506

---

[20]    The weakness of the unjust enrichment claims can best be demonstrated by the Plans' choice not to seek class certification for such claims.

[21]    *See* Appendix B at 10-11.

(E.D. Pa. 2006)).  Even assuming the Court intended to reject that argument based on *D.R. Ward*,

that decision is distinguishable in two important respects from this case.  As an initial matter, as

the Court noted in footnote 20 of its earlier opinion, *D.R. Ward* held that no circumvention was

present because the state statutes at issue allowed indirect purchasers to recover.  In contrast,

many of the statutes at issue here do not allow recovery for these plaintiffs because of indirect

purchaser bars and other statutory limitations.  (*See* Appendix A at 1.)

   In addition, *D.R. Ward* indicated that its analysis would have been altered had the

defendant demonstrated that the statutory language of the relevant states' antitrust laws did not

provide for equitable relief such as unjust enrichment.  *D.R. Ward*, 470 F. Supp. 2d at 506

("[D]efendants failed to argue that state statutes permitting indirect purchaser claims fail to

authorize restitutionary relief.") (quoting *In re New Motor Vehicles Canadian Export Antitrust

Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004)).

   Here, in contrast to the defendant in *D.R. Ward*, GSK has analyzed the

statutory language in the relevant states and identified those that do not provide for equitable

relief as a remedy for antitrust violations — Alabama, Arkansas, Colorado, Georgia, Illinois,

Louisiana, Massachusetts, Minnesota, Nevada, New York, North Carolina, Rhode Island,

Texas and West Virginia.[22]  Accordingly, this Court should dismiss those unjust enrichment

claims.  *See New Motor Vehicles*, 350 F. Supp. 2d at 212 ("[T]he statute creating liability can

override otherwise relevant common law restitution principles by permitting such relief, by

prohibiting such relief or by limiting or enlarging the scope of such restitutionary relief. . . . I

---

[22] *See* Appendix B at 12-14.  The quoted provisions of each statute in this section of
Appendix B enumerate the relief available under the statute; for all of these states, neither
the quoted provision nor any other provision of that statute provides for equitable relief
(aside from injunctive relief in some states).

do not have unlimited compass as a common law judge to determine what the remedy should be.").

### 3.    An Unjust Enrichment Plaintiff Must Confer A Direct Benefit on Defendant

In the following ten states, unjust enrichment requires that the "unjust" benefit in question be directly conferred by the plaintiff on the defendant – Florida, Georgia, Idaho, Michigan, Missouri, North Carolina, Oklahoma, Pennsylvania, and Wisconsin.  Because here, no benefit was directly conferred by the Plans on GSK, the unjust enrichment claims under the laws of the foregoing states must be dismissed.[23]

### 4.    An Unjust Enrichment Plaintiff Must Not Be Too Remote from Defendant

As this Court recognized in its November 2 Order with respect to New York unjust enrichment law, certain states bar claims for unjust enrichment when the relationship between plaintiff and defendant is "too attenuated," even if strict privity is not required.  2009 WL 3617790, at *7.  Because "end-payors" such as the Plans "ha[ve] no relationship with GSK because [they] 'purchase[]' the drug not from GSK but from a 'direct purchaser,' such as a national drug wholesaler," their relationship is too attenuated to state claims under such laws.  *Id.* In addition to New York, the unjust enrichment claims under Iowa and Texas law fail for the same reason.[24]

---

[23]      *See* Appendix B at 15-16.

[24]      *See* Appendix B at 17.

**5.**     **An Unjust Enrichment Plaintiff Must Exhaust Remedies Against The Party With Whom It Has Privity to Recover Benefit**

In two states, a plaintiff cannot bring an unjust enrichment claim against a defendant with whom it is not in privity unless it has exhausted its remedies against those parties with whom it is in privity.  That is, a Plan cannot bring a claim against GSK unless it either has pursued a claim against the party with whom it dealt directly or has made sufficient allegations to explain the futility of such effort.  No such allegations were made here with respect to any state.  Therefore, the unjust enrichment claims under Kentucky and Tennessee law should be dismissed.[25]

*       *       *

As in the preceding section, the foregoing analysis supports dismissal of unjust enrichment claims in all states except Arizona.

---

[25]     *See* Appendix B at 18.

## V.     CONCLUSION

For all of the foregoing reasons, GSK respectfully requests that this Court enter an Order dismissing, with prejudice, all claims in the Consolidated Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs should not be permitted to amend the complaint a third time as it is clear "that amendment would be futile." *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007) (internal quote and citations omitted); *see also Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 580 (E.D. Pa. 2002) (dismissing the plaintiff's promissory estoppel claim with prejudice because, "[i]f facts existed to support such a claim, Plaintiff would know them.").


Dated: January 11, 2010                    Respectfully submitted,


                                          */s/ Arthur Makadon*
                                          Arthur Makadon
                                          makadon@ballardspahr.com
                                          Edward D. Rogers
                                          rogers@ballardspahr.com
                                          Susanna R. Greenberg
                                          greenbergsr@ballardspahr.com
                                          **BALLARD SPAHR LLP**
                                          1735 Market Street, 51st Floor
                                          Philadelphia, PA 19103
                                          (215) 665.8500

                                          David P. Gersch
                                          James W. Cooper
                                          Daniel S. Pariser
                                          **ARNOLD & PORTER LLP**
                                          555 12th Street, N.W.
                                          Washington, D.C. 20004
                                          (202) 942.5000

                                          Counsel for Defendants GlaxoSmithKline, PLC and SmithKline Beecham Corp. d/b/a GlaxoSmithKline

## <u>CERTIFICATE OF SERVICE</u>

I, Susanna R. Greenberg, hereby certify that, on January 11, 2010, I caused the

foregoing Defendants' Motion to Dismiss, the supporting Memorandum of Law, and a proposed

order to be served upon all counsel of record, identified below, via the ECF system and

electronic mail:


Joseph H. Meltzer
**SCHIFFREN BARROWAY TOPAZ
& KESSLER, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

Michael M. Buchman
**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
100 Park Avenue, 26th Floor
New York, New York 10017
Tel:  (212) 661-1100
Fax:  (212) 661-8665


Thomas M. Sobol
**HAGENS BERMAN SOBOL
SHAPIRO L.L.P.**
One Main Street, 4th Floor
Cambridge, MA 02142
Tel:  (617) 482-3700
Fax:  (617)  482-3003


Dated:  January 11, 2010

 _/s/  Susanna R. Greenberg_____
Susanna R. Greenberg