# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 441 HEALTH & WELFARE PLAN, *et al.*, | : : : | Civil Action No. 04-cv-5898 |
| Plaintiffs, | : : | Judge Lawrence F. Stengel |
| v. | : : | |
| GLAXOSMITHKLINE, PLC, *et al.*, | : : | |
| Defendants | : : | |

**END-PAYOR PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED END-PAYOR
CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................. 2

III.  ARGUMENT................................................................................................... 4

      A.   PLAINTIFFS' CAUSES OF ACTION ARE NOT LIMITED TO THOSE
           ARISING UNDER THE LAWS OF THEIR "HOME STATES"........................ 6

           1.   Defendants' Have Taken The Opposite Position On Choice Of Law In
                Prior Filings In this Litigation .................................................................. 6

           2.   Defendants Concede That Consumer Class Members' Claims Are
                Properly Brought Under The Laws Of The States Where They Made
                Purchases ................................................................................................ 6

           3.   The Court's Prior Choice Of Law Analysis Is Correct............................. 8

           4.   Authority Cited By Defendants Is Inapplicable Or Supports The Court's
                Prior Ruling .......................................................................................... 11

           5.   It Would Be "Fairer And Simpler" To Apply The Law Of North Carolina
                To All Claims ........................................................................................ 14

           6.   Defendants' Motion Should Be Denied As An Improper And Untimely
                Motion For Reconsideration.................................................................... 15

      B.   PLAINTIFFS SUCCESSFULLY STATE A CLAIM UNDER EACH OF THE
           STATE CONSUMER PROTECTION AND ANTITRUST STATUTES........... 15

           1.   Indirect Purchaser Plaintiffs Have Standing Under State Consumer
                Protection Statutes of Idaho, Missouri and Oklahoma ........................... 15

           2.   Plaintiffs May Sue Under Consumer Protection Statutes of North Carolina,
                Oklahoma, Pennsylvania and Rhode Island Because Plaintiffs Are
                Consumers and Purchasers of Goods For Personal, Family or Household
                Purposes ................................................................................................ 16

           3.   Plaintiffs' State Antitrust Claims Should Not Be Dismissed On The
                Grounds That They Are Not Sufficiently "Intrastate"............................. 17

           4.   The Complaint Alleges Unconscionable And/Or Deceptive Conduct
                Sufficient To State A Claim Under State Consumer Protection Laws ..... 18

5.      Plaintiffs' Have Stated Class Claims Under The Antitrust and/or Consumer Protection Laws of California, Nevada, Wisconsin and New York ............................................................................................. 19

6.      Plaintiffs Have Sent Written Notice/Demand Letters to Defendants and Dismissal of Their Massachusetts Consumer Protection Claim Is Unwarranted ................................................................................... 20

C.      PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT SHOULD PROCEED ......................................................................................... 20

1.      *Illinois Brick* is not a bar to Unjust Enrichment ..................................... 20

2.      Plaintiffs May Allege Unjust Enrichment as an Equitable Remedy......... 22

3.      Defendants Were Unjustly Enriched as a Result of a Benefit Directly Conferred by Plaintiffs ........................................................................... 22

4.      Plaintiffs' Texas, Iowa, New York, Kentucky and Tennessee Unjust Enrichment Claims Should Not Be Dismissed On The Grounds That The Injury Suffered Is "Too Remote" or That Plaintiffs Failed To Exhaust Remedies Against The Party With Whom They Have "Privity" ............. 25

IV.     CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*In re Bextra & Celebrex Mktg Sales Practices & Liability Litig.*,
  495 F. Supp. 2d 1027 (N.D. Cal. 2007) ............................................................ 16

*California v. ARC America Corp.*,
  490 U.S. 93 (1989) ............................................................................................ 8

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000)........................................... 20, 21, 23, 24

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................10, 20, 21

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998) .......................................................................... 12

*Chin v. Chrysler Corp.*,
  No. 95-CV-5569, 1999 U.S. Dist. LEXIS 23493 (D.N.J. Dec. 14, 1999)............ 12

*D.R. Ward Constr. Co. v. Rohm & Haas Co.*,
  470 F. Supp. 2d 485 (E.D. Pa. 2006) ................................................................ 22

*Daynard v. Ness, Motley, Loadholt, Richardson & Pool, P.A.*,
  188 F. Supp. 2d 115 (D. Mass. 2002) ............................................................... 18

*Ferrell v. Wyeth-Ayerst Labs, Inc.*,
  No. 01-CV-447, 2004 U.S. Dist. LEXIS 15127 (S.D. Ohio June 30, 2004) ........ 10

*In re Flonase Antitrust Litig.*,
  No. 08-CV-3301, 2010 U.S. Dist. LEXIS 4707 (E.D. Pa. Jan. 21, 2010) ............ 10

*In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*,
  No. 03-CV-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008) ............. 16

*Foulke v. Dugan*,
  F. Supp. 2d 253 (E.D. Pa. 2002)...................................................................... 8, 9

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008)........................................................................ 9

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007)............................................................. 20

*In re ConAgra Peanut Butter Prod. Liab. Litig.*,
  MDL No. 1845, 2008 U.S. Dist. LEXIS 40753 (N.D. Ga. May 21, 2008) ........... 24

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007) ...................................................... 17

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) .................................................... 20, 23, 24

*In re K-Dur Antitrust Litig.*,
    No. 01-CV-1652, 2008 WL 2660783 (D.N.J. 2008) ......................................13, 14

*Levy v. Keystone Food Prods.*,
    No. 07-CV-5502, 2008 U.S. Dist. LEXIS 67517 ..........................................11, 12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) .............................................................. 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    295 F. Supp. 2d 30 (D.D.C. 2003) ........................................................... 24

*Lyon v. Caterpillar, Inc.*,
    194 F.R.D. 206 (E.D. Pa. 2000) ............................................................... 11

*Muehlbauer v. GMC*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ......................................................... 21

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) .......................................................17, 23

*Powers v. Lycoming Engines*,
    245 F.R.D. 226 (E.D. Pa. 2007) .............................................................23, 24

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004) .........................................................passim

*In re Rezulin Prods. Liab. Litig.*,
    392 F. Supp. 2d 597 (S.D.N.Y. 2005) ....................................................13, 14

*Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.*,
    549 F.3d 137 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2160 (2009).................... 15

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004) ..........................................................10, 20

*In re Wellbutrin SR Antitrust Litig.*,
    Nos. 04-CV-5525, 04-CV-5898, 05-CV-0396, 2006 U.S. Dist. LEXIS 9687 (E.D. Pa.,
    Mar. 9, 2006)............................................................................. 3

*In re Wellbutrin SR/Zyban Antitrust Litig.*,
    281 F. Supp. 2d 751 (E.D. Pa. 2003) ....................................................... 3

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009) ........................................................................ 10, 19, 20, 25


**STATE CASES**

*Com. v. TAP Pharm. Products, Inc.,*
  885 A.2d 1127 (Pa. Commw. 2005) ........................................................................ 16

*Comes v. Microsoft*,
  646 N.W. 2d 440 (Iowa 2002) ........................................................................ 12, 13

*Cox v. Microsoft*,
  8 A.D.3d 39, N.Y.S.2d 778 ........................................................................ 20

*Griffith v. United Air Lines, Inc.*,
  203 A.2d 796 (Pa. 1964) ........................................................................ 11

*Opelika Production Credit Ass'n v. Lamb*,
  361 So.2d 96 (Ala. 1978) ........................................................................ 21

*Paschall's, Inc. v. Dozier*,
  407 S.W. 2d 150 (Tenn. 1966) ........................................................................ 22

*State ex rel. Palmer v. Unisys Corp.*,
  637 N.W.2d 142 (Iowa 2001) ........................................................................ 21

*State Farm Gen. Ins. Co. v. Stewart*,
  681 N.E.2d 625 (Ill. App. Ct. 1997) ........................................................................ 24


**RULES**

FED. R. CIV. P. 12(b)(6) ........................................................................ 2

Plaintiffs IBEW-NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, MC-UA Local 119 Health and Welfare Plan, A.F. of L.-A.G.C. Building Trades Welfare Plan, United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, and Sidney Hillman Health Center of Rochester, Inc. (collectively, "End Payors"), through their undersigned counsel, submit this opposition to GlaxoSmithKline, PLC and SmithKline Beecham Corp., d/b/a GlaxoSmithKline's (collectively, "GSK") Motion to Dismiss the Consolidated Second Amended End-Payor Class Action Complaint.

## I.   INTRODUCTION

After almost eight years of litigation, extensive fact discovery and submission of fully-briefed class certification and summary judgment motions, Defendants now move, for a *fourth* time, to dismiss Plaintiffs' claims.

Plaintiffs' Consolidated Second Amended End-Payor Class Action Complaint and Demand For Jury Trial ("SAC"), filed following the Court's November 2, 2009 ruling on Defendants' Motion for Judgment on the Pleadings ("November 2 Order"), alleges Defendants engaged in sham litigation and committed fraud on the Patent and Trademark Office, illegally delaying generic entry into the market for bupropion hydrochloride sustained release drugs.  All of this was done, according to the SAC, in order to further Defendants' enormously profitable monopoly for Wellbutrin SR, a blockbuster antidepressant

At the Court's direction, Plaintiffs' SAC narrowed claims to include only states where End Payors' members purchased Wellbutrin SR.  Defendants' Motion does not attack the sufficiency of Plaintiffs' allegations, many of which are supported by the well-developed factual record.  Instead, and somewhat remarkably, Defendants now take a position that is directly contrary to their own previously submitted briefing.

1

GSK's motion addresses (1) choice of law issues and (2) Plaintiffs' ability to invoke specific state antitrust, consumer protection and unjust enrichment laws.  As to choice of law, GSK now takes a position contrary to its own briefing on choice of law set forth in their opposition to Plaintiffs' Motion for Class Certification.  In class certification briefing, GSK took the position that the laws of the state where the reimbursement took place must be applied.  In a complete reversal, GSK now asks the Court to find that Pennsylvania's choice of law rules mandate Plaintiffs' claims be limited to those arising under laws of the End Payors' "home states."  As to specific state law claims, GSK proffers an incomplete and narrow interpretation of state laws asking the Court to dismiss Plaintiffs' state antitrust, consumer protection and common law unjust enrichment claims.  Defendants' arguments are inconsistent with their previous statements and an improper attempt to have this Court reconsider part of the November 2 Order and should be rejected.

## II.  BACKGROUND

Because GSK has apparently forgotten about what it has previously argued to the Court (since the positions it now espouses are 180 degrees from earlier writings), we set forth the history.

### Wellbutrin I

In *Wellbutrin I*, filed over seven years ago, Plaintiffs alleged – and sustained over Defendants' *first* Fed. R. Civ. P. 12(b)(6) challenge – that Defendants instituted a series of patent infringement actions that were objectively baseless in order to unlawfully maintain their monopoly in the market for Wellbutrin SR.  The basis for Defendants' first Rule 12(b)(6) motion was that the patent litigations did not cause Plaintiffs damage.  Specifically, Defendants claimed Andrx Pharmaceuticals, Inc. ("Andrx") was the first to file an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA") seeking permission to

sell generic versions of Wellbutrin SR but failed to enter the market after the litigation stay expired. *See In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 755-56 (E.D. Pa. 2003). Defendants argued the patent suits at issue were, therefore, not the cause of Plaintiffs damages. *Id.* The Court denied Defendants' first motion to dismiss, finding it plausible that the institution of litigation against the generic manufacturers diverted resources from the manufacturers' efforts to obtain approval to market their generic drugs. *Id.* at 757.

In December 2003, Plaintiffs entered into a Notice of Voluntary Dismissal Without Prejudice and Tolling Agreement with Defendants based in part on Defendants' representation that Andrx possessed first filer status. Plaintiffs' counsel continued to monitor the market and commenced a thorough investigation once they learned that Eon Laboratories, Inc. ("Eon") had entered the market with a 100 mg generic version of Wellbutrin SR. Plaintiffs discovered that Andrx was not in fact the first company to file an ANDA with the FDA seeking permission to manufacture and sell a 100 mg generic version of Wellbutrin SR. Plaintiffs then timely reinstituted the litigation in 2004 (*Wellbutrin II*).

## Wellbutrin II

Following the filing of Plaintiffs Class Action Complaint in December 2004, Defendants filed a second motion to dismiss based primarily on the assertion of *Noerr-Pennington* immunity. The Court denied Defendants' motion. *See In re Wellbutrin SR Antitrust Litig.*, Nos. 04-CV-5525, 04-CV-5898, 05-CV-0396, 2006 U.S. Dist. LEXIS 9687 (E.D. Pa., Mar. 9, 2006). Five years of litigation ensued including the completion of fact discovery, exchange of expert reports, expert depositions, a fully briefed motion for class certification, briefing related to the certification of "exemplar states" and fully briefed motions for summary judgment.

Notable, the issue of choice of law was already briefed in this case.  In their memoranda in opposition, GSK argued that "under Pennsylvania choice of law rules, the laws of the states in which the consumers purchased sustained release bupropion would apply."  Docket No. 51 at 23. In support of this proposition GSK cited *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277-78 (D. Mass. 2004).

In May 2009 GSK filed a Motion for Judgment on the Pleadings seeking for a *third* time to dismiss Plaintiffs' Complaint.  GSK raised for the first time an argument that Plaintiffs lacked standing to bring the asserted claims and that only the laws of End Payors' "home states" should apply.  On November 2, 2009 the Court issued a decision denying Defendants' Motion for Judgment on the Pleadings on this issue.  The Court instructed Plaintiffs to amend their complaint to allege causes of action for those states where reimbursements were made for Wellbutrin SR.  Plaintiffs filed their SAC and complied with the Court's directive.

Defendants now seek a fourth bite at the apple, this time seeking a "do over" regarding their choice of law arguments.

## III.    ARGUMENT

The Court's November 2 Order recognized "the plaintiffs' right to bring a cause of action in those states *where overcharges for Wellbutrin took place*."  November 2 Order at 2 (emphasis added).  This find was perfectly consistent with GSK's previously stated position on the issue – in Defendants' words:  "the state where the class member purchased sustained released bupropion is the state with the greatest interest."  Docket No. 51 at 22.  GSK now asks the Court to reconsider its November 2 Order, this time arguing that it is the "home state" of each End Payor that has the most significant interest under a choice of law analysis.  The Court's November 2 Order was correct -- the states with the most significant interests are those where purchases of Wellbutrin SR took place – the reimbursement states.  GSK, in addition to ignoring

its prior choice of law argument, GSK also conveniently ignores Plaintiffs' claims asserted on behalf of consumers and concedes that the laws of the reimbursement states apply to those consumer claims.   With respect to the third party payor (TPP) class members, GSK cites authority that is either inapposite or supports the Court's prior rulings (and GSK's prior position) on the issue.

GSK's motion should also be denied as an improper and untimely motion for reconsideration.  See Local Rule 7.1(g).

GSK's specific attacks on various state antitrust and consumer protection claims also fail. The Court held that Plaintiffs have standing to allege both state antitrust and state consumer protection claims in the twenty-seven (27) state jurisdictions where reimbursements for Wellbutrin SR were made.   Plaintiffs adequately allege unfair, deceptive and monopolistic conduct by GSK.   Plaintiffs allege a sufficient nexus between GSK's conduct and the states under which they seek relief.   Plaintiffs also allege unfair and deceptive conduct sufficient to state a claim under the state consumer protection statutes of these states.   End Payors are likewise "consumers" under those statutes, and Plaintiffs' prior mailing of written demand letters satisfies notice requirements under certain state's consumer protection laws.

Also without merit is GSK's attack on Plaintiffs' common law unjust enrichment claims. The Court's November 2 Order declined to adopt GSK's argument that unjust enrichment claims may not be pled in states whose antitrust statutes do not permit recovery by indirect purchasers. November 2 Order at 17-18.   Again, GSK's motion offers no valid basis for the Court to reconsider its prior ruling.   Unjust enrichment claims are independent of the asserted state antitrust claims.   Unjust enrichment claims may be pled in the alternative and requirements for bringing an unjust enrichment claim are distinct from those under state antitrust laws.  Success of

state statutory antitrust claims does not determine the viability of an unjust enrichment claim.

Statutory antitrust claims do not constitute the exclusive remedy for anticompetitive conduct.

For all of these reasons, GSK's motion should be denied.

### A. PLAINTIFFS' CAUSES OF ACTION ARE NOT LIMITED TO THOSE ARISING UNDER THE LAWS OF THEIR "HOME STATES."

#### 1. Defendants' Have Taken The Opposite Position On Choice Of Law In Prior Filings In this Litigation.

On class certification, GSK argued that the laws of the states in which the consumers

purchased sustained release bupropion would apply to Plaintiffs' claims.  GSK stated:

> Here the state where a class member purchased sustained release bupropion is the state with the greatest interest because it is (1) the place of injury (the alleged overcharge), (2) the place where the conduct occurred (the alleged overcharge), and (4) the place where the relationship between the parties is centered (the purchase).  The state of purchase may be (3) the domicile for a consumer class member.  Thus, under Pennsylvania choice of law rules, the laws of the states in which consumers purchased sustained release bupropion would apply.  *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277-78 (D. Mass. 2004).

Docket 51 at 22-23.

GSK's own prior choice of law argument is consistent with the Court's November 2

Order and completely contradicts the position GSK now asks the Court to adopt.  GSK's motion

should be seen for what it is: a complete reversal of arguments Defendants already made in this

litigation.

#### 2. Defendants Concede That Consumer Class Members' Claims Are Properly Brought Under The Laws Of The States Where They Made Purchases.

Plaintiffs' claims include those of consumers who purchased Wellbutrin SR, as well as

third-party payors' claims.

Plaintiffs assert claims on behalf of consumers in the SAC.  ("Plaintiffs bring their claims

on behalf of all indirect purchasers of Wellbutrin SR, i.e. consumers and third-party payors…"

SAC ¶ 4.  "By engaging in anticompetitive conduct to prevent generic entry, Defendants effectively forced consumers to continue paying monopoly prices for Wellbutrin SR prescription products."  SAC ¶ 7.  "As a direct and proximate result of Defendants' unlawful conduct, consumers and third-party payors throughout the United States have been denied the benefits of free and unrestrained competition in the Wellbutrin SR market."  SAC ¶ 8.).

Plaintiffs seek certification of a class that includes consumers.  Plaintiffs' proposed class is defined as:

> All *persons* and entities in the United States who, at any time from March 1, 2002 to June 30, 2006, purchased 100 mg and/or 150 mg Wellbutrin SR and/or their generic equivalents for purposes other than resale.  Excluded from the Class are the Defendants, their subsidiaries and affiliates, government entities and any person or entity that purchased Wellbutrin SR directly from Defendants.  For purposes of the Class definition, persons and entities "purchased" Wellbutrin SR if they paid some or all of the purchase price

SAC ¶ 166.[1]  *See also* End-Payor Plaintiffs' Memorandum in Support of Class Certification, Docket No. 37-3, at p. 2 ("The Indirect Purchaser Plaintiffs are the end-payors  i.e., the persons who were the last in the chain of distribution, including consumers and health benefit plans…"); *Id.* at p. 11 ("It may, therefore, be safely estimated that consumers number in the hundreds of thousands.")

GSK concedes that consumer class members have claims in the reimbursement states where they purchased Wellbutrin SR, and that the reimbursement states have a strong interest in protecting those consumers.  Motion at 7 ("The legislatures of Reimbursement States that provide causes of action…by allowing indirect purchasers to bring claims under the state antitrust or consumer protection laws, have made a conscious choice to protect their own consumers.") (additional citations omitted).  There is no disagreement that the law of the

---

[1] Defendants intentionally misconstrue the Plaintiffs' claims in footnote 5 of their Motion by selectively quoting Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings and ignoring the clear assertions of the SAC made on behalf of consumers.

reimbursement states would apply to consumers who overpaid for Wellbutrin SR in the reimbursement states.  Applying GSK's own reasoning, those claims should not be dismissed.

### 3.   The Court's Prior Choice Of Law Analysis Is Correct.

In its November 2 Order, the Court correctly concluded that, weighing all relevant factors, the interests of the states where End-Payor Plaintiffs' members purchased Wellbutrin SR were more significant that the interest of their "home states."  November 2 Order at 9, n.12.

Pennsylvania choice of law rules apply a functional approach to determine the law with the most significant interest in the litigation.  *See, e.g.*, *Foulke v. Dugan*, F. Supp. 2d 253, 257 (E.D. Pa. 2002).  Factors relevant to determining significant interest include "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, or place of business or incorporations of the parties; and (4) the place where the relationship between the parties is centered."  *Id.*  No single factor is determinative.  As Defendants' Motion concedes, the states where reimbursements were made have a strong interest in protecting their consumers and state consumer protection and antitrust laws are meant to protect "the interests of consumers who reside *or buy within their borders*."  Motion at 7 (citing to *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989)) (emphasis added).

States where consumer purchases were made, and where overcharges occurred, have more significant interests for choice of law purposes than the home states of the third party payors.  The court faced an identical choice of law question in *In re Relafen Antitrust Litigation See In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004).  End-payor plaintiffs brought claims under state consumer protection, antitrust and unjust enrichment laws against GSK arising from GSK's use of baseless patent litigation to delay generic drugs from reaching the market.  *Id.* at 264.  Plaintiffs alleged the same injury alleged here: that as a result of GSK's patent suits they

paid supracompetitive prices for prescription drugs when they reimbursed their members for drug purchases. *Id.* at 264.

Applying Pennsylvania choice of law rules, the Court in *Relafen* held that "the locations of consumers' purchases…assumes special significance" where "the basic policies underlying the particular field of law…are those of consumer protection." *Id.* at 277-78 (internal citations omitted). The court concluded "the more significant contact in this context [is] the location of the injury, that is, the location of the sales to the end payor plaintiffs." *Id.* at 277. The court further concluded that Pennsylvania choice of law rules would apply the various states' laws in which purchases were made, rather than the law of a single party's home state. *Id.* at 278. The *Relafen* analysis of Pennsylvania choice of law rules supports this Court's conclusion that the End-Payor Plaintiff's claims, including those of both TPPs and consumers, arise "where the overcharge occurs" and that the "law of a particular state will govern any overcharge injury arising in that state." November 2 Order at 9, n.12, and 11.

The court in *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139 (S.D.N.Y. 2008), reached the same conclusion. *Id.* at 149, n.12. The Court held that "the interest analysis favors the application of the [] law of the state wherein each [] member purchased his copy of [the game]." *Id.* at 149. The court reasoned that the conduct causing the injury (deceptive marketing) occurred at the time when each copy of the game was purchased. *Id.* While the court applied New York choice of law rules, it held the same result would apply under the Pennsylvania rules. *Id.* at 150.

The place where injury and the injurious conduct occur are relevant factors under Pennsylvania choice of law rules. *Foulke*, F. Supp. 2d at 257. Those factors parallel the contacts

analysis the Court previously applied in analyzing Plaintiffs' standing to assert state causes of action.

Indeed, the overwhelming majority of courts hold that third-party payors can assert claims under the law of the states where their members made drug purchases that were reimbursed. November 2 Order at 9-12. *See also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156-57 (E.D. Pa. 2009) (McLaughlin, J.) (third-party payors may assert claims under law of states where drug reimbursements were made for inflated drug prices because "plaintiffs' claims have a clear connection to… the states where their members made purchases."); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 681 (S.D. Fla. 2004) (rejecting defendants' assertion that applicable law is limited to the state where insurer had its main place of business and upholding class definition based on residence of third-party payor members where reimbursement occurred); *In re Flonase Antitrust Litig.*, No. 08-CV-3301, 2010 U.S. Dist. LEXIS 4707, at *7 (E.D. Pa. Jan. 21, 2010) (Brody J.) (holding third-party payors may assert claims "under laws of the states where they are located, and where they purchased Flonase or reimbursed their members for Flonase purchases."); *Ferrell v. Wyeth-Ayerst Labs, Inc.*, No. C-A-01-447, 2004 U.S. Dist. LEXIS 15127, at *12-13 (S.D. Ohio June 30, 2004) (rejecting defendants' argument that only law of third-party payors' "home" state applied "because the purchase of Premarin – the critical event causing the antitrust injury – did not take place only in [plaintiffs' home states]. The actual purchase took place in the various states where the Funds' members reside."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 517 (E.D. Mich. 2003) (certifying class of "all consumers and third Party Payors… *who purchased and/or paid all or part of the purchase price* of Cardizem CD Products…") (emphasis added); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 396 (D.D.C. 2002) (rejecting settlement objectors'

argument and finding "plaintiffs' choice to base class eligibility upon …plan members' state of residence fair and reasonable because it generally comports with the purposes of the states' antitrust laws.").

GSK's motion asks the Court to ignore its previous November 2 Order and the above-cited precedent and instead place undue emphasis on a single factor, TPP Plaintiffs' place of residence.  GSK's argument also ignores the significant interests of the reimbursement states in regulating TPP transactions and injuries that occur within their borders, as well as the "special significance" afforded the location where Plaintiffs' injuries occurred – i.e., where Wellbutrin SR was purchased.  *See, e.g.*, *In re Relafen Antitrust Litig.*, 221 F.R.D. at 277-78.

GSK's about-face notwithstanding, the Court's previous determination on the choice of law issue should not be disturbed.

### 4. Authority Cited By Defendants Is Inapplicable Or Supports The Court's Prior Ruling.

No authority supports GSK's argument that each state's interest in protecting in-state consumers applies *to the exclusion of* other state's residents who make purchases or experience injury within the state.  The cases cited by GSK are distinguishable or actually support the Court's prior conclusion that the interests of the states where the injury occurred outweigh the interests of the Plaintiffs' home states[2].

*Levy v. Keystone Food Prods.*, No. 07-CV-5502, 2008 U.S. Dist. LEXIS 67517, at * 20-21 (E.D. Pa. Aug. 28, 2008), is distinguishable.  In determining standing under the Pennsylvania consumer protection statute, the Court declined to apply Pennsylvania law to **purchases made**

---

[2] In fact, cases cited by Defendants support the view that the place of injury is a vital factor to be considered in choice of law analysis.  *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 802-03 (Pa. 1964) ("[c]ontacts considered vital in determining the state of most significant relationship include place of injury, place of conduct…"); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 214 (E.D. Pa. 2000) ("Applying the instruction of [Restatement (Second) of Conflicts of Laws] § 148, I conclude that each private class member's claim arises under [the law] of his or her state of residence *or the state in which his or her [item] was purchased*") (emphasis added).

*outside of Pennsylvania* by consumers who also resided outside the state. *Id.* The Court found that none of the plaintiffs in that case resided or made purchases in Pennsylvania. *Id.* at *1. By contrast, Plaintiffs only assert claims in states where purchases of Wellbutrin SR took place.

*Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) supports the view that the interests of the reimbursement states outweigh those of Plaintiffs' home states. The decision denied class certification but was later reversed by the District Court. No. 95-CV-5569, 1999 U.S. Dist. LEXIS 23493 (D.N.J. Dec. 14, 1999). Plaintiffs sought to represent a class of vehicle purchasers based upon an allegedly faulty braking system. *Id.* at 448. Examining the issue of predominance, the court applied New Jersey choice of law rules concluding that the states where "Plaintiffs reside, *or* the place where Plaintiffs bought and used their allegedly defective vehicles *or* the place where Plaintiffs' alleged damages occurred" possessed the most significant interest in the litigation. *Id.* (emphasis added).

GSK cites *Comes v. Microsoft*, 646 N.W. 2d 440 (Iowa 2002), purportedly for the proposition that state antitrust laws are enacted to protect only consumers who reside in that state. This greatly overstates the court's holding. The court held that *Illinois Brick* did not prevent indirect purchasers, end-user licensees who purchased computers containing Microsoft's operating system in Iowa, from asserting antitrust claims under the Iowa Competition Law. *Id.* at 446-47. The Court did not limit application of Iowa's antitrust laws to "in-state consumers" as GSK asserts. Motion at 7. In fact, the court noted that "[Iowa] antitrust law promotes the same consumer protection policies as does federal antitrust law by 'assuring *customers* the benefits of price competition.'" *Comes*, 646 N.W. 2d at 447 (emphasis added) (internal citation omitted). Here, the reimbursement states have just as significant an interest in assuring customers,

including consumers and TPPs, the benefits of price competition as the state of Iowa did in *Comes*.

GSK cites distinguishable cases to support their "home state" arguments, previously considered and decided by the Court's November 2 Order.  The two cases cited by GSK, in support of the proposition that the place of overcharge injury should be Plaintiffs' home states, contain important factual differences.

In *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005), the court rejected plaintiffs' argument to apply its home state's law (New Jersey) and held that New York law would apply because the alleged injury - overpayments for diabetes drugs - occurred in New York.  *Id.* 611 & n.85.  The Court also found that "[t]here is nothing in the record to suggest that activities in connection with the misrepresentations occurred anywhere other than New Jersey and, perhaps New York."  *Id.*  Thus, all of the conduct at issue took place between two states, the state where the plaintiff was based (New Jersey) and the state where the overpayments occurred (New York).  *See id.*  By contrast, the SAC alleges that Plaintiffs' suffered damage when they reimbursed members for purchases of Wellbutrin SR made within each state jurisdiction cited in the SAC.

In *In re K-Dur Antitrust Litig.*, No. 01-CV-1652, 2008 WL 2660783 (D.N.J. 2008), the court, applying the reasoning of *In re Rezulin*, held that "the state with the greatest interest in a TPP's claims *brought on its own behalf* is the state where the TPP has its principal place of business."  Id. at *5 (emphasis added).  In applying New York law to the TPP's claims, the Court found that "Plaintiffs have not identified which states laws - other than New York- may potentially be applicable to [their] claims."  *Id.* at *4, n.12.  Also critical to the court's analysis was its finding that the claims of the third-party payors *did not include* claims made on behalf of

13

individual consumers. *Id.* Here, by contrast, Plaintiffs have identified the various states laws that are applicable to their claims – the reimbursement states. Furthermore, Plaintiffs are seeking class certification "on behalf of all indirect purchasers of Wellbutrin SR, i.e. *consumers and third-party payors.*" SAC ¶ 4 (emphasis added). The *K-Dur* decision relies in part on plaintiffs' lack of any consumer claims and applied the law of plaintiffs' home state based on their failure in the complaint to identify which other states' laws may be applicable. Plaintiffs' SAC does not contain these deficiencies.

Moreover, this Court previously rejected the analysis of *In re Rezulin*, which was followed in *In re K-Dur*, as "unduly narrow" and "adopt[ed] the view that a plan's claim arises where the overcharge occurs." November 2 Order at 11. GSK's rationale for seeking a contrary result at this juncture is not clear.

### 5. It Would Be "Fairer And Simpler" To Apply The Law Of North Carolina To All Claims.

In direct opposition to the previous argument made in their class certification briefs, GSK now argues that it is "far simpler and fairer" to apply a single state's law to each TPP Plaintiff than to apply different state laws depending on where a particular reimbursement was made. Motion at 10. Plaintiffs' advocate a similar position in their reply memorandum in support of their class certification motion. Following GSK's logic, it would be even simpler to apply the law of a *single* state, North Carolina, where Defendants have their principal place of business and where the anticompetitive conduct originated from, to all Plaintiffs' claims. Application of North Carolina law to all claims would ensure uniformity of result and ease of administration to a greater degree than Defendants' proposal to apply each named Plaintiff's "home state" laws. Rather than repeat Plaintiffs' arguments on this issue, Plaintiffs' respectfully refer the Court to

the Reply Memorandum of Law in Support of End-Payor Plaintiffs' Motion for Class Certification, Docket No. 66, at 14-16.

### 6. Defendants' Motion Should Be Denied As An Improper And Untimely Motion For Reconsideration.

GSK acknowledges that it is moving for reconsideration of the November 2 Order, Motion at 6, yet provide no justification or reason for their delay in moving for reconsideration outside the time prescribed by the rules. "Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the judgment, order, or decree concerned." Local Rule 7.1(g). The Court's November 2 Order was entered on November 3, 2009. The time to file a motion for reconsideration passed on November 17, 2009. Defendants now "ask the Court to reconsider its decision" in a motion filed January 11, 2010. The request for reconsideration is untimely and should be denied.

### B. PLAINTIFFS SUCCESSFULLY STATE A CLAIM UNDER EACH OF THE STATE CONSUMER PROTECTION AND ANTITRUST STATUTES.

Defendants' state statutory arguments are flawed and overbroad. As discussed herein and in the attached appendices, Plaintiffs state valid antitrust and consumer protection claims in the SAC. Further, Plaintiffs maintain that their New York antitrust and consumer protection claims should remain until the Supreme Court rules on *Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2160 (2009).

### 1. Indirect Purchaser Plaintiffs Have Standing Under State Consumer Protection Statutes of Idaho, Missouri and Oklahoma.

Defendants misconstrue the consumer protection laws in these three states, wrongfully suggesting that Plaintiffs are barred from recovery. Motion at 13. As set forth in Appendix 1, end-payors such as named Plaintiffs and the proposed class have standing in each jurisdiction to recover damages under the consumer protection statutes. *See* Plaintiffs' Appendix 1.

15

**2. Plaintiffs May Sue Under Consumer Protection Statutes of North Carolina, Oklahoma, Pennsylvania and Rhode Island Because Plaintiffs Are Consumers and Purchasers of Goods For Personal, Family or Household Purposes.**

Plaintiffs are consumers under the laws of these states. Plaintiffs have brought this class action on behalf of "[a]ll persons and entities in the United States who, at any time from March 1, 2002 to June 30, 2006, purchased 100 mg and/or 150 mg Wellbutrin SR and/or their generic equivalents for purposes other than resale." SAC ¶ 6, 166. This includes consumers and third party payors. In addition, even though Plaintiffs' current named representatives are TPPs, courts hold that third-party payors such as Plaintiffs in this case may have standing to bring suit under a state's consumer protection laws, provided that such Plaintiffs meet the specific standing requirements of the applicable statute. *See In re Bextra & Celebrex Mktg Sales Practices & Liability Litig.*, 495 F. Supp. 2d 1027, 1032 (N.D. Cal. 2007).[3]

Plaintiffs meet the specific standing requirements for each state. Plaintiffs paid for Wellbutrin SR for the personal use of their members or participants. SAC ¶¶ 9-14. This fact alone is sufficient to qualify them as "consumers" under several of these states' respective consumer protection statutes. *See, e.g. Com. v. TAP Pharm. Products, Inc.,* 885 A.2d 1127, 1142-43 (Pa. Commw. 2005). Plaintiffs' response to Defendants' individual state challenges is set forth in Plaintiffs' Appendix 2.

As explained in Appendix 2, none of the states' consumer protection statutes require that the purchaser obtain the goods or services for *its own* personal, family, or household purposes. That some states forbid corporate intermediaries who buy from a manufacturer and sell to the consuming public from bringing actions under their consumer protection statutes should not be confused with the situation here, where Plaintiffs are purchasing, via reimbursement, *on behalf of*

---

[3] *Cited with approval in In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, No. 03-CV-4558, 2008 U.S. Dist. LEXIS 73690, at *68 (D.N.J. Sept. 3, 2008).

fund members and are therefore suffering economic damage from the Defendants' unfair and illegal business practices.

### 3. Plaintiffs' State Antitrust Claims Should Not Be Dismissed On The Grounds That They Are Not Sufficiently "Intrastate."

GSK suggests that fourteen state consumer protection or antitrust laws[4] require the offending action occur, at least partially, within the state, or affect intrastate commerce in some significant way. Motion at 14. Plaintiffs allege such intrastate conduct and effects. Defendants' argument ignores the plain language of the SAC. Plaintiffs allege that trade or commerce, including their payments for Wellbutrin SR occurred in each state where purchases were made. SAC ¶ 163. The SAC alleges Defendants manufactured, promoted, distributed and sold substantial amounts of Wellbutrin SR across state and national lines and throughout the United States. *Id.* Further, Plaintiffs have alleged that the effects of the Defendants' wrongful conduct have been felt in each state, which is sufficient to satisfy any intrastate requirement, even without actual sales or transactions occurring in the state. SAC ¶¶ 163-165. These allegations satisfy each of the above-listed state laws' requirements for intrastate conduct or effect.

Similar allegations have been held sufficient to satisfy intrastate impact requirements in at least two recent indirect purchaser antitrust cases. *See In re Intel Corp. Microprocessor Antitrust Litig.,* 496 F. Supp. 2d 404 at 411-2 (D. Del. 2007); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 170-75 (D. Me. 2004).

By alleging a nationwide course of conduct that affected commerce for bupropion hydrochloride in every single state where Wellbutrin SR was purchased, Plaintiffs have alleged a nexus sufficient to allow application of each state's law to purchases made and reimbursed in

---

[4] Defendants allege that New York's antitrust statutes applies to wholly intrastate actions; in Massachusetts, Michigan, Nevada, and West Virginia anticompetitive conduct must occur, at least in part, within the state; antitrust laws in California, Minnesota, North Carolina, and Wisconsin only contemplate claims with substantial intrastate effects; and Arizona, Florida, Missouri, New York and North Carolina have consumer protection laws that require some similar nexus.

that state.  In fact, for most of the states cited by GSK, the statutes and cases only require "some" or "any part" of the unlawful activity to occur in the state.  *See* Plaintiffs' Appendix 3.  Plaintiffs have alleged enough to show that the injurious conduct occurred within each state.  SAC ¶¶ 163-165.

Many of the other cases cited by Defendants present situations where the courts were faced with extreme extra-territorial application of the consumer protection statutes in question that are not present here.  *See* Appendix 3 for Plaintiffs' response to individual state challenges. *Cf. Daynard v. Ness, Motley, Loadholt, Richardson & Pool, P.A.*, 188 F. Supp. 2d 115 (D. Mass. 2002) (both parties to a transaction should "expect[ ], or at least … not be surprised to learn," that the law of the state where the transaction occurred governs).

### 4.  The Complaint Alleges Unconscionable And/Or Deceptive Conduct Sufficient To State A Claim Under State Consumer Protection Laws.

Plaintiffs allege fraudulent, deceptive and unconscionable commercial practices by GSK that satisfy GSK's arguments for the thirteen (13) jurisdictions cited in Section B.4. of GSK's motion.  Motion at 15.  In addition, GSK is incorrect that the statutes require such allegations. Plaintiffs respond to the arguments made with respect to each state consumer protection statute in Appendix 4.

The SAC sets out a comprehensive pattern of fraudulent and deceptive conduct by Defendants.  Plaintiffs claim that Defendants acted oppressively and unscrupulously by (1) making fraudulent statements to patent examiners during patent proceedings before the United States Patent and Trademark Office ("the PTO"); and (2) filing baseless patent infringement actions against manufacturers seeking to market a generic version of Wellbutrin SR based on (i) the  fraudulently obtained patent and (ii) knowingly invalid and unsupportable claims of patent infringement under the Doctrine of Equivalents ("DOE").  SAC ¶ 4.  The SAC describes how

Defendants sought to use one patent to delay entry into the market of competitors when Defendants knew that the patent did not cover those competitors' activities, and that the DOE was unavailable to them. SAC ¶ 5.

These allegations allege the fraudulent, deceptive or unconscionable conduct that Defendants' claim is absent from the SAC. Further, Plaintiffs allege that individual consumers were affected by GSK's conduct. The following are just a few examples:

- Plaintiffs bring their claims on behalf of all indirect purchasers of Wellbutrin SR, i.e. consumers and third-party payors... SAC ¶ 4

- Defendants conduct has had far-ranging impact on consumers and third-party payors across the United States. SAC ¶ 7;

- By engaging in anticompetitive conduct to prevent generic entry, Defendants effectively forced consumers to continue paying monopoly prices for Wellbutrin SR prescription products. SAC ¶ 7; and

- As a direct and proximate result of Defendants' unlawful conduct, consumers and third-party payors throughout the United States have been denied the benefits of free and unrestrained competition in the Wellbutrin SR market. SAC ¶ 8.

The suggestion that Plaintiffs do not allege fraudulent, deceptive or unconscionable conduct, or that consumers were victims of GSK's deceptive scheme, is disingenuous and ignores the plain language of the SAC.

### 5. Plaintiffs' Have Stated Class Claims Under The Antitrust and/or Consumer Protection Laws of California, Nevada, Wisconsin and New York.

Defendants argue that Plaintiffs may not recover on a unilateral monopolization claim under the laws of four states. *See* Motion at 17. GSK's reliance on *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009) is misplaced and does not warrant dismissal of Plaintiffs' claims. *See* Plaintiffs' Appendix 5. *Wellbutrin XL* did not address unilateral monopolization claims; rather, it addressed antitrust claims in the context of a conspiracy between two defendants.

**6.  Plaintiffs Have Sent Written Notice/Demand Letters to Defendants and Dismissal of Their Massachusetts Consumer Protection Claim Is Unwarranted.**

Plaintiffs sent a written notice/demand letter to Massachusetts in 2002 when Wellbutrin I was filed, and sent another letter in 2007 when the Consolidated Amended Complaint in Wellbutrin II was filed.   To suggest that Plaintiffs' Massachusetts claims should now be dismissed because a *third* demand letter was not sent 8 years after this litigation was initially commenced is simply ludicrous.  GSK's notice of Plaintiffs' claims is sufficient to satisfy Mass. Gen. L. ch. 93A's requirements.  *See* Plaintiffs' Appendix 6.

**C.  PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT SHOULD PROCEED.**

GSK's arguments related to unjust enrichment are another repeat of arguments made in its motion for judgment on the pleadings.  They should be rejected (again) as discussed below and in the attached appendices.

**1.  *Illinois Brick* is not a bar to Unjust Enrichment**

GSK is incorrect that Plaintiffs may not bring unjust enrichment claims where they lack indirect purchaser standing. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029 (N.D. Cal. 2007); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 (S.D. Fla. 2004); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000); *Cox v. Microsoft*, 8 A.D.3d 39, 41, N.Y.S.2d 778 147, 149 (1st Dep't 2004).  As the *Cardizem* court explained:

> Defendants' arguments fail to read Plaintiffs' complaint in the light most favorable to Plaintiffs and confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws. The authority Defendants rely upon fails to support their position that the success of Plaintiffs'

20

> common law unjust enrichment claims necessarily depends
> upon the success of their statutory claims. To the contrary, the
> courts often award equitable remedies under common law
> claims for unjust enrichment in circumstances where claims
> based upon contract or other state law violations prove
> unsuccessful.

*Cardizem*, 105 F. Supp. 2d at 669.  Asking this Court to hold that Plaintiffs cannot pursue

unjust enrichment claims in states that have not adopted *Illinois Brick* repealer statutes

imposes a privity requirement into unjust enrichment claims that does not exist: whether

Plaintiffs are indirect purchasers is not relevant because what matters is that a benefit was

conferred on Defendants. As the Northern District of Illinois recently stated while

explaining *Cardizem*:

> The [*Cardizem*] court concluded that the absence of privity
> or a direct conferral of benefits did not doom the plaintiffs'
> unjust enrichment claims. In so holding, the court observed
> that it is the total lack of a benefit conferred, rather than the
> indirect conferral of a benefit that warrants dismissal.
> Moreover, the *In re Cardizem* court noted that the central
> inquiry is whether the plaintiff's detriment is directly related
> to the defendant's benefit, and not whether the plaintiff directly
> conferred a benefit on the defendant. Lastly, the court
> observed that the question of whether the relationship
> between detriment and benefit is sufficient, is one of fact.

*Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 853-854 (N.D. Ill. 2006). Thus, Plaintiffs need

not allege that they had *direct* dealings with Defendant in order to state a claim for

common law unjust enrichment. *See State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142,

155 (Iowa 2001) ("we recognize that unjust enrichment is a broad principle with few

limitations. We have never limited this principle to require the benefits to be conferred

directly by the plaintiff.... Instead, benefits *can be direct or indirect, and can involve*

*benefits conferred by third parties*") (emphasis added, citations omitted); *Opelika*

*Production Credit Ass'n v. Lamb*, 361 So.2d 96, 99 (Ala. 1978) ("whenever one person adds

to the other's advantage *in any form*, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other … *[w]hether or not the benefit is directly conferred on the defendant is not the critical inquiry*; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct") (emphasis added); *Paschall's, Inc. v. Dozier*, 407 S.W. 2d 150, 155 (Tenn. 1966) ("It is well established that want of privity between the parties is no obstacle to recovery") (citation omitted); s*ee also Restatement (Third) of Restitution and Unjust Enrichment §3*, Cmt. (a) ("Any profit realized in consequence of intentional wrongdoing is unjust enrichment because … it results from a transfer to the defendant direct or indirect, that lacks adequate legal basis.")

### 2.   Plaintiffs May Allege Unjust Enrichment as an Equitable Remedy

GSK correctly notes that the Court did not rule on Defendants' generalized argument that unjust enrichment may not be used to circumvent limitations imposed by state antitrust laws.  In fact, the Court specifically noted that another court in this circuit *rejected* this identical argument.  *See D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006).  GSK attempts to distinguish *D.R. Ward* based on statutory limitations and indirect purchaser bars, which Plaintiffs address in Section I.A., supra, and on a state by state basis, which Plaintiffs address in Appendix 7.  Both arguments fail, and Plaintiffs have clearly shown that unjust enrichment may be claimed as an equitable remedy.

### 3.   Defendants Were Unjustly Enriched as a Result of a Benefit Directly Conferred by Plaintiffs

"Generally speaking, in order to state a claim for unjust enrichment, a plaintiff must allege (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust*

*Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).  Thus, unjust enrichment claims are based upon "'the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust.'"  *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 669 (E.D. Mich. 2000) (citation omitted).

Here, Plaintiffs' allegations satisfy these essential elements by alleging:  (1) Defendants have benefited from the monopoly profits on their sales of Wellbutrin SR (SAC ¶ 226); (2) Defendants' financial benefits result from overpayments for Wellbutrin SR made by Plaintiffs and the members of the class (*Id.* ¶¶ 227-230); and (3) It would be inequitable for the Defendants to be permitted to retain any of the overcharges for Wellbutrin SR derived from Defendants' unfair and unconscionable methods, acts and trade practices alleged in this Complaint (*Id.* ¶ 231).

GSK argues that Plaintiffs cannot assert an unjust enrichment claim under the laws of ten (10) states as indirect purchasers because the unjust benefit must be "directly" conferred.  GSK Motion at 21.[5]  GSK's arguments related to Georgia, Michigan, Missouri, North Carolina, Oklahoma, Pennsylvania and Wisconsin have been recently rejected by this court. *Powers v. Lycoming Engines,* 245 F.R.D. 226, 232 (E.D. Pa. 2007). Whether a "plaintiff seeking restitution for unjust enrichment must have conferred a benefit directly upon the defendant" is a "topic [that] has divided the courts."  *In re New Motor Vehicles Canadian Export Antitrust Litig*., 350 F. Supp. 2d 160, 214 n.103 (collecting cases holding indirect purchasers can and cannot recover restitution/disgorgement).  *See also* Daniel R. Karon, *Undoing the Otherwise Perfect Crime – Applying Unjust Enrichment to Consumer Price Fixing Claims*, 108 W. Va. L. Rev. 395, 418-

---

[5] Plaintiffs concede GSK's arguments on Florida regarding unjust enrichment.

428, 431 (2005 (recognizing split in authority and concluding under the better view, unjust enrichment does not require a plaintiff to directly confer a benefit on defendant). [6]

However, lack of directness is typically not a valid defense to such a cause of action. [7] Instead, "courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience." *Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 671. *See also K-Dur Antitrust Litig.,* 338 F. Supp. 2d at 544 ("Defendant's argument fails because a benefit conferred  need not mirror the actual loss of the plaintiff. . . .  The critical inquiry is whether the plaintiff's detriment and the defendant's benefit are *related to, and flow from,* the challenged conduct."); *In re Lorazepam & Clorazepate Antitrust Litig.,* 295 F. Supp. 2d 30, 50-52 (D.D.C. 2003) ("A plaintiff alleging an unjust enrichment may be seeking to recover a benefit which he gave directly to the Defendant, *or* one which was transferred to the Defendant by a third party"). Here, Plaintiffs have made such allegations and therefore have sufficiently alleged their unjust enrichment claims.  *See* SAC ¶¶ 226-31.

---

[6]  In *Powers,* this Court held that nine "states [Illinois, Iowa, Kansas, Maryland, Massachusetts, Michigan,  New York, Pennsylvania, and Tennessee] have explicitly determined that an indirect benefit is enough" *(id.* at 232 n.20); and that "[t]he remaining states' laws [Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Indiana, Kentucky, Louisiana, Maine, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming] have either implicitly accepted unjust enrichment claims based on an indirect benefit or have not addressed the issue.  *Id.* at 232..

[7]  *See In re ConAgra Peanut Butter Prod. Liab. Litig.*, MDL No. 1845, 2008 U.S. Dist. LEXIS 40753, at *37 (N.D. Ga. May 21, 2008) (finding the plaintiffs' benefit conferred on defendant to be "sufficiently direct" even though the defendant sells its products through retailers); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding that all benefits accrued by Defendants can be disgorged through unjust enrichment; the critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct) (citations omitted); *In re Pennsylvania Baycol Third-Party Payor Litig.*, No. 1874, 2005 Phila. Ct. Com. Pl. LEXIS 129, at *16 (Ct. Com. Pl. Apr. 4, 2005) (rejecting defendants' privity argument with regard to insurance company payments and stating that "no state has expressly extended this requirement to a breach of an implied warranty…"); *State Farm Gen. Ins. Co. v. Stewar*t, 681 N.E.2d 625, 633 (Ill. App. Ct. 1997) ('A plaintiff alleging an unjust enrichment may be seeking to recover a benefit which he gave directly to the Defendant, or one which was transferred to the Defendant by a third party.' (citation omitted)).  *See also* Daniel Karon, *Undoing the Otherwise Perfect Crime*, 108 W. Va. L. Rev. 395 (2005) at 421-28 (collecting state authorities demonstrating that "directness" or privity is not a valid defense to an unjust enrichment claim).

**4.   Plaintiffs' Texas, Iowa, New York, Kentucky and Tennessee Unjust Enrichment Claims Should Not Be Dismissed On The Grounds That The Injury Suffered Is "Too Remote" or That Plaintiffs Failed To Exhaust Remedies Against The Party With Whom They Have "Privity."**

Defendants improperly attempt to characterize the Third Party Payors' claims as derivative of injury to their plan members for the purpose of advancing their "remoteness" argument.  This court has correctly recognized the direct nature of the injury Third Party Payors suffer as a result of the conduct alleged in the SAC:

> The plaintiffs' allegation of injury, however, does not rely on injury to their members. The injury is alleged to have impacted the plaintiffs themselves through the act of reimbursing their members. *See* Opp'n at 15. Reimbursement for the purchase of drugs, the price of which is allegedly inflated through anticompetitive or otherwise illegal means, constitutes a monetary injury to the plaintiffs.

*In re Wellbutrin XL Antitrust Litigation*, 260 F.R.D. 143, 156 (E.D.Pa. 2009).  Clearly, Plaintiffs have alleged direct injury as a result of Defendants' unlawful conduct.  The authority cited by Defendants regarding unjust enrichment for Texas, Iowa and New York are easily distinguished as each case relies on allegations of the derivative nature of the injury incurred.  Accordingly, Defendants' arguments that Plaintiffs failed to exhaust their remedies with the party with whom they have "privity" under Kentucky and Tennessee law are equally unavailing.

## IV. CONCLUSION

For all of the above reasons, End-Payor Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss the Consolidated Second Amended End-Payor Class Action Complaint, and all other relief it deems just and appropriate.

25

Dated:  February 19, 2010     Respectfully submitted,


By: /s/ Joseph H. Meltzer

  Joseph H. Meltzer
  Terence S. Ziegler
  Casandra A. Murphy
  Barroway Topaz Kessler Meltzer &
   Check, LLP
  280 King of Prussia Road
  Radnor, PA  19087
  (610) 667-7706

  Thomas M. Sobol
  Debra Gaw Josephson
  Robert M. McGill
  Hagens Berman Sobol Shapiro LLP
  55 Cambridge Parkway, Suite 301
  Cambridge, MA  02142
  (617) 482-3700

  Michael M. Buchman
  Pomerantz Haudek Block Grossman
   & Gross LLP
  100 Park Avenue
  New York, NY  10017
  (212) 661-1100

  ***Co-Lead Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing ***End-Payor Plaintiffs' Brief in Opposition to Defendants' to Dismiss the Consolidated Second Amended End-Payor Class Action Complaint*** to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.  Those attorneys not registered with the Court's electronic filing system will be served via electronic mail this 19th day of February 2010.

Dated:  February 19, 2010                /s/ Joseph H. Meltzer
                                            Joseph H. Meltzer