## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 441 HEALTH & WELFARE PLAN, *et al.*, | : | Civil Action No. 04-cv-5898 |
| Plaintiffs, | : : : | Judge Lawrence F. Stengel |
| v. | : : | |
| GLAXOSMITHKLINE, PLC, *et al.*, | : : | |
| Defendants | : | |

## APPENDICES TO END-PAYOR PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED END-PAYOR CLASS ACTION COMPLAINT

# APPENDIX 1: PLAINTIFFS HAVE STANDING UNDER FIVE OF THE ANTITRUST AND STATE CONSUMER PROTECTION STATUTES

| State | Position from Defendants' Appendix B, p 1. | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| | **State Antitrust Laws** | |
| Florida | *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 103 (Ha. Dist. Ct. App. 1996) (affirming lower court's holding that indirect purchasers are prohibited from bringing claims under Florida's antitrust statute). | Plaintiffs do not assert claims under the Florida antitrust statute; they assert claims only under the consumer protection law. As a result, Defendants' argument that Plaintiffs' Florida state antitrust claim should be dismissed is moot. |
| Massachusetts | *Ciardi v. F. Hoffman-La Roche, Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002) ("The plaintiff does not dispute that she is an indirect purchaser . . . within the meaning of *Illinois Brick v. Illinois*, and that she is therefore foreclosed from pursuing her cause of action under the Antitrust Act.") (citation omitted). | Plaintiffs do not assert claims under the Massachusetts antitrust statute; they assert claims only under the consumer protection law. As a result, Defendants' argument that Plaintiffs' Massachusetts state antitrust claim should be dismissed is moot. |

| State | | |
|---|---|---|
| Idaho | *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.2d 896, 907 (N.D. Cal. 2008) (dismissing indirect purchaser class action in light of holding of Idaho Supreme Court that "indirect purchasers may not bring suit under the Idaho Consumer Protection Act"). | The Idaho Supreme Court's holding in *Wasden v. Daicel Chem. Indus., Ltd.*, provides that antitrust price-fixing claims are not covered by the Idaho Consumer Protection Act. 106 P.3d 428, 430 (Idaho 2005); *SRAM*, 580 F. Supp. 2d at 907 (citing *Wasden*). However, unlike *Wasden* and *In re SRAM*, Plaintiffs' Idaho CPA claim survive because they have alleged claims vastly different from price fixing allegations. Plaintiffs' claims thus fall within the enumerated acts in the Idaho Consumer Protection Act, IDAHO CODE ANN. § 48-603 (2008). *See* § 48-603(17) (it is unlawful to engage "in any act or practice which is otherwise misleading, false, or deceptive to the consumer."); § 48-603 (18) (prohibiting "[e]ngaging in any unconscionable method, act or practice in the conduct of trade or commerce," which includes "sales conduct or pattern of sales conduct would outrage or offend the public conscience," as provided in 48-603(C)(2)(d)).  The concerns expressed by the *Wasden* court, which found that the activities enumerated in ICPA, did not include price fixing do not apply and do not bar Plaintiffs' claims. |
| Missouri | *Ireland v. Microsoft Corp.*, No. 00-201515, 2001 WL 1868946, at *1 (Mo. Cir. Ct. Jan. 24, 2001) | The Missouri Merchandising Practices Act, Mo. REV. STAT. § 407.010 *et seq.* (2009) ("MMPA") |

(holding that "*Illinois Brick* is controlling and applicable to plaintiff's claims under the Missouri Antitrust Laws or the Missouri Merchandising Practices Act," thus "[i]t is clear that plaintiff, as an indirect purchaser, lacks standing to sue"); *see also Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 716 (Ohio Ct. App. 2003) (citing *Ireland* for Missouri bar on indirect purchaser standing under MMPA).

does not preclude claims by indirect purchasers. In *Gibbons v. Nuckolls, Inc.*, 216 S.W. 3d 667 (Mo. 2007), the Missouri Supreme Court held the "any person" language of the MMPA does not require a direct contractual relationship and, therefore, includes indirect purchasers:

The foregoing statutory framework permits an aggrieved party to seek relief from any "person," including a corporation such as Nuckolls. The statute's plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement through statutory construction.

\* \* \*

Nuckolls undertakes an exercise in strained statutory construction and urges a limited application ..., arguing that the MPA accords broader authority to the attorney general, while private plaintiffs can only sue a direct seller. This Court declines to impose such a significant limitation on Missouri consumers.

Relevant precedent consistently reinforces the plain language and spirit of the statute to further the ultimate objective of consumer protection, regardless of whether the suit is filed by the state or by an individual.

*Id.* at 670. In rejecting a limited interpretation similar to the one suggested by the Defendants, the

court in *Gibbons* also noted that experts generally consider direct privity to be irrelevant to the analysis under consumer protection laws. *Id.* at 670 n.13. *See also Torp v. GMAC*, No. 05-CV-1042, 2007 U.S. Dist. LEXIS 71319, at *7-8 (W.D. Mo. Sept. 24, 2007) (denying summary judgment on MPA claim by consumer who received a product or services through a third party).

Defendants' reliance on *Ireland v. Microsoft*, No. 00-CV-201515, 2001 WL 1868946, at *1 (Mo. Cir. Jan 24, 2001) is misplaced. That court only held the MMPA was inapplicable to the licensing arrangement involved in that case. *Id.* Accordingly, Plaintiffs' Missouri claim should be sustained, given the recent Missouri Supreme Court decision in *Gibbons*.

| Oklahoma | *Major v. Microsoft Corp.*, 60 P.3d 511, 517 (Okla. Civ. App. 2002) ("[Plaintiff] should not be permitted under the law to avoid the United States Supreme Court's policy choices expressed in *Illinois Brick* by recasting his claims of anticompetitive conduct as a Consumer Protection Act claim."). | The Oklahoma Consumer Protection Act prohibits "Unfair trade practices," defined as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. tit. 15, §753 (2009); OKLA. STAT. tit. 15, §752 (2009) (making unfair or deceptive trade practice unlawful). Unlike the plaintiffs in *Major v. Microsoft Corp.*, Plaintiffs' allegations satisfy the statutory requirements at this juncture. *See* SAC ¶¶ 7 ("The laws governing approval and marketing of pharmaceutical products are meant to balance the competing |

| |
|---|
| policy goals of providing new drug innovators an economic return on their investments while also ensuring consumers access to additional and more affordable generics versions of brand-name drugs."); and ¶ 8 ("[P]urchasers have been denied the opportunity to choose between the Wellbutrin SR brand-name prescription products and generic versions of these medications which would have been priced well below Wellbutrin SR."). |

| State | Position From Defendant's Appendix B, p. 2 | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| North Carolina | *Food Lion, Inc.* v. *Capital Cities/ABC, Inc.*, 194 F.3d 505, 520 (4th Cir. 1999) (noting that under the North Carolina Unfair and Deceptive Trade Practices Act, "one business is permitted to assert a UTPA claim against another business only when the businesses are competitors (or potential competitors) or are engaged in commercial dealing with one another"). | In North Carolina, "any person, firm, or corporation" may sue as a consumer under the state's consumer protection statute. N.C. GEN. STAT. §75-16 (2009). In *Food Lion*, the Fourth Circuit made clear that "businesses are sometimes allowed to assert UTPA claims against other businesses because unfair trade practices can affect the consumer as well." *Food Lion, Inc.* v. *Capital Cities/ABC, Inc.*, 194 F.3d 505, 519-20 (4th Cir. 1999). The Court found against Plaintiff in Food Lion because the deception of defendant in that case "did not harm the consuming public.'" Where Defendants' conduct delayed entry of generic versions of Wellbutrin SR consumers are affected. |
| Oklahoma | *Murray v. D & J Motor Co.*, 958 P.2d 823, 832 (Okla. Civ. App. 1998) (holding that a plaintiff cannot sue under the Oklahoma Consumer Protection Act unless the plaintiff can show that she "is a consumer and a consumer transaction is involved"). | In Oklahoma, the term "consumer" is not specifically defined, but a "consumer transaction" is defined as one involving "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or |

| | | |
|---|---|---|
| | | any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented." OKLA. STAT. TIT. 15, §752(2) (2009). The language of the statute thus gives no reason to assume that entities like Plaintiffs may not constitute consumers. |
| Pennsylvania | 73 Pa. Const. Stat. § 201-9.2 (providing a private cause of action only to persons that "purchase[] or lease[] goods or services primarily for personal, family or household purposes"). | The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PA UTPCPL") grants standing to persons "who purchase[] or lease[] goods or services primarily for personal, family or household purposes." 73 Pa.C.S § 201-9.2. The PA UTPCPL expressly defines "person" to include "corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." 73 Pa.C.S. § 201-2(2). In Com. v. TAP Pharm. Products, Inc., 885 A.2d 1127, 1142-43 (Pa. Commw. 2005), the court expressly held that the Pennsylvania Employees Benefit Trust Fund ("PEBTF") was a "person" under the PA UTPCPL, and that the drugs it purchased for its beneficiaries were "ultimately used for a personal, family, or household purpose" as required by the statute. Id. |
| Rhode Island | R.I. Gen. Laws § 6-13.1-5.2 (limiting a private cause of action under Rhode Island's Consumer Protection Act to "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes"); see also Kelley v. Cowesett Hills Assocs., 768 A.2d 425, 431 (R.I. 2001) ("To | The plain language of R.I. GEN. LAWS §6-13.1-5.2 (2009) grants standing to "any person." In Chen v. Subaru of Am., No. WC 2006-0132, 2008 R.I. Super. LEXIS 103, at *10 (R.I. Super. Ct. Aug. 25, 2008), the Court held "[N]othing in the plain language of that section requires a direct |

| | |
|---|---|
| | |
| support a claim under [] the Unfair Trade Practice and Consumer Protection Act [], a plaintiff must establish that he or she is a consumer, and that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce."). | vendor/consumer relationship before a cause of action may be maintained ... [r]ather, the section is broadly drafted to include "any person who purchases or leases goods primarily for personal, family or household purposes." The Court further noted that "Nowhere does the section state that only the first purchaser of a good has a cause of action." *Id.* |

## APPENDIX 3: PLAINTIFFS' ADEQUATELY PLEAD INTRASTATE COMMERCE UNDER STATE ANTITRUST AND CONSUMER PROTECTION LAWS

| State | Position From Defendants' Appendix B, pp. 3-5 | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| | **State Antitrust Laws** | |
| California | *Amarel v. Connell*, 248 Cal. Rptr. 276, 284 (Cal. Ct. App. 1988) (finding that the Cartwright Act requires that the "anticompetitive conduct in question has a direct, substantial and reasonably foreseeable effect within the state"). | The court in *Amarel v. Connell* held that "[s]o long as the anticompetitive conduct in question has a direct, substantial and reasonably foreseeable effect within the state, prosecution of the conduct under state law is not precluded." As noted in *Younger v. Jensen*, 26 Cal. 3d 397, 405 (1980), "[n]either the Sherman Act nor the federal prohibition of undue burdens on interstate commerce" prevent the Cartwright Act "from reaching transactions that have interstate aspects but significantly affect state interests." Plaintiffs have sufficiently alleged that GSK's activities have a direct, substantial and reasonably foreseeable effect within California by illegally delaying entry of generic Wellbutrin SR into the California marketplace. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
| Massachusetts | Mass. Gen. Laws ch. 93 § 3 ("Nothing in the Massachusetts Antitrust Act .. shall apply to any course of conduct, pattern of activity, or activities | Plaintiffs do not assert claims under the Massachusetts antitrust statute; they assert claims only under the consumer protection law. As a |

| | | |
|---|---|---|
| | unless they occur and have their competitive impact primarily and predominantly within the commonwealth and at most, only incidentally outside New England. . ."); *see also Ciardi v. Hoffman-LaRoche, Ltd.*, No. 99-3244, 2000 WL 33162197, at *3 (Mass. Super. Ct. Sept. 29, 2000) (noting that plaintiffs could not bring a claim under the Massachusetts antitrust statute because the conduct complained of did not occur in Massachusetts), *aff'd*, 762 N.E.2d 303 (Mass. 2002). | result, Defendants' argument that Plaintiffs' Massachusetts state antitrust claim should be dismissed is moot. |
| Michigan | *Aurora Cable Commc'ns, Inc. v. Jones Intercable, Inc.*, 720 F. Supp. 600, 603 (W.D. Mich. 1989) ("[Michigan Antitrust Reform Act] parallels the Sherman Antitrust Act as it applies to intrastate conduct"); *Peoples Say. Bank v. Stoddard*, 102 N.W.2d 777, 796 (Mich. 1960) (permitting application of state antitrust law in cases where alleged monopoly is "predominantly local"). | Defendants' reliance upon *Peoples Savings Bank* is misplaced, as the Supreme Court of Michigan merely noted that state antitrust laws may be applied where the alleged monopoly is "predominately local." *Peoples Savings Bank v. Stoddard*, 102 N.W.2d 777, 796 (Mich. 1960). The Supreme Court of Michigan's comments were permissive, not restrictive. "[N]either federal antitrust legislation nor the Commerce Clause precludes application of [Michigan] antitrust laws to all interstate commerce." *Sherwood v. Microsoft Corp.*, 2003 Tenn. Ct. App. LEXIS 539, at *22-23 (Tenn. Ct. App. July 31, 2003) (citing *Peoples Savings Bank*, 102 N.W.2d at 796).

Additionally, GSK's citation to *Aurora Cable* is misplaced. That case merely states that the Michigan Antitrust Reform Act parallels the Sherman Antitrust Act as it applies to intrastate commerce. Plaintiffs here have sufficiently alleged that Defendants' activities concern |

| | | |
|---|---|---|
| | | intrastate commerce in that their conduct affects the commerce of Michigan by illegally delaying entry of generic Wellbutrin SR into the Michigan marketplace. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
| Minnesota | Minn. Stat. Ann. § 325D.54 (antitrust statute applies only to (a) any contract, combination, or conspiracy when any part thereof was created, formed, or entered into in this state; and (b) any contract, combination, or conspiracy, wherever created, formed, or entered into; any establishment, maintenance, or use of monopoly power; and any attempt to establish, maintain, or use monopoly power; whenever any of the foregoing affects the trade or commerce of this state); *City of St. Paul v. FMC Corp.*, No. 3-89-0466, 1990 WL 265171, at *8 (D. Minn. Feb. 27, 1990) (interpreting Minnesota antitrust statute to permit recovery only by 'purchasers within Minnesota'). | Plaintiffs have sufficiently alleged that GSK's conduct affects the trade or commerce of Minnesota by illegally delaying entry of generic Wellbutrin SR into the Minnesota marketplace. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. <br><br> Further, Defendants' reliance upon *City of St. Paul v. FMC Corp.* for the proposition that recovery is limited to "purchasers within Minnesota" is without merit. Here, Plaintiffs do not seek to apply Minnesota law to proposed class members who suffered no injury in Minnesota. |
| Nevada | Nev. Rev. Stat. 598A.060(1) ("Every activity enumerated in this subsection constitutes a contract, combination or conspiracy in restraint of trade, and it is unlawful to conduct any part of any such activity in this State . . . ."). | Plaintiffs have sufficiently alleged that Defendants' attempt to monopolize and/or monopolization of the market for generic Wellbutrin SR occurred within the state of Nevada. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
| New York | N.Y. Gen. Bus. Law § 340 ("A monopoly in the conduct of any business, trade or commerce or in the | Plaintiffs maintain that their New York state claims should remain until the Supreme Court |

| | | |
|---|---|---|
| | furnishing of any service in this state, is or may be established or maintained, or whereby Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained . . . is hereby declared to be against public policy, illegal and void."); *Bowlus v. Alexander & Alexander Servs., Inc.*, 659 F. Supp. 914, 917 (S.D.N.Y. 1987) ("The language of the statute itself limits its application to conduct within the state.") (citing *Baker v. Walter Reade Theatres, Inc.*, 237 N.Y.S.2d 795, 797 (Sup. Ct. 1962)). | rules on *Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2160 (2009). |
| North Carolina | *Lawrence v. UMLIC-Five Corp.*, No. 06-20643, 2007 WL 2570256, at *7 (N.C. Super. June 18, 2007) (dismissing claim by foreign plaintiff against resident defendant because court was not persuaded that "that the Defendants' alleged acts have had a substantial in-state effect on North Carolina trade or commerce"). | The North Carolina consumer protection statute does not require that the illegal conduct take place within the state but only that the conduct have a substantial effect in North Carolina. *See Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (citing *The In Porters, S.A. v. Hanes Printables, Inc.* 663 F. Supp. 494, 501-502 (M.D.N.C. 1987)).

A UDTPA claim requires three elements: "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439 (N.C. Ct. App. 2005). Here, Plaintiffs have adequately alleged an unfair or deceptive act or practice (*see, e.g.* SAC ¶¶ 54-58) which affected commerce (*see, e.g.* SAC ¶¶ 163-165) and Plaintiffs were injured as a result *see, e.g.* |

| | | SAC ¶¶ 85-86). |
|---|---|---|
| | | Further, Defendants' reliance upon *Lawrence v. UMLIC-Five Corp* is misplaced. In that case, the court was faced with foreign plaintiffs alleging violations of North Carolina's UDTPA for alleged foreign injuries. *Lawrence v. UMLIC-Five Corp.*, No. 06-CV-20643, 2007 WL 2570256, at *6 (N.C. Super. June 18, 2007). Unlike the plaintiffs in *Lawrence* which alleged purely foreign injuries, Plaintiffs here allege injuries that occurred within North Carolina as a result of the illegally delayed entry of generic Wellbutrin SR into the North Carolina marketplace. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
| West Virginia | W. Va. Code § 47-18-4 ("[T]he establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, any part of which is within this State, by any persons for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful."); *Kessel v. Monongalia County Gen. Hosp. Co.*, 648 S.E.2d 366, 375 (W. Va. 2007) (noting that the West Virginia antitrust statute differs from the Sherman Act in that it applies to antitrust violations within the State). | The very language of the West Virginia statute confirms that Plaintiffs have satisfied its requirements on this motion to dismiss by alleging nationwide sales of generic Wellbutrin SR that necessarily includes sales in the state of West Virginia. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss.<br><br>"Federal courts have recognized that the Act applies to all anticompetitive conduct that produces in-state effects." *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-MDL-1935 (M.D. Pa. Mar. 4, 2009)(citations omitted). *See also In re New Motor Vehicles Canadian* |

| Wisconsin | *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 141 (Wis. 2005) (holding that a plaintiff under Wisconsin's antitrust act must allege that "(1) actionable conduct, such as the formation of a combination or conspiracy, occurred within [Wisconsin], even if its effects are felt primarily outside Wisconsin; or (2) the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in [Wisconsin]"). | The *Olstad* court also noted that "[t]he public interest and welfare of the people of Wisconsin are substantially affected if prices of a product are fixed or *supplies thereof are restricted* as the result of an illegal combination or conspiracy. The people of Wisconsin are entitled to the advantages that flow from free competition . . . ." *Olstad*, 700 N.W.2d at 146. Here, Plaintiffs have alleged that GSK's conduct prevented the entry of generic Wellburin SR into the Wisconsin marketplace to the detriment of consumers. *See, e.g.*, ¶ 8 ("[P]urchasers have been denied the opportunity to choose between the Wellburin SR brand-name prescription products and generic versions of these medications which would have been priced well below Wellburin SR."). Plaintiffs have also claimed the requisite intrastate conduct. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
|---|---|---|
| | *Export Antitrust Litig.*, 350 F. Supp. 2d 160, 170-75 (D. Me. 2004) (discussing West Virginia antitrust claims with respect to intrastate impact issue and finding that application was appropriate in case involving international automobile antitrust scheme, and citing an unpublished West Virginia opinion ruling that "the Antitrust Act prohibits a conspiracy that restrains West Virginia trade or commerce, regardless of the locus of the conspiracy.") (quoting *Bascher v. Abbott Labs.*, No. 94-C-755, at 2 (W. Va. Cir. Ct. Jan. 27, 1994)(unreported)). | |

| | Consumer Protection Laws | |
|---|---|---|
| Arizona | *State ex rel. Corbin v. Goodrich*, 726 P.2d 215, 221 (Ariz. Ct. App. 1986) (Arizona's Consumer Fraud Act applies to "acts committed within Arizona in violation of its provisions" to insure that "local business is conducted honestly'"). | The *Corbin* Court did not say the Consumer Fraud Act *only* applies to intrastate conduct. *Corbin*, 726 P.2d 215 at 221 (Ariz. Ct. App. 1986). In fact, courts have applied the Arizona Consumer Fraud Act to allegations of antitrust violations with nationwide effects. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 288 (D. Mass. 2004) (certifying class of Arizona purchasers of prescription drugs on allegations that drug company unlawfully delayed market entry of generic equivalent drug by filing frivolous patent infringement lawsuits). Plaintiffs here allege injuries that occurred within Arizona as a result of the illegally delayed entry of generic Wellbutrin SR into the Arizona marketplace. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
| Florida | *Montgomery v. New Piper Aircraft Inc.*, 209 F.R.D. 221, 227 (S.D. Fla. 2002) (holding that FDUTPA does not apply when the "alleged injuries did not take place 'entirely within [Florida].'"); *see also NationsRent Rental Fee Litig.*, No. 06-60924, 2009 WL 636188, at *4 (S.D. Fla. Feb. 24, 2009) (noting that "[FDUTPA and the Consumer Protection | Defendants incorrectly argue that the FDUTPA applies only when the alleged injuries did not take place entirely within Florida. *See In re Flonase Antitrust Litig.*, No. 08-CV-3301, 2010 U.S. Dist. LEXIS 4707, *25 (E.D. Pa. Jan. 21, 2010) (noting that the plain language of FDUTPA contains no such limitation). Moreover, GSK's reliance upon |

Act] are for the protection of in-state consumers" and that the statutes "prohibit unfair, deceptive, and/or unconscionable practices which have transpired within the territorial boundaries of this state") (citations omitted).

*New Piper Aircraft* is misplaced because the plaintiff there argued that FDUTPA could "apply not only to his claim but also [to] the nationwide claims of all putative class members, irrespective of where they lived and suffered alleged diminution in value injury." *Id.* at *25-26. "Unlike the named plaintiff in *New Piper*, named [P]laintiffs here do not seek to apply Florida law to plaintiffs who suffered no injury in Florida." *Id.* at *26 (citing *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 162 (E.D. Pa. 2009)). As such, Plaintiffs allege some injury in Florida which is sufficient to state a FDUTPA claim. *See id.* at 27.

| Missouri | Mo. Rev. Stat. § 407.020 (limiting Missouri Merchandising Practices Act claims to those based on conduct "in or from the state of Missouri"); *State ex rel Nixon v. Estes*, 108 S.W.3d 795, 800 (Mo. Ct. App. 2003) (noting that Missouri consumer protection statute regulates only "trade or commerce [that] originate[s] or occur 'in or from the state of Missouri'"). | Defendants' argument is inaccurate. First, the Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 (2009), defines "trade" and "commerce" as "any trade or commerce directly or indirectly affecting the people of this state."

Second, Defendant's description of the holding in *State ex rel Nixon v. Estes*, 108 S.W.3d 795 (Mo. Ct. App. 2003), is misstated. The court stated that:

In our view, the definition of trade or commerce in the second sentence of section 407.010(7) simply makes clear the intent of the General Assembly that the terms should be understood to include, but not necessarily be limited to, economic activity which has a ***direct or*** |

| State | | |
|---|---|---|
| | *indirect effect on the people of this state. **Therefore that definition does not, as argued by Estes, evince a legislative intent to restrict the application of section 407.020.1 to consumer victims domiciled within Missouri or to business transacted entirely within the state's territorial borders.*** | |
| | | *Id.* at 800 (emphasis added). As a result, Plaintiffs here have pled the requisite conduct under the Missouri statute by alleging nationwide sales of generic Wellbutrin SR, which has an effect on people in that state. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
| New York | *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195-96 (N.Y. 2002) (holding that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York" and that "[t]o apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law§ 349"); *Mayfield v. Gen. Elec. Capital Corp.*, No. 97-2786, 1999 WL 18286, at *10 (S.D.N.Y. Mar. 31, 1999) ("To state a claim under the Consumer Protection Act, Plaintiff must allege deceptive acts or practices that occurred within New York State."). | Plaintiffs maintain that their New York state claims should remain until the Supreme Court rules on *Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2160 (2009). |

| North Carolina | | |
|---|---|---|
| | *Lawrence v. UMLIC-Five Corp.*, No. 06-20643, 2007 WL 2570256, at *7 (N.C. Super. June 18, 2007) (dismissing claim by foreign plaintiff against resident defendant because court was not persuaded that "that the Defendants' alleged acts have had a substantial in-state effect on North Carolina trade or commerce"). | The North Carolina consumer protection statute does not require that the illegal conduct take place within the state but only that the conduct have a substantial effect in North Carolina. *See Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (citing *The In Porters, S.A. v. Hanes Printables, Inc.* 663 F. Supp. 494, 501-502 (M.D.N.C. 1987)).

A UDTPA claim requires three elements: "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439 (N.C. Ct. App. 2005). Here, Plaintiffs have adequately alleged an unfair or deceptive act or practice (*see, e.g.*, SAC ¶¶ 54-58) which affected commerce (*see, e.g.*, SAC ¶¶ 163-165) and Plaintiffs were injured as a result *see, e.g.* SAC ¶¶ 85-86).

Further, Defendants' reliance upon *Lawrence v. UMLIC-Five Corp.* is misplaced. In that case, the court was faced with foreign plaintiffs alleging violations of North Carolina's UDTPA for alleged foreign injuries. *Lawrence v. UMLIC-Five Corp.*, No. 06-CV-20643, 2007 WL 2570256, at *6 (N.C. Super. June 18, 2007). Unlike the plaintiffs in *Lawrence* which alleged purely foreign injuries, Plaintiffs here allege injuries that occurred within North Carolina as a result of the illegally delayed entry of generic Wellbutrin SR into the North |

| | | Carolina marketplace. *See* Section III.B.3. of End-Payor Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. |
|---|---|---|

| State | Position From Defendants' Appendix B, pp. 6-8 | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| Arizona | *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (holding that one element of a private cause of action under the Arizona Consumer Fraud Act is "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury") (citing *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983)). | "[t]he Arizona Consumer Fraud Act is a ***broad act*** intended to eliminate unlawful practices.... The Act further provides that it be construed consistent with the Federal Trade Commission Act...." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992). Monopolistic conduct prohibited by Sherman Act, such as the conduct alleged in the SAC, ***necessarily*** violates the FTC Act. *FTC v. Motion Picture Adver. Servs. Co., Inc.*, 344 U.S. 392, 394-95 (1953).

To the extent that the Arizona Consumer Fraud Act, ARIZ. REV. STAT. ANN. § 44-1522, *et seq.* (2008), requires a misrepresentation, Plaintiffs satisfy this element by alleging that GSK's patent applications contained statements that were materially misleading (SAC ¶¶ 54-58), fraudulent (SAC ¶¶ 125-142), and that GSK's patent infringement suits were a sham (SAC ¶¶ 70-77). With respect to proximate cause, the SAC alleges that FDA approval of generic bupropion hydrochloride was delayed as a result of GSK's actions. SAC ¶¶ 85-86, 108-09, 114-17. |

| Arkansas | | |
|---|---|---|
| | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008) (dismissing claims under Arkansas consumer protection act based on antitrust allegations because Court was "unwilling to expansively interpret statute" to include such conduct) (citing *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007) ("*GPU*") (dismissing claims under Arkansas consumer protection statute proscribing deceptive or unconscionable conduct because the statute requires "something more than merely alleging that the price of a product was unfairly high" and plaintiffs had not "pleaded the kind of grossly unequal bargaining power prohibited by these statutes")). | The ADPTA prohibits any unconscionable trade conduct and "unconscionable" is to be given a liberal construction. *In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, 2009 U.S. Dist. LEXIS 104114, at *35 (N.D. Ill. Nov. 5, 2009) (citing *State Ex. Rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999)). The court held that price-fixing was cognizable under the Arkansas Code, despite the decision in *GPU*. *Id* (citing *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009)).<br><br>Nevertheless, Plaintiffs' SAC does not allege price-fixing, but instead describes, in great detail, Defendants' unlawful and deceptive scheme to monopolize the market for Wellbutrin SR and delay generic competition. Defendants' conduct easily meets a number of the specifically enumerated "deceptive and unconscionable trade practices" set out in ARK. CODE ANN. § 4-88-107 (2008):<br><br>(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;<br><br>(2) Disparaging the goods, services, or |

| California | *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (limiting claims under [California Unfair Business Practices Act] to those based on conduct by which 'members of the public are likely to be deceived,' *i.e.* deceptive and consumer-oriented conduct) (citing *Bank of the West v. Superior Court*, 833 P.2d 545, 545 (Cal. 1992)). | business of another by false or misleading representation of fact;<br><br>* * *<br><br>(10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.<br><br>*See, e.g.,* SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO that generic manufacturers' ANDAs infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits filed by GSK to prevent consumers from access to less expensive, generic versions of bupropion hydrochloride.<br><br>Plaintiffs plainly satisfy this requirement. *See, e.g.,* SAC ¶ 7 ("The laws governing approval and marketing of pharmaceutical products are meant to balance the competing policy goals of providing new drug innovators an economic return on their investments while also ensuring consumers access to additional and more affordable generics versions of brand-name drugs."); and ¶ 8 ("[P]urchasers have been denied the opportunity to choose between the Wellbutrin SR brand-name prescription products and generic versions of these medications which would have been priced well below Wellbutrin SR."). |

| Colorado | | |
|---|---|---|
| | *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 144 (Colo. 2003) (stating that a "necessary element[]" under the Colorado Consumer Protection Act is an allegation that defendant "engaged in a deceptive trade practice, which requires a false statement of fact that either induces the recipient to act or has the capacity to deceive the recipient"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 179 (D. Me. 2004) (holding that allegations of anticompetitive behavior were not actionable under the Colorado Consumer Protection Act (CCPA) because neither the statute's enumerated deceptive practices nor its catch-all provision included such conduct). | The *Rhino* court was concerned only with "what a plaintiff must prove to establish a deceptive trade practice." *Rhino Linings USA v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 147 (Colo. 2003). The court noted, however, that "*unfair or deceptive trade practice[s]*" are actionable under Colorado's Consumer Protection Act. *Id.* at 146 (emphasis added).

All that Plaintiffs must allege at this juncture is that: (1) Defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of Defendants' business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) Plaintiffs suffered injury in fact to a legally protected interest; and (5) the challenged practice caused Plaintiffs' injury. *Id.* at 146-147 (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

In *New Motor Vehicles*, the plaintiffs' claims were dismissed for failure to meet the pleading requirements. Here, the SAC adequately sets forth the requisite conduct and Plaintiffs claims survive. *See generally* SAC ¶¶ 1-194. *See, e.g.*, SAC ¶ 7 ("The laws governing approval and marketing of pharmaceutical products are meant to balance the competing policy goals of providing new drug innovators an economic return on their |

| | | |
|---|---|---|
| | | investments while also ensuring consumers access to additional and more affordable generics versions of brand-name drugs.'")-8, 157-162. |
| Idaho | *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 435 (Idaho 2005) (holding that the ICPA cannot be construed to cover price fixing because statute only proscribes unconscionable "sales conduct that is directed at the consumer"); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F.Supp.2d 1072, 1110-11 (N.D. Cal. 2007) (following *Wasden* to hold that plaintiffs could not state a claim for price-fixing under Idaho's Unfair Trade Practices Act). | In *DRAM*, 516 F. Supp. 2d at 1110, relied on by Defendants, the court found *Wasden* to be dispositive, but only for the proposition that indirect purchasers cannot bring *price fixing* claims under the ICPA:<br><br>The Idaho Supreme Court's finding in this regard was explicit: '[p]rice-fixing is not listed in § 48-603 as conduct that constitutes either an unfair method of competition or an unfair or deceptive act or practice.'" In setting forth its reasoning, the *Wasden* court specifically noted that the legislative intent behind the [I]CPA required the court to give due consideration and weight to federal interpretation of the FTCA, but held that the [I]CPA was distinct from the FTCA in that it specifically "defines" what constitutes an unfair method of competition," and excludes price-fixing from that definition.<br><br>Plaintiffs' SAC does not allege price-fixing, but instead describes, in great detail, Defendants' unlawful and deceptive scheme to monopolize the market for Wellbutrin SR and delay generic competition. Defendants' conduct easily meets a number of the specifically enumerated "unfair methods and practices" set out in IDAHO CODE ANN. § 48-603 (2008); |

(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

* * *

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;

* * *

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparaging the goods, services, or business of another by false or misleading representations of fact;

* * *

(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer.

*See, e.g.,* SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO

| Michigan | *Rodriguez v. Berrybrook Farms, Inc.*, No. K86-161, 1990 U.S. Dist LEXIS 7678, at *39 (W.D. Mich. June 20, 1990) ("[E]ven when a class action is allowed under [Michigan's] Consumer Protection Act], an intent to deceive on the part of the defendants must be shown."). | that generic manufacturers' ANDAs infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits filed by GSK to prevent consumers from access to less expensive, generic versions of bupropion hydrochloride.)

The Michigan Supreme Court holds that: members of a class proceeding under the Consumer Protection Act need not individually prove reliance on the alleged misrepresentations. It is sufficient if the class can establish that a reasonable person would have relied on the representations. Further, a defendant's intent to deceive through a pattern of misrepresentations can be shown on a representative basis under the Consumer Protection Act.

*Dix v. American Bankers Life Assurance Co.*, 415 N.W.2d 206, 209 (Mich. 1987). Plaintiffs' allegations satisfy this requirement, particularly at the pleadings stage. *See, e.g.*, SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO that generic manufacturers' ANDAs infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits |

| Minnesota | *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 474 (Minn. 1999) ("To sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon. . ."); *Arrowhead Bluffs, Inc. v. Blackburn*, Nos. C8-03-301, et al., 2003 WL 22778336, at *2 (Minn. Ct. App. Nov. 25, 2003) ("[T]hese claims require that the plaintiff rely on it"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 189-90 (D. Me. 2004) (dismissing claims under Minnesota's Uniform Deceptive Trade Practices Act for failure to allege false statement). | filed by GSK to prevent consumers from access to less expensive, generic versions of bupropion hydrochloride.<br><br>When not conveniently truncated, the very language quoted by GSK makes clear that Plaintiffs' allegations satisfy the pleading requirements under Minnesota law. *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 474 (Minn. Ct. App. 1999) ("To sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon *regardless of whether any person has, in fact, been misled, deceived, or damaged*.") (emphasis added).<br><br>The SAC details Defendants' repeated misleading statements to the USPTO made with the presumption and intent that other would rely. *See, e.g.,* SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO that generic manufacturers' ANDAs infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits filed by GSK to prevent consumers from access to less expensive, generic versions of bupropion hydrochloride. |

| Missouri | *Willard v. Bic Corp.*, 788 F. Supp. 1059, 1071 (W.D. Mo. 1991) (dismissing an MMPA claim for failure to show unfair practices within meaning of Act because plaintiff did not fit "common fact pattern" of "misleading and deceptive representations or omissions directed toward the complaining customer"); *see also Courchene v. Citibank, N.A.*, No. 06-4026-CV, 2006 WL 2192110, at *2 (W.D. Mo. Aug. 1, 2006) (dismissing MMPA claim because plaintiff failed to plead any "fraudulent sale or advertisement with particularity"). | GSK improperly indicates that the language in *Willard* represents a requirement of the Missouri Merchandising Practices Act ("MMPA"), Mo. REV. STAT. § 407.010, *et seq* (2009). *Willard v. Bic Corp.*, 788 F. Supp. 1059, 1071 (W.D. Mo. 1991).<br><br>In fact, in the quoted language, the court was merely summarizing the cases cited by defendant Bic; it was not laying out a general rule:<br><br>After a survey of Missouri cases brought under the Act, Bic summarizes the common fact pattern; a defendant makes misleading and deceptive representations or omissions directed toward the complaining consumer with knowledge that the information is untrue or misleading and with knowledge that the consumer would rely on this information or consider it when making a purchase.<br><br>*Id.* Although this is certainly a "common fact pattern" for cases brought under the MMPA, it is not the only one possible.<br><br>GSK's continued reliance on vague language in *Willard* ignores the very clear language of the MMPA prohibiting "unfair practice[s]" in addition to those that are deceptive. Mo. REV. STAT. §407.020(1); *see also Schuchmann v. Air Services* |

*Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) ("A practice is 'unfair' if it: '(1) offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions *or* (2) is unethical, oppressive, or unscrupulous; *and* (3) presents a risk of, or causes, substantial injury to consumers.'").

*See also Mattingly v. Medtronic, Inc.*, 466 F. Supp. 2d 1170, 1173 (E.D. Mo. 2006) ("The [MMPA] was created to supplement the definition of common law fraud ... It attempts to preserve fundamental honesty, fair play and right dealings in public transactions .... To establish 'unlawful practice' it is not necessary to prove the elements of common law fraud.") (*citing Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 899-900 (Mo. Ct. App. 2003) (additional citation omitted). Furthermore, "[a]ctual communication is not necessary to state a claim for unfair practices under the M[MP]A." *Mattingly*, 466 F. Supp. 2d at 1173.

Plaintiffs here plainly make out a claim under the MMPA. The SAC details Defendants' repeated misleading statements to the USPTO. *See, e.g.,* SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO

| | | |
|---|---|---|
| | | that generic manufacturers' ANDAs infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits filed by GSK to prevent consumers from access to less expensive, generic versions of bupropion hydrochloride. |
| Nevada | Nev. Rev. Stat. § 41.600 (2) (enumerating exhaustive list of unlawful acts for purposes of recovery that are all "deceptive trade practices" directed at consumers or "consumer fraud"). | Pursuant to Nev. Rev. Stat. Ann. § 598.0915 (8) one who "[d]isparages the goods, services or business of another person by false or misleading representation of fact" has engaged this conduct by detailing Defendants' repeated misleading statements to the USPTO. *See, e.g.*, SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO that generic manufacturers' ANDAs infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits filed by GSK to prevent consumers from access to less expensive, generic versions of Wellbutrin SR. |
| New York | *Maurizio* v. *Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (requiring proof of a deceptive act directed at consumers as an essential element of a claim under New York's consumer protection act); *see also In re Automotive Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554 (E.D. Pa. 2007) ("[A]nticompetitive conduct alone does not constitute deceptive conduct under § 349 and [] to come within the scope of the | "Because 'section 349 is directed at wrongs against the consuming public … plaintiffs claiming the benefit of section 349 – whether individuals or [other entities] – must charge conduct of the defendant that is consumer-oriented.'" *Crippen* v. *Town of Hempstead*, No. 07-CV-3478, 2009 U.S. Dist. LEXIS 24820, at *46 (E.D.N.Y. Mar. 25, 2009) (*quoting Oswego* |

| | | |
|---|---|---|
| | statute, the Complaint must allege some additional deception or misrepresentation."). | *Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529 (N.Y. 1995)). GSK's actions are clearly "consumer-oriented" in that they were designed to prevent the consuming public's access to a less expensive form of Wellbutrin SR. |
| Oklahoma | *Major v. Microsoft Corp.*, 60 P.3d 511, 517 (Okla. Civ. App. 2002) ("[T]he [Oklahoma] CPA should not extend to anticompetitive conduct . . ."). | *See* Plaintiffs' Appendix 1 at pp 4-5. |
| Pennsylvania | 73 Pa. Stat. Ann. § 201-2(4); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 200-01 (D. Me. 2004) (holding that Pennsylvania consumer protection statute bars only activities enumerated at § 201-2(4) and those requiring "fraud or deception"); *see also Yeager's Fuel, Inc. v. Pa. Power & Light Co.*, 953 F. Supp. 617, 668 (E.D. Pa. 1997) (finding antitrust claims are not based on the type of "fraudulent, disparaging conduct that the [Pennsylvania] consumer protection statute] aims to protect"). | Pursuant to 73 Pa. Stat. Ann. § 201-2(4) the following are considered an unfair or deceptive act or practice: <br><br> (viii) Disparaging the goods, services or business of another by false or misleading representation of fact <br><br> (xxi) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding <br><br> Plaintiffs have alleged such conduct by detailing Defendants' repeated misleading statements to the USPTO. *See, e.g.,* SAC ¶¶ 54-58 (describing material misrepresentations made by GSK to the USPTO that generic manufacturers' ANDAs infringed GSK's patent); SAC ¶¶ 125-142 (detailing fraudulent statements made by GSK to USPTO that generic manufacturers' ANDAs |

| | | infringed GSK's patent); and SAC ¶¶ 63-117 (summarizing the sham patent infringement suits filed by GSK to prevent consumers from access to less expensive, generic versions of Wellbutrin SR. |
|---|---|---|

| State | Position From Defendants' Appendix B, p. 9 | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| California | Cal. Bus. & Prof. Code § 16720(e)(4) (prohibiting any "agree[ment] to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected."); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1378-80 (S.D. Ha. 2001) (finding that California's antitrust law, Cal. Bus. & Prof. Code § 16700-61, "does not proscribe unilateral conduct"). | Plaintiffs make claims under Ca. Bus. & Prof. Code §§ 16700, *et seq.*, and Ca. Bus. & Prof. Code §§ 17200, *et seq.* Defendants' misrepresent the holding in *Terazosin.* The Court held that "California's Unfair Competition Law proscribes 'unfair competition' in all of its forms, including 'any unlawful, unfair or fraudulent business act or practice.'" *Terazosin*, 160 F. Supp. 2d. at 1379. Further, the court could "find no authority for the proposition that unilateral monopolization of the market for a prescription drug would not offend its provisions." In fact, the court could not have been any more explicit in its holding: "The defendants insist that the Court must dismiss this claim because the Unfair Competition Law also does not apply to unilateral monopolization and its remedies are 'generally limited to injunctive relief and restitution." This Court does not concur. *Id.* |
| Nevada | Nev. Rev. Stat. § 598A.060 ("Every activity enumerated in this subsection constitutes a contract, combination or conspiracy in restraint of trade, and it is unlawful to conduct any part of any such activity in this State"). | Defendants argue that Plaintiffs may not recover on a unilateral monopolization claim under Nevada law. However, the Nevada statute lists as a prohibited act "attempting to monopolize **or** otherwise combining or conspiring to monopolize |

| | | |
|---|---|---|
| | | trade or commerce in this state." Nev. Rev. Stat. Ann. § 598A.060 (1)(b)(e) (emphasis added).<br><br>Therefore, by its very language, this statute includes unilateral monopolies. |
| New York | N.Y. Gen. Bus. Law § 340(1) (defining as illegal "[e]very contract, agreement, arrangement, or combination" in restraint of trade); *Creative Trading Co., Inc. v. Larkin-Pluznick-Larkin, Inc.*, 523 N.Y.S.2d 102, 103 (App. Div. 1988) ("[T]he Donnelly Act mandates that there be a conspiracy or reciprocal relationship between two or more entities before liability can be found."). | Plaintiffs maintain that their New York state claims should remain until the Supreme Court rules on *Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2160 (2009). |
| Wisconsin | Wis. Stat. § 133.03 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal......"). | Defendants argue that Plaintiffs may not recover on a unilateral monopolization claim under Wisconsin law. However, the Wisconsin statute states, "Every person who monopolizes, *or* attempts to monopolize, or combines or conspires with any other person or persons to monopolize may be fined . . . ." Wis. Stat. § 133.03(2) (emphasis added). Therefore, by its very language, this statute includes unilateral monopolies. The Wisconsin Supreme Court held that "[a]lthough subsection (2) implies government enforcement, Chapter 133 also authorizes private actions for persons injured by violations of its prohibitions [and such] private plaintiffs may seek relief that includes treble damages and reasonable attorney fees." *Conley Publ'g Group Ltd. v. Journal* |

| | | *Communs., Inc.*, 665 N.W. 2d 879, 884 (Wis. 2003). |

APPENDIX 6: PLAINTIFFS HAVE MET STATE NOTICE REQUIREMENTS

| State | Position From Defendants' Appendix B, p. 9 | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| Massachusetts | *Spring v. Geriatric Auth. of Holyoke*, 475 N.E.2d 727, 735 (Mass. 1985) (dismissing for failure to provide notice under Mass. Gen. Laws ch. 93A, § 9(3)); *see also McMahon v. Digital Equip. Corp.*, 944 F. Supp. 70, 77 (D. Mass. 1996) ("The plaintiff has not alleged that she sent a 30-day demand letter to [defendant], a prerequisite to bringing a suit . . . Such a failure is fatal on a motion to dismiss.") | The filing of numerous complaints well over 30 days prior to the filing of the SAC on December 2, 2009, effectively acted as sufficient notice of demand under Chapter 93A, § 9(3). *See, e.g., Towne v. North End Isuzu*, 10 Mass. L. Rep. 340, 1999 Mass. Super. LEXIS 302, at *5 (Mass. Super. Ct. June 17, 1999) ("[P]laintiffs need not have filed this pre-suit demand letter prior to the filing of any action against defendants, but merely before the c. 93A claims are propounded, either by a motion to amend the original suit, or in a separate suit.")

Plaintiffs sent a written notice/demand letter to Massachusetts in 2002 when Wellbutrin I was filed, and sent another letter in 2007 when the Consolidated Amended Complaint in Wellbutrin II was filed. |

## APPENDIX 7: PLAINTIFFS CAN MAINTAIN UNJUST ENRICHMENT CLAIMS AS AN EQUITABLE REMEDY

| State | Position From Defendants' Appendix B, pp. 12-14 | Law Confirming that Plaintiffs May Bring Claims Under the Following Statutes |
|---|---|---|
| Arkansas | Ark. Code Ann. § 4-75-315 (enumerating only actions by Attorney General as remedy for violations of statute, such that neither legal nor equitable remedy is available through private right of action). | Unjust enrichment is its own cause of action under Arkansas law. Plaintiffs are allowed to pursue it separate and apart from any tort or statutory claims. *See United States v. St. Joseph's Reg'l Health Ctr.*, 240 F. Supp. 2d 882, 889 (W.D. Ark. 2002) (citations omitted) (confirming that unjust enrichment is not a remedy, but a separate cause of action). |
| Colorado | Colo. Rev. Stat. § 6-4-114 ("Any person injured in its business or property by reason of any violation of this article may sue therefore and, if successful, shall recover any actual damages sustained by such person. If the violation alleged and proved is determined by the court to be a per se violation of this article, such person may recover three times the actual damages sustained by such person.") | Colorado recognizes unjust enrichment to be a stand-alone cause of action that can be brought on its own or alongside other statutory and tort claims. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) (internal citations omitted) ("The scope of the remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another.") |
| Georgia | Ga. Code Ann. § 13-8-40(a) ("In addition to temporary or permanent injunctive relief . . . any | In *Infor Global Solutions, Inc. v. Hanover Foods Corp.*,No. 08-CV-3757, 2009 U.S. Dist. LEXIS |

| | | |
|---|---|---|
| | person who shall be injured in his business or property by reason of anything forbidden in this article may bring an action therefore in the appropriate superior court of this state and shall recover the actual damages sustained and the costs of such action, including a reasonable attorney's fee.") | 77278, at *5 (N.D. Ga. Aug. 28, 2009), the court denied defendants' motion to dismiss an unjust enrichment claim and recognized it as a stand-alone legal claim. |
| Louisiana | La. Rev. Stat. Ann. § 51:137 ("Any person who is injured in his business or property by reason of any act or thing forbidden by this Part may sue in any court of competent jurisdiction and shall recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney's fee.") | The Louisiana Civil Code codifies unjust enrichment as an independent cause of action, with the following elements: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to the plaintiff. La. Civ. Code 2298 (2009); *Finova Capital Corp. v. IT Corp.*, 774 So. 2d 1129, 1132 (La. App. 2 Cir. Dec. 15, 2000) (citing same). |
| Massachusetts | Mass. Gen. Laws Ch. 93, § 12 ("Any person who shall be injured in his business or property by reason of a violation of the provisions of this chapter may sue therefore and recover the actual damages sustained, together with the costs of suit, including reasonable attorney fees. If the court finds that the violation was engaged in with malicious intent to injure said person, the court may award up to three times the amount of actual damages sustained, together with the costs of | Plaintiffs assert claims under the Massachusetts Consumer Protection Act, chapter 93A, not the Antitrust Act, chapter 93. Indirect purchasers can maintain unjust enrichment claims alongside claims under Massachusetts' consumer protection statute. *In re Flonase Antitrust Litig.*, No. 08-CV-3301, 2010 U.S. Dist. LEXIS 4707 (E.D. Pa. Jan. 21, 2010) (plaintiffs validly asserted unjust enrichment claim and granted leave to file demand letter to satisfy ch. 93A); *Health Care Serv. Corp.* |

| State | Statute | Commentary |
|---|---|---|
| | suit, including reasonable attorneys' fees. Any person may sue for injunctive relief to prevent threatened damage to his business or property under the same conditions and principles as injunctive relief is granted by courts of equity.") | v. *Mylan Labs, Inc.* (*In re Lorazepam & Clorazepate Antitrust Litig.*), 295 F. Supp. 2d 30, 47, 50-51 (D.D.C. 2003) (third party payor plaintiffs could maintain claim under ch. 93A as well as unjust enrichment claim against drug manufacturer). |
| Minnesota | Minn. Stat. § 325D.57 ("Any person, any governmental body, or the state of Minnesota or any of its subdivisions or agencies, injured directly or indirectly by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.") | Third party payors have a general right to sue in antitrust under Section 325D.57 of the Minnesota Antitrust Law and can also state a claim for unjust enrichment; though the court should avoid duplicative recovery. *In re Lorazepam*, 295 F. Supp. 2d at 34-36, 50-51; *Gordon v. Microsoft Corp.*, No. 00-CV-5994, 2001 U.S. Dist. LEXIS 26360, at *4-5, *39-40 (D. Minn. Mar. 30, 2001) (certifying class of indirect purchasers under Minnesota Antitrust Law). |
| Nevada | Nev. Rev. Stat. § 598A.210(2) ("Any person injured or damaged directly or indirectly in his business or property by reason of a violation of the provisions of this chapter may institute a civil action and shall recover treble damages, together with reasonable attorney fees and costs."). | GSK does not cite any statutory language abrogating Plaintiffs' equity-based unjust enrichment claims. Courts have rejected GSK's argument that Plaintiffs cannot maintain a claim for unjust enrichment in states that allow indirect purchasers to maintain claims for damages under either their antitrust or consumer protection statutes. *See K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 544. Plaintiffs may assert unjust enrichment claims as alternative theories of recovery. *Id.* To argue otherwise attacks the core principle that plaintiffs are permitted to plead alternative theories |

| State | | |
|---|---|---|
| | | of recovery. FED. R. CIV. P. 8(a)(3). |
| North Carolina | N.C. Gen. Stat. § 75-16 ("If any person shall be injured in the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.") | Plaintiffs do not seek equitable relief under the UDTPA, but rather, Plaintiffs seek equitable relief under a separate claim for unjust enrichment. While Defendant is correct in noting that N.C. Gen. Stat. § 75-16 does not provide equitable relief for violations of N.C. Gen. Stat. § 75-1.1, § 75-16, it does not prohibit separate claims for unjust enrichment or any other cause of action. North Carolina and Fourth Circuit courts have allowed claims of unjust enrichment to continue, even where claims for unfair and deceptive trade practices were dismissed. *See, e.g., TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534 (M.D.N.C. 2007) (denying motion to dismiss the unjust enrichment claim, but granting motion to dismiss the UDTPA claim due to failure to allege a specific deceptive act). |
| Rhode Island | R.I. § 6-35-11 ("Any person or public body, including the United States, who shall be injured in his or her business or property by reason of a violation of the provisions of this chapter may sue in superior court and shall recover threefold the damages sustained by him or her, together with reasonable costs of suit and any reasonable attorneys' fees that may be granted at the discretion of the court. The reasonable costs of suit may include, but shall not be limited to, the expenses of discovery and document reproduction."). | Plaintiffs assert claims under the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1 et seq., not the Antitrust Act. The Act explicitly allows the court discretion to award other equitable relief as deemed necessary or proper. R.I. Gen. Laws § 6-13.1-5.2(a).<br><br>Several courts have allowed unjust enrichment claims to be asserted alongside state antitrust and consumer protection statutes. *In re Static Random Access Memory Antitrust Litig.*, No. 07-CV-1819, |

| Texas | Tex. Bus. & Com. Code Ann. § 15.21(a)(1) ("Any person or governmental entity . . . whose business or property has been injured by reason of any conduct declared unlawful in Subsection (a), (b), or (c) of Section 15.05 of this Act may sue any person, other than a municipal corporation, . . . and shall recover actual damages sustained, interest on actual damages for the period beginning on the date of service of such person's pleading setting forth a claim under the antitrust laws and ending on the date of judgment. . . and the cost of suit, including a reasonable attorney's fee; provided, however, that if the trier of fact finds that the unlawful conduct was willful or flagrant, it shall increase the recovery to threefold the damages sustained and the cost of suit, including a reasonable attorney's fee; provided that interest on actual damages as specified above may not be recovered when recovered damages are increased threefold."). | Plaintiffs do not assert claims under the Texas Antitrust Act, only for common law unjust enrichment. Plaintiffs' claims are based on reimbursements for purchases of Defendant's product and Defendant's unfair and inequitable overcharge for that product.

"The unjust enrichment doctrine applies principles of restitution to disputes where there is no actual contract and is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution." *Walker v. Cotter Props.*, 181 S.W.3d 895, 900 (Tex. App. Dallas 2006). |
| | | 2009 U.S. Dist. LEXIS 110407, at *29, 77 (N.D. Cal. Nov. 25, 2009) (certifying class of indirect purchasers under state antitrust and consumer protection statutes, as well as for claims of unjust enrichment); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009) (indicating unjust enrichment claims allowed where violation of state Consumer Protection Act alleged, but requiring complaint to identify the states under whose law plaintiffs brought their claims). |

| West Virginia | W.V. § 47-18-9 ("Any person who shall be injured in his business or property by reason of a violation of the provisions of this article may bring an action therefore and shall recover threefold the damages sustained by him, together with reasonable attorneys' fees, filing fees and reasonable costs of the action. Reasonable costs of the action may include, but shall not be limited to the expenses of discovery and document reproduction."). | Several courts have allowed unjust enrichment claims to be asserted alongside state antitrust and consumer protection statutes. *In re Static Random Access Memory Antitrust Litig.*, No. 07-CV-1819, 2009 U.S. Dist. LEXIS 110407, at *29, *80 (N.D. Cal. Nov. 25, 2009) (certifying class of indirect purchasers in West Virginia for violations of state antitrust and consumer protection laws, as well as for claims of unjust enrichment); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009) (indicating could allow unjust enrichment claims in addition to violation of state Antitrust Act). |