IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEET METAL WORKERS | : | |
| LOCAL 441 HEALTH & WELFARE | : | |
| PLAN, et al, | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-5898 |
| | : | |
| GLAXOSMITHKLINE, PLC, et al, | : | |
| Defendants | : | |

O P I N I O N

STENGEL, J.                                                    September  7,  2010

        In an order dated November 3, 2009, this Court granted in part and denied in part a
motion filed by GlaxoSmithKline, et al ("GSK") for judgment on the pleadings, seeking
dismissal of the end-payor plaintiffs' amended class action complaint.  Plaintiffs, indirect
purchasers of Wellbutrin SR, were granted leave to amend their complaint a second time
to assert causes of action in those states where they purchased or into which they sent
reimbursements for Wellbutrin SR.  GSK has filed a motion to dismiss plaintiffs' second
amended complaint, which asserts causes of action under eighteen state antitrust and/or
consumer protection statutes and under the common law of unjust enrichment in twenty-
seven states.  For the reasons set forth below, I will grant the motion in part and deny it in
part.

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    PRELIMINARY CHOICE OF LAW QUESTION . . . . . . . . . . . . . . . . . . . . 8

IV.     DISCUSSION OF STATE LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . 14
        A.      Plaintiffs' Monopolization Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                1.      Arizona . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                2.      California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                3.      Florida. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
                4.      Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                5.      Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                6.      Minnesota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                7.      Nevada . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
                8.      New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
                9.      North Carolina . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
                10.     West Virginia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
                11.     Wisconsin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        B.      Plaintiffs' Unfair and Deceptive Trade Practice Claims . . . . . . . . . . . . . .34
                1.      Arizona . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
                2.      Arkansas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
                3.      California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
                4.      Colorado . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
                5.      Florida . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
                6.      Idaho . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
                7.      Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
                8.      Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
                9.      Minnesota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

|     | 10. | Missouri | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 61 |
|     | 11. | Nevada | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 65 |
|     | 12. | New York | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 66 |
|     | 13. | North Carolina | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 68 |
|     | 14. | Oklahoma | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 72 |
|     | 15. | Pennsylvania | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 74 |
|     | 16. | Rhode Island | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 77 |

C.     Plaintiffs' Unjust Enrichment Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

        a.      Can the Plaintiffs Bring Unjust Enrichment Claims in States Where Indirect Purchasers Have Been Barred From Pursuing State Antitrust and Consumer Protection Claims? . . . . . . . . . . . . . . . . . . . 81

        b.      Can the Plaintiffs Bring Unjust Enrichment Claims Where Applicable State Antitrust And Consumer Protection Statutes Do Not Provide for an Equitable Remedy? . . . . . . . . . . . . . . . . . . . 86

        c.      Do Plaintiffs Need to Show Conferral of a Direct Benefit In Order to Maintain an Unjust Enrichment Claim? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

|     | 1. | Alabama | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 92 |
|     | 2. | Arkansas | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 94 |
|     | 3. | Arizona | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 95 |
|     | 4. | California | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 95 |
|     | 5. | Colorado | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 98 |
|     | 6. | Florida | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 101 |
|     | 7. | Georgia | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 101 |
|     | 8. | Idaho | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 103 |
|     | 9. | Iowa | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 103 |
|     | 10. | Illinois | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 106 |
|     | 11. | Indiana | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 107 |
|     | 12. | Kentucky | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 108 |
|     | 13. | Louisiana | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 109 |

14.  Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

15.  Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112

16.  Minnesota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

17.  Missouri . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

18.  Nevada . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

19.  New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

20.  North Carolina . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

21.  Oklahoma . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

22.  Pennsylvania . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124

23.  Rhode Island . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

24.  Tennessee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129

25.  Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131

26.  West Virginia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132

27.  Wisconsin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136

## I.    INTRODUCTION

On December 2, 2009, plaintiffs IBEW - NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, MC - UA Local 119 Health and Welfare Plan, A.F. of L. - A.G.C. Building Trades Welfare Plan, United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, and Sidney Hillman Health Center of Rochester, Inc. ("the plans") filed their second amended class action complaint ("SAC") against GlaxoSmithKline PLC, et al ("GSK").  (Document # 245).  These end payor plaintiffs claim GSK filed sham patent litigation against companies seeking to manufacture and market generic versions of Wellbutrin SR in order to maintain their monopoly over sales of the drug.[1]

Before the Court is GSK's motion to dismiss the second amended complaint, in which the end-payor plaintiffs assert antitrust, consumer protection, and unjust enrichment claims in states in which they, or the members they represent, purchased Wellbutrin SR.  In Illinois Brick Co., et al v. State of Illinois, et al, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the Supreme Court faced the question whether indirect purchasers can sue for overcharges resulting from Sherman Act violations by asserting that those overcharges were passed on through the chain of distribution of a product.  It

---

[1] For more details concerning plaintiffs' allegations, see Sheet Metal Workers Local 441 Health & Welfare Plan, et al v. GlaxoSmithKline, PLC, 263 F.R.D. 205 (E.D. Pa. Nov. 2, 2009). The underlying factual allegations of the original complaint and the second amended complaint remain unchanged.

ruled in the negative, finding that its decision in <u>Hanover Shoe, Inc. v. United Shoe</u>

<u>Machinery Corp.</u>, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), prohibiting

antitrust plaintiffs from asserting a pass-on defense in actions brought by direct

purchasers applied as well to the offensive use of a pass-on theory.  <u>See</u> <u>id.</u> at 735-739.  It

reasoned that "permitting the use of pass-on theories . . . would essentially transform

treble-damages actions into massive efforts to apportion the recovery among all potential

plaintiffs that could have absorbed part of the overcharge from direct purchasers to

middlemen to ultimate consumers."  <u>Id.</u> at 737.  However, when later faced with the

question whether "[the rule articulated in <u>Illinois Brick</u>] limiting recoveries under the

Sherman Act also prevents indirect purchasers from recovering damages flowing from

violations of state law, despite express state statutory provisions giving such purchasers a

damages cause of action," the Court found that it did not.  <u>California v. ARC America</u>

<u>Corp</u>, 490 U.S. 93, 100, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989).  It reasoned that

the decision in <u>Illinois Brick</u> to protect antitrust defendants from multiple liability was not

an express federal policy but rather, was an interpretation of section 4 of the Clayton Act.

<u>Id.</u> at 105 ("When viewed properly, <u>Illinois Brick</u> was a decision construing the federal

antitrust laws, not a decision defining the interrelationship between the federal and state

antitrust laws.").

 The indirect purchasers in this case are therefore barred from asserting federal

antitrust claims and assert only statutory state law antitrust and consumer protection and

state common law unjust enrichment claims.


## II.        STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Twombly, 550 U.S. at 561.  Rather, a "complaint must allege facts suggestive of [the proscribed] conduct,"  Twombly, 550 U.S.

at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal – – U.S. – –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss."  Id. at 1950 (emphasis added).  In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief.  Iqbal, 129 S.Ct. at 1950 (emphasis added).


III.   **PRELIMINARY CHOICE OF LAW QUESTION**

Before reaching the substance of plaintiffs' state law claims, I will address GSK's argument that I should apply the law of the plaintiffs' home states, and not the laws of the states in which they purchased Wellbutrin SR, in resolving this motion.  When I granted in part and denied in part GSK's motion for judgment on the pleadings, I ruled, in

conformity with decisions of Judges McLaughlin and Brody[2], that the plans may assert

causes of action in states where their members purchased Wellbutrin SR.  I granted the

end-payor plaintiffs leave to amend their complaint to assert causes of action in those

states where their members purchased Wellbutrin SR.  It is into these states that the plans

sent their members reimbursements for the drug.

GSK now argues that plaintiffs' claims should be governed by the laws of their

home states - the states where they are located.[3]  It argues that, in deciding GSK's earlier

---

[2]  Pending before Judge McLaughlin is In re Wellbutrin XL Antitrust Litig. 260 F.R.D.
143 (E.D.Pa. 2009).  Although factually distinct from this case in some important respects (i.e.,
that plaintiffs in Wellbutrin XL allege a conspiracy between GSK and a generic drug
manufacturer to delay the entry of other generic competition into the market for Wellbutrin XL),
the named end-payor plaintiffs in Wellbutrin XL, like the ones in this case, are welfare benefit
plans that sent reimbursements for the drug into other states.

Pending before Judge Brody is In re Flonase Antitrust Litig., 692 F. Supp. 2d 524
(E.D.Pa. 2010).  The end-payor plaintiffs in Flonase are also welfare benefit plans, who allege
GSK filed sham citizen petitions in order to delay entry of generic versions of Flonase into the
market.

[3]  Plaintiff IBEW - NECA Local 505 Health & Welfare Plan is located in Mobile,
Alabama, and purchased or reimbursed its members for purchases of Wellbutrin SR in Florida,
Missouri, Louisiana, Oklahoma, Massachusetts.

Plaintiff Sheet Metal Workers Local 441 Health & Welfare Plan is located in Mobile,
Alabama and purchased or reimbursed for purchases of Wellbutrin SR in Florida.

Plaintiff MC - UA Local 119 Health and Welfare Plan is located in Mobile, AL and
purchased or reimbursed its members for purchases of Wellbutrin SR in West Virginia, Rhode
Island, Georgia, Texas, and Idaho.

Plaintiff A.F. of L. - A.G.C. Building Trades Welfare Plan is located in Mobile, AL and
purchased or reimbursed its members for purchases of Wellbutrin SR in Florida.

Plaintiff United Food and Commercial Workers Unions and Employers Midwest Health
Benefits Fund is located in Illinois and purchased or reimbursed its members for purchases of
Wellbutrin SR in Alabama, Arkansas, Arizona, California, Colorado, Florida, Iowa, Illinois,
Indiana, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Nevada, Oklahoma,
Pennsylvania, Tennessee, and Wisconsin.

Plaintiff Sidney Hillman Health Center is located in Rochester, NY and purchased or
reimbursed its members for purchases of Wellbutrin SR in Florida, North Carolina, and New

motion for judgment on the pleadings, I did not fully address the choice of law issue

presented here, which is whether the plans have a cause of action in states where they are

not located, but in which they purchased Wellbutrin SR or into which they sent

reimbursements to their members for their members' purchases of Wellbutrin SR.

According to GSK, Pennsylvania choice of law rules mandate the application of the law

of the plans' home states because (1) the reimbursement states (the states where the plans

are not located, but into which they sent reimbursements for their members' purchases of

Wellbutrin SR) are interested in protecting their own consumers, and not benefit plans

located in other states; (2) the home states (those states in which the plans are located, or

have their principal place of business) would have a greater interest in protecting the

plans located there, but do not permit recovery in this case; and (3) the plans do not have

substantial physical contacts with the reimbursement states.  See Def.'s Mot. To Dismiss,

6-11.  GSK insists that, because the plans themselves are the named plaintiffs, and their

members are but putative class members, the plans cannot base their case on their

members' purchases of Wellbutrin SR.  Def.'s Reply to Pl.'s Response, 1-2.  The issue of

consumer purchases of Wellbutrin SR, it asserts, should only arise at the class

certification stage.

     The plaintiffs respond that the states where purchases of Wellbutrin SR were made

and into which reimbursements were sent have a strong interest in protecting consumers

---

York.

who both reside in *and* buy products within their borders, and point to numerous court decisions both within this Circuit and outside of it allowing indirect purchasers to assert claims in states where drug reimbursements to members were made.  See Pl.'s Resp. To Def.'s Mot. To Dismiss, 8-10.

In deciding GSK's motion for judgment on the pleadings, I ruled that the end-payor plaintiffs had standing to raise claims in states where their members purchased Wellbutrin SR.  Judge McLaughlin issued a similar ruling in In re Wellbutrin XL Antitrust Litig., 260 F.R.D. at 156-57. I quoted a portion of Judge McLaughlin's opinion:

> The named plaintiffs have identified an injury in fact that is fairly traceable to conduct taking place in states where their members purchased Wellbutrin XL. Those injuries would be redressed by a favorable determination under the laws of the states where their members purchased Wellbutrin XL.  The elements of a standing analysis of the plaintiffs' claims have clear connection to the states where the plaintiffs themselves are located and the states where their members made purchases of Wellbutrin XL.  Therefore, plaintiffs[] have standing to assert claims in those states.

Wellbutrin XL Antitrust Litig., 260 F.R.D. at 156-57.

GSK claims I did not make a clear ruling on the choice of law issue in deciding the motion for judgment on the pleadings.  I observed in a footnote that "[u]nder Pennsylvania law, the law of the jurisdiction with the most significant interest in the litigation generally applies."  Sheet Metal Workers Local 441 Health & Welfare Plan, et al v. GlaxoSmithKline, PLC, 263 F.R.D. 205, 211, n.12 (E.D.Pa. 2009).  After setting forth the relevant factors under Pennsylvania choice of law principles, I concluded that, keeping in mind Pennsylvania's functional approach to the choice of law issue, "[g]iven

-11-

the fact that the alleged injury occurred in each of the fifty states, and given each state's strong interest in protecting its own consumers (but a far weaker interest in protecting consumers from other states), it is clear (and in the context of this motion the parties do not dispute) that the law of a particular state will govern any overcharge injury arising in that state." Id. (internal citations omitted).

GSK claims, in its reply to the plaintiffs' response to its motion, that the plaintiff plans have conflated themselves with potential consumer class members. See Def.'s Reply to Pl.'s Resp., II(A). Plaintiffs' second amended complaint alleges that GSK forced consumers to continue paying monopoly prices for Wellbutrin SR and that, as a result of GSK's actions, "consumers and third-party payors throughout the United States have been denied the benefits of free and unrestrained competition in the Wellbutrin SR market." SAC, ¶¶ 7,8. However, GSK ignores that, even though class certification is still pending, the named plaintiffs have alleged that they represent a limited class of consumers—those plan members who have purchased or paid for Wellbutrin in certain states. See e.g., SAC ¶ 9 (Plaintiff IBEW - NECA Local 515 Health & Welfare Plan . . . represents participants who have family coverage and purchased or paid for Wellbutrin SR during the Class Period other than for resale and were injured[.]"); ¶ 10 ("Plaintiff Sheet Metal Workers Local 441 Health & Welfare Plan . . . represents participants who have family coverage and who purchased or paid for Wellbutrin SR. During the Class Period, Sheet Metal Workers Plan *and its members* were indirect purchasers of

-12-

Wellbutrin SR[.]").  Therefore, the named plaintiffs already represent consumers—their

members—who purchased Wellbutrin in states that are not the plans' home states.

       In support of their argument that the plans' claims on behalf of

consumers—members of the plans who purchased and used Wellbutrin SR—GSK cites

Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996) *aff'd* 521 U.S. 591

(1997), in which the Third Circuit overturned certification of an asbestos settlement class

in part because the parties had not demonstrated commonality and predominance.  In the

context of the commonality discussion, the Third Circuit noted that it "must apply an

individualized choice of law analysis to each plaintiff's claims."  Id.  At the class

certification stage, I will examine the issues of predominance and commonality and

decide whether an end-payor class is too diverse to certify.  But that issue is not now

before me.

       I will not revisit the choice of law issue.  Both Judge McLaughlin and Judge Brody

have applied the law of the states into which health and welfare benefit plans sent

reimbursements in deciding motions to dismiss end-payor state law claims.  See In re

Wellbutrin XL, 260 F.R.D. at 158-67; In re Flonase, 692 F. Supp. 2d at 534-546.  In my

order granting in part and denying in part GSK's motion for judgment on the pleadings, I

found that plaintiffs could assert causes of action in those states where reimbursements

were sent *because* the economic impact the indirect purchasers felt in those states was

substantial.  Because the Plans, and their members, suffered injury in the states where

they purchased Wellbutrin SR, each state has a significant interest in enforcing its antitrust laws in light of alleged violations by GSK.  Other courts have recognized the interest of plan members' states in preventing antitrust and consumer protection violations.[4]  Pennsylvania choice of law analysis does *not* clearly require application of the Plans' home state laws here, and in accordance with the approach taken by Judges Brody and McLaughlin, and because there is a likelihood of substantial economic impact on the plans and their members in the states where they sent reimbursements, I will consider the viability of each specific state law claim.

IV.    DISCUSSION OF STATE LAW CLAIMS

_____I may state or in some way imply throughout this memorandum that certain welfare benefit plans are bringing or asserting claims in specific states.  The welfare plans have sued GSK together and assert their claims coextensively.  However, each welfare plan may remain a plaintiff in this action only if that plan can state a claim in one of the states into which it sent reimbursements for Wellbutrin SR.

_____

[4] Although other courts have recognized the interests of states where plan members reside largely in the context of the standing analysis, I believe it is appropriate to view the choice of law question as relating to the standing question.  Under Pennsylvania's functional choice of law approach, courts must ask which state has an interest in the outcome.  As other courts have recognized, antitrust injury takes places in those states where a drug is purchased.  See e.g., In re Terazosin Hydrochloride, 220 F.R.D. 672, 681 (S.D. Fla. 2004); Ferrell v. Wyeth-Ayerst Labs., Inc., No. 01-447, 2004 U.S. Dist. LEXIS 15127 (S.D. Ohio June 30, 2004) ("[T]he purchase of Premarin - the critical event causing the alleged antitrust injury . . . allegedly took place in the various states where the Funds' members reside.").  The state where drugs are purchased will naturally have a great interest in regulating the sale of those drugs within its borders.

-14-

## A.   <u>Plaintiffs' Monopolization Claims</u>

Plaintiffs assert monopolization claims under relevant state statutes in Arizona, California, Florida, Massachusetts, Michigan, Minnesota, Nevada, New York, North Carolina, West Virginia, and Wisconsin.  Their monopolization claim is simple: that GSK "knowingly and willfully engaged in a course of conduct designed to extend their monopoly power[,]" which included "improperly filing patent infringement actions against generic manufacturers seeking to obtain approval to sell generic versions of Wellbutrin SR."  SAC ¶ 181.

### 1.   Arizona

Defendants concede that plaintiff UFCW's claim under Arizona's antitrust statute, Ariz. Revised Stat. §§ 44-1401, *et seq.,* should stand.  Mot. To Dismiss, 11.

### 2.   California

Plaintiff UFCW asserts a claim under California's antitrust statute on behalf of itself and all consumers who purchased Wellbutrin SR in California.  SAC ¶¶ 179, 183. In its antitrust count, plaintiffs assert violations of both the Cartwright Act, California's antitrust act, codified at CAL. BUS. & PROF. CODE §§ 16700, *et seq*, and California's Unfair Competition Law, codified at CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

The Cartwright Act prohibits making or entering into "contracts, obligations or

agreements of any kind or description . . . to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected."  CAL. BUS. & PROF. CODE § 16720(e)(4).  The Cartwright Act expressly allows suits by indirect purchasers. See id. § 16750(a) ("Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by the chapter, may sue therefor[.]")

GSK challenges plaintiffs' California claims on numerous grounds.  First, it argues plaintiffs' monopolization claims under the Cartwright Act should be dismissed because the Cartwright Act does not proscribe unilateral conduct of the kind alleged by plaintiffs. Appx. B To Def.'s Reply, 27.  The Ninth Circuit has recognized that the Cartwright Act does not proscribe monopolistic conduct by one person or entity.  See Dimidowich v. Bell & Howell, 803 F.2d 1473, 1478 (9th Cir. 1986) ("Combinations to monopolize would appear to fall within the general prohibitions of the Cartwright Act . . . but that statute does not address *unilateral* conduct." (internal citations omitted) (emphasis in original)). In response to this argument, plaintiffs argue that one case upon which GSK relies, In re Terazosin Hydrochloride Antitrust Litig., 160 F. Supp. 2d 1365, 1378-79 (S.D. Fl. 2001), allowed similar claims to proceed and rejected the defendant's unilateral claim defense. Appx. To Pl.'s Resp. 33.  However, the Terazosin court only allowed the plaintiffs' claim of single-handed monopolization to proceed when plaintiffs "recast their allegations . . . as a claim for relief under California's Unfair Competition Law, CAL. BUS. & PROF.

CODE §§ 17200-17210." 160 F. Supp. 2d at 1379. Plaintiffs offer no other argument in support of their monopolization claim.

Therefore, I will grant GSK's motion to dismiss plaintiffs' California monopolization claim. Plaintiffs do not allege the requisite conspiracy between two or more actors necessary to state a claim under the Cartwright Act. Because I will dismiss plaintiffs' California monopolization claims on this ground, I will not discuss the other grounds for dismissal cited by GSK.[5]

### 3.    Florida

In the section of the SAC for monopolization claims, plaintiffs the IBEW Plan, the Sheet Metal Workers Plan, the AFL Plan, the UFCW, and Sidney Hillman Health Center assert, on their own behalf and on behalf of all members who purchased Wellbutrin SR in Florida, a claim against GSK for violation of FLA. STAT. §§ 501. Part II, *et seq.* SAC ¶ 184.

However, in their response to GSK's motion to dismiss the Florida antitrust claim, plaintiffs clarify that they do not state a claim under the Florida antitrust statute, which is codified at FLA. STAT. §§ 542.15, *et seq.*, and instead assert a claim only under the consumer protection law, which is codified at FLA. STAT. §501.201, *et seq.* Appx. To Pl.'s Resp., 1. Therefore, the motion to dismiss a Florida antitrust claim is moot and the

---

[5] GSK also claims plaintiffs' Cartwright Act claim should be dismissed because the Act requires that plaintiffs plead intrastate conduct or effects. See Appx. B To Mot. To Dismiss, 3.

SAC will be construed to assert causes of action for a violation of Florida's Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.,* SAC ¶ 207, and for unjust enrichment in the state of Florida, SAC ¶¶ 220, 221, 223 - 225, only.

Therefore, I will deny GSK's motion to dismiss plaintiffs' Florida antitrust claim as moot.


### 4.     Massachusetts

Plaintiff's SAC asserts a claim for monopolization in violation of MASS. GEN LAWS CH. 93A, *et seq.*  SAC ¶ 185.  This claim is asserted by the IBEW plan on its own behalf and on behalf of all plan members who purchased Wellbutrin SR in Massachusetts. SAC ¶175.

In their response to GSK's motion to dismiss the Massachusetts antitrust claim, plaintiffs assert that they do not state a claim under the Massachusetts antitrust statute, and instead assert a claim only under the consumer protection law, which is also codified in Chapter 93A.  Appx. To Pl.'s Resp., 1.  Therefore, the SAC will be construed to assert causes of action for a violation of the Massachusetts consumer protection law, MASS. GEN. L. CH. 93A, SAC ¶ 209, and for unjust enrichment in the state of Massachusetts, SAC ¶ 220, only.

GSK's motion to dismiss plaintiffs' monopolization claim under Massachusetts

law will denied as moot.[6]

### 5.    Michigan

Plaintiff UFCW asserts a cause of action for monopolization in violation of the

Michigan Antitrust Reform Act ("MARA"), codified at MICH. COMP. LAWS § 445.771, *et*

*seq.*  SAC ¶ 186.  Michigan's antitrust statute provides that: "[t]he establishment,

maintenance, or use of a monopoly, or any attempt to establish a monopoly, of trade or

commerce in a relevant market by any person, for the purpose of excluding or limiting

competition or controlling, fixing, or maintaining prices, is unlawful."  MICH. COMP.

LAWS § 445.773.  "'Relevant market' means the geographical area of actual or potential

competition in a line of trade or commerce, all or any part of which is within this state."

Id. at § 445.771(b).  GSK claims plaintiffs' MARA claim must be dismissed because it

requires "that the alleged anticompetitive conduct must have occurred, at least in part, in

the state."  Defs.' Motion to Dismiss, 14.  More specifically, GSK argues that, because

the MARA has been interpreted to regulate the same antitrust activity the Sherman Act

---

[6]  Were plaintiffs to assert a cause of action under the Massachusetts antitrust statute, MASS. GEN. LAWS ch. 93 §§ 1-14, it would dismissed, as the Supreme Court of Massachusetts has ruled that, "[b]ecause the Antitrust Act is to be construed in harmony with judicial interpretations of comparable Federal antitrust statutes, the rule of law established in Illinois Brick Co. v. Illinois, would apply with equal force to preclude claims brought under G.L. c. 93 by indirect purchasers in Massachusetts.  Ciardi v. F. Hoffmann-La Roche, Ltd., 436 Mass. 53, 762 N.E.2d 303, 308 (Mass. 2002) (internal citations omitted).

regulates, but at the *intrastate* and not the *interstate* level, the plaintiffs must show that the alleged monopoly is substantially or primarily a local one.  Appx. B To Mot. To Dismiss, 3.

GSK cites Aurura Cable Comm. Inc. v. Jones Intercable, Inc., 720 F.Supp. 600, 603 (W.D.Mich. 1989) and Peoples Sav. Bank v. Stoddard, 102 N.W.2d 777, 796 (Mich. 1960) in arguing that Michigan's antitrust statute requires the plaintiffs to show that some of the anti-competitive conduct at issue occurred within Michigan.  Id.  However, the court in Peoples Savings Bank simply observed that the monopolistic activities in question *in that case* were predominantly local.  102 N.W.2d at 796.  The court did *not* rule that the MARA *only* applies to activities that are predominantly local.

In Aurora, the Court stated that "MARA parallels the Sherman Antitrust Act as it applies to intrastate conduct."  720 F. Supp. at 603.  In support of this proposition, the Aurora court cited Mfr.'s Supply Co. v. Minnesota Min. and Mfg. Co., 688 F.Supp. 303, 306 (W.D. Mich. 1988).  In Mfr.'s Supply, the court determined that the allegations of a vertical trade restraint in the plaintiffs' complaint were insufficient to state a cause of action under the Sherman Act and the MARA because they were not a *per se* violation of the Sherman Act and the plaintiffs had also failed to show that defendants created an unreasonable restraint of trade.  688 F.Supp. at 307-308.  In other words, the court concluded that activities not in violation of the Sherman Act were therefore not in violation of the MARA.  Id.  This is the sense in which the Sherman Act and the MARA

-20-

are "parallel."  GSK has presented no evidence that the Sherman Act and the MARA are in some way mutually exclusive, the former prohibiting interstate anticompetitive conduct and the latter regulating only anticompetitive conduct within Michigan.

GSK has presented no authority mandating the interpretation that MARA does not apply where monopolistic activity is both interstate and local, which is the thrust of the plaintiffs' allegations here.  Plaintiffs in fact do not allege that GSK's monopolistic activities were restricted to any one state, but rather, claim that it "manufactured and sold substantial amounts of Wellbutrin SR in a continuous and uninterrupted flow of commerce across state and national lines."  SAC ¶ 163.  A plain reading of the MARA's definition of "relevant market" as an area of competition "all or any part of which is within this state," indicates only that a plaintiff bringing a cause of action need show some monopolistic activity within the state.  Plaintiffs' allegations that they were forced to pay a higher price for Wellbutrin SR in Michigan and that Michigan plan members therefore also paid a higher price are sufficient to show that activities related to the alleged monopoly took place within the state.

Therefore, I will deny GSK's motion to dismiss plaintiffs' Michigan antitrust claim.


**6.     Minnesota**

Plaintiff UFCW asserts a cause of action for GSK's alleged violation of

Minnesota's antitrust statute, codified at MINN. STAT. §§ 325D.52, *et seq.*  SAC ¶ 187.

Under the Minnesota statute, "[t]he establishment, maintenance, or use of, or any attempt

to establish, maintain, or use monopoly power over any part of trade or commerce by any

person or persons for the purpose of affecting competition or controlling, fixing, or

maintaining prices is unlawful." MINN. STAT. § 325D.52.  This prohibition applies to:

> (a) any contract, combination, or conspiracy when any part thereof was
> created, formed, or entered into in this state; and (b) any contract, combination,
> or conspiracy, wherever created, formed, or entered into; any establishment,
> maintenance, or use of monopoly power; and any attempt to establish,
> maintain, or use monopoly power; whenever any of the foregoing affects the
> trade or commerce of this state.

MINN. STAT. § 325D.54.

GSK claims Minnesota's statute "extend[s] to claims only where there are

allegations of substantial intrastate effects."  Def.'s Motion to Dismiss, 14-15.  It cites

City of St. Paul v. FMC Corp., No. 3-89-0466, 1990 WL 265171 at *8 (D.Minn. Feb. 17,

1990), in support of its argument.  In St. Paul, however, the court ruled that the Minnesota

statute applied only to purchasers in Minnesota in the context of plaintiffs' motion to

apply Minnesota law to an already-certified class of nationwide purchasers of a

monopolized product.  1990 WL 265171 at *8.  Here, the named plaintiffs who purchased

and paid for Wellbutrin SR in Minnesota assert a cause of action under its antitrust

statute.  They allege that GSK's actions "forced consumers to continue paying monopoly

prices for Wellbutrin SR prescription products" and that their members in Minnesota

"have been denied the benefits of free and unrestrained competition in the Wellbutrin SR

market." SAC ¶¶ 7, 8.  These allegations are sufficient to state a cause of action under subsection (b) above, because forcing purchasers to pay more for Wellbutrin SR would fall under its broad scope, which does not on its face require any substantial in state effect.

Therefore, I will deny GSK's motion to dismiss plaintiffs' Minnesota antitrust claims.

### 7.     Nevada

Plaintiff UFCW claims GSK violated Nevada's antitrust statute, NEV. REV. STAT. § 598A.060.  SAC ¶ 188.  GSK argues this Nevada antitrust claim must be dismissed because the statute requires that the allegedly anticompetitive conduct have taken place, in part, within Nevada.  Mot. To Dismiss, 14.  The statute provides in relevant part that:

> Every activity enumerated in this subsection constitutes a contract, combination or conspiracy in restraint of trade, and it is unlawful to conduct any part of any such activity in this State[.]
>> (e) Monopolization of trade or commerce in this State, including, without limitation, attempting to monopolize or otherwise combining or conspiring to monopolize trade or commerce in this State.

NEV. REV. STAT. § 598A.060.  This language is just as broad as that used in the Minnesota statute.  Nevada requires only that the plaintiffs show that some part of the prohibited activity caused harm in Nevada, not that the commencement of the sham litigation took place there.  The alleged illegal maintenance of a nationwide monopoly that resulted in monopolistic over-pricing of Wellbutrin SR in Nevada is therefore

sufficient to state a claim under Section 598.A.  See In re Wellbutrin XL, 260 F.R.D. at

163 (citing Pooler v. R.J. Reynolds Tobacco Co., No. CV00-2674, 2001 WL 403167

(Dist. Ct. Nev., Washoe Ct. Apr. 4, 2001)); In re Chocolate Confectionary Antitrust

Litig., 602 F. Supp. 2d 538, 581 (M.D.Pa. 2009); In re Intel Corp. Microprocessor

Antitrust Litig., 496 F. Supp. 2d 404, 413-414 (D.Del. 2007).  GSK's argument that the

Nevada statute requires a greater amount of intrastate conduct than that alleged in

plaintiffs' SAC is wrong.

     GSK also argues plaintiffs' Nevada claim should be dismissed because the Nevada

statute does not prohibit unilateral monopolization.  See Appx. to Def.'s Reply, 27.

Specifically, GSK points to the opening paragraph of Nevada's antitrust law, which states

that "[e]very activity enumerated in this subsection constitutes a contract, combination or

conspiracy in restraint of trade, and it is unlawful to conduct any part of any such activity

in this State."  NEV. REV. STAT. § 598A.060(1).  GSK claims this sentence indicates that

"the act of monopolization is only proscribed inasmuch as it is in connection with a

'contract, combination, or conspiracy.'" Appx. To Def.'s Reply, 27.

     Plaintiffs argue that the enumerated section of the act dealing with monopolization

counteracts the initial description of its scope.  Appx. To Pl.'s Resp., 33-34.  The

subsection dealing with monopolization prohibits "[m]onopolization of trade or

commerce in this State, including, without limitation, attempting to monopolize or

otherwise combining or conspiring to monopolize trade or commerce in this State."  NEV.

REV. STAT. § 598A.060(1)(e).  Plaintiffs claim this portion reaches unilateral monopolization because the word "or" separates "monopolization" from "combining or conspiring."  Appx. To Pl.'s Resp., 33-34.  Presumably, plaintiffs believe monopolization is therefore meant to cover unilateral activity separate and apart from activity requiring the agreement of two actors in combination or conspiracy.

In Nevada, "[t]he construction of a statute should give effect to the Legislature's intent."  Richardson Const., Inc. v. Clark Cnty. Sch. Dist., 123 Nev. 61, 64, 156 P.3d 21 (Nev. 2007).  In determining legislative intent, courts look first to unambiguous statutory language, and then look to the statutory scheme, reason, and public policy.  Id.  I believe the use of the word "or" after the word "monopolization" suggests an intent that the scope of Nevada's act include more than agreements.  Moreover, my review of the legislative history of section section 598A.060 reveals that the antitrust statute was amended in 2001 to add subsection (e) concerning monopolization.  Legislative committee minutes pertaining to the amendment reveal that subsections (e) and (f) were designed to "provide in state law the corresponding language existent in the Clayton and Sherman Acts at the federal level, allowing specific state authority to review mergers otherwise covered under the Clayton and Sherman Anti-Trust Act."  Nevada Assembly Committee on Commerce and Labor, Seventy-First Session, 2001, Committee Minutes for Assembly Bill 152, April 2, 2001.  The legislature, though, was not concerned only with reviewing mergers.  The committee notes explain further that:

> [provisions (e) and (f)] allowed the state explicit statutory authority to review, in state law, circumstances where it thought monopolization was occurring, *or* if the acquisition of one corporation by another would have the effect of inducing market competition or other sorts of anti-competitive behavior. *The bottom line was to ensure consumers were not victims of those practices that would inflate prices or restrict markets if the activities were not reviewed.*

Id. (emphasis added).

I will allow plaintiffs' Nevada claim to proceed, because I believe the language of Nevada's statute includes unilateral acts of monopolization and my review of the relevant legislative history affirms this reading.


### 8.    New York

Plaintiff Sidney Hillman Health Center claims GSK violated the Donnelly Act, codified at N.Y. GEN. BUS. LAW § 340, *et seq*, by wrongfully maintaining its monopoly over relevant markets in New York.  SAC ¶ 189.

Plaintiffs conceded, earlier in the course of this litigation, that New York Civil Practice Law and Rules § 901(b) prohibits class actions arising under this statute. Plaintiffs initially requested that I defer ruling on GSK's motion to dismiss their New York antitrust and consumer protection claims until the Supreme Court issued a decision in Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., - - U.S. - -,130 S.Ct. 1431, 176 L.Ed.2d 311 (March 31, 2010).  See End Payor Pl.'s Notice of Supplemental Authority (No 04-5898, Document # 260).  Shady Grove concerns whether Federal Rule of Civil Procedure 23 conflicts with N.Y. Civ Prac. Law Ann. § 901(b) and whether

plaintiffs restricted by § 901(b) may still seek certification of a class in federal court

where jurisdiction is based on diversity of citizenship.  Although the Supreme Court ruled

that § 901(b) does not bar class certification in federal court, there remains another

ground on which plaintiffs' New York antitrust claim should be dismissed.

> The Donnelly Act provides that:
>
> Every contract, agreement, arrangement or combination whereby [a] monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby . . . is hereby declared to be against public policy, illegal and void.

N.Y. GEN. BUS. LAW § 340.  GSK claims plaintiffs' monopolization claim must be

dismissed because it requires plaintiffs to allege that anti-competitive conduct took place

*in* New York.  Appx. B To Mot. To Dismiss, 4.  GSK also claims the Donnelly Act

mandates that there be a conspiracy between two or more entities in order to establish

antitrust liability, and that plaintiffs fail to make the requisite allegations.  Id. at 9.

In the Donnelly Act, "the term 'arrangement' . . . must be interpreted as

contemplating a reciprocal relationship of commitment between two or more legal or

economic entities similar to but not embraced within the more exacting terms, 'contract,'

'combination' or 'conspiracy.'"  Creative Trading Co., Inc. v. Larkin-Pluznick-Larkin,

Inc., 136 A.D.2d 461, 462, 523 N.Y.S.2d 102 (N.Y.A.D. 1st Dept. 1988) (quoting State

of New York v. Mobil Oil Corp., 38 N.Y.2d 460, 381 N.Y.S.2d 426 (N.Y. 1976); see also

Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton, 997 F.Supp. 340, 352

(E.D.N.Y. 1998).

Because plaintiffs have not alleged a conspiracy or agreement between GSK and

any other entity, this is a valid ground upon which their New York antitrust claim should

be dismissed.  Therefore, I will grant GSK's motion to dismiss plaintiffs' New York

antitrust claim.[7]

---

[7]  GSK cites Bowlus v. Alexander & Alexander Servs., Inc., 659 F. Supp. 914, 917 (S.D.N.Y. 1987) in support of its intrastate conduct argument.  In Bowlus, the district court observed of the Donnelly Act that "the language of the statute itself limits its application to conduct within the state."  The court made this observation in the context of deciding whether a plaintiff's Donnelly Act claims were properly removed to federal court, not in the context similar to the one now at hand.  Importantly, the Bowlus court cited Baker v. Walter Reade Theatres Inc., 237 N.Y.S.2d 795, 797 (Sup. Ct. 1962), in which a Donnelly Act claim was dismissed because the primary effect of the agreement at issue was the alleged monopolization of business in New Jersey.  The Baker court found not that the New York claim should be dismissed because there was not intrastate conduct, but rather because the *only* state in which there were significant consequences was New Jersey.  Id.

In other words, the caselaw provided by GSK fails to establish that, for anti-competitive conduct to fall within the Donnelly Act, the anti-competitive conduct must have taken place in New York.  Plaintiffs contend that they were injured by virtue of having reimbursed purchases of over-priced drugs.  A plain reading of the Donnelly Act exposes a defendant to antitrust liability for "a monopoly in the conduct of any . . . trade or commerce . . . in this state."  I see no reason why the sale of goods at artificially high monopolistic prices in the state of New York, which is alleged here, would not expose GSK to liability.  The Supreme Court of Dutchess County has observed that, "our courts in New York will apply the rule of reason to every combination or agreement brought before them under the Donnelly Act.  'Before it will condemn, there must appear the elements of injury to the public, or monopolistic control of a particular article of commerce, or unreasonable interference with and damage to the business of an individual, or the doing of illegal or unconscionable acts[.]'" Duhamel v. Multiple Listing Service of Dutchess Cnty., Inc., 436 N.Y.S.2d 922, 925, 108 Misc.2d 67 (N.Y. Sup., 1981).

Therefore, GSK's intrastate conduct argument is baseless; however, because its unilateral monopolization argument is valid, I will dismiss plaintiffs' Donnelly Act claim.

-28-

9.     **North Carolina**

Plaintiff Sidney Hillman asserts a North Carolina monopolization claim under "N.C. GEN STAT. §§ 75-1, *et seq.*"  SAC ¶ 190.  GSK seeks dismissal of this claim on the ground that the statute requires allegations of intrastate effects that are missing from plaintiffs' complaint.  Chapter 75 of the North Carolina Code is entitled "Monopolies, Trusts, and Consumer Protection" and has multiple sections.  Section 75-1 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal." N.C. GEN. STAT. § 75-1.  Section 75-1.1 provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  N.C. GEN. STAT. § 75-1.1.  The following section provides that "[i]t is unlawful for any person to monopolize, or attempt to monopolize . . . any part of trade or commerce in the State of North Carolina."  N.C. GEN. STAT. § 75-2.1.

In support of its argument, GSK cites <u>Lawrence v. UMLIC-Five Corp.</u>, No. 06-20643, 2007 WL 2570256 at *7 (N.C. Super. June 18, 2007), a case factually distinct from the one at hand.  In it, the court observed, in granting a motion to dismiss plaintiff's claim under North Carolina's Unfair and Deceptive Trade Practices Act, that it was not "persuaded that the Defendants' alleged acts have had a substantial in-state effect on North Carolina trade or commerce."  <u>Id.</u>  The court reached this conclusion because the plaintiffs were suing under North Carolina law for the defendants' attempt to foreclose on

-29-

their land, which was located in Texas.  Id.  This case says nothing about a claim under the monopolization sections of the monopolization and unfair trade practices chapter codified at N.C. GEN. STAT. §§ 75-1 and 75-2.1.

Plaintiffs have alleged that GSK engaged in business in North Carolina by producing a drug sold and promoted in that state and that GSK unlawfully maintained its monopoly in North Carolina.  These allegations are sufficient to state a cause of action under Section 75-2.1, which prohibits monopolizing or attempting to monopolize any part of trade or commerce in North Carolina.  See N.C. GEN. STAT. § 75-2.1.  Judge Brody has found a similar claim sufficient to withstand a motion to dismiss.  See In re Flonase Antitrust Litig., 692 F. Supp. 2d at 534-35.

Without clear authority for the proposition that the sale and marketing of a product in North Carolina is insufficient intrastate conduct to expose GSK to antitrust liability there, I will deny the motion to dismiss the North Carolina monopolization claim, and treat plaintiffs' North Carolina monopolization and Unfair and Deceptive Trade Practices Act claim as one and the same.


### 10.  West Virginia

Plaintiff the UA Plan asserts a cause of action under the West Virginia Antitrust Act (WVAA), codified at W. VA. CODE § 47-18-1, et seq.  GSK argues this claim must be dismissed because the statute only covers anti-competitive conduct producing substantial

intrastate effects, which plaintiffs' complaint fails to allege.  Mot. To Dismiss, 14.  The

Act provides that:

> the establishment, maintenance or use of a monopoly or an attempt to establish
> a monopoly of trade or commerce, any part of which is within this State, by
> any persons for the purpose of excluding competition or controlling, fixing or
> maintaining prices is unlawful.

W.VA. CODE § 47-18-4.  "Trade or commerce" is defined to include "all economic

activity involving or relating to any commodity or service."  W.VA. CODE § 47-18-2.

Federal courts in the Third Circuit agree that West Virginia's statute creates a

cause of action for anti-competitive conduct that produces effects within West Virginia,

including the payment of higher prices for monopolized goods.  See In re Chocolate

Confectionary Antitrust Litig., 602 F. Supp. 2d at 582; In re Intel Corp. Microprocessor

Antitrust Litig., 496 F. Supp. 2d 404, 414 (D.Del. 2007); see also Buscher v. Abbott

Labs., No. 94-C-755, slip op. at 2 (W. Va. Cir. Ct. Kanawha County Jan. 27, 1994)

("[T]he Antitrust Act prohibits a conspiracy that restrains West Virginia trade or

commerce, regardless of the locus of the conspiracy.").  I agree that on its face, West

Virginia's statute applies to the conduct alleged in plaintiffs' complaint because plaintiffs

claim GSK's anti-competitive conduct resulted in the overpricing of Wellbutrin SR in

West Virginia.  Therefore GSK's motion to dismiss plaintiffs' claim under the West

Virginia Antitrust Act will be denied.[8]

---

[8]  In support of its argument, GSK cites Kessel v. Monongalia County Gen. Hosp. Co.,
648 S.E.2d 366, 375, 220 W.Va. 602 (W.Va. 2007), where the Supreme Court of West Virginia
observed that, "[t]he primary distinction between W. Va.Code § 47-18-3(a) and Section 1 of the

### 11.   Wisconsin

Plaintiff UFCW alleges monopolization in violation of WIS. STAT. § 133.01, *et seq.*  The Wisconsin statute provides penalties for "every person who monopolizes, or attempts to monopolize, or combines or conspires with any other person or persons to monopolize any part of trade or commerce" and its stated aim is "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition."  WIS. STAT. § 133.01, § 133.03(2).

GSK claims plaintiffs Wisconsin claims should be dismissed because they have failed to plead substantial intrastate effects of the alleged monopoly, as required under the statute.  Appx. B To Mot. To Dismiss, 4.  This argument is without merit.  Wisconsin's antitrust statute reaches interstate commerce if "the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in [Wisconsin], even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."  Olstad v. Microsoft Corp., 700 N.W.2d 139, 141, 284 Wis.2d 224 (Wis. 2005); see also In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 665-666 (E.D.Mich.

---

Sherman Act is that the West Virginia statute applies to contracts and conspiracies in restraint of trade 'in this State' while the federal statute is applicable to contracts and conspiracies 'in restraint of trade or commerce among the several States, or with foreign nations.'"  However, the Court did not address the precise question here, whether the WVAA requires *substantial* effects in West Virginia, and instead considered the extent to which the WVAA's harmonization provision could be interpreted to apply to *per se* violations of the Sherman Act.  648 S.E.2d at 611-615.

2000).  The Wisconsin Supreme Court has expressly ruled that the Act applies to interstate commerce.  Olstad, 700 N.W.2d at 156 ("[W]e conclude that Chapter 133, particularly § 133.03, applies to interstate commerce, at least in some circumstances. Consistent with this holding, we withdraw the language from Conley Publ'g Grp., Ltd. v. Journal Commc'ns Inc., 265 Wis.2d 128, 655 N.W.2d 879 (Wis. 2003) that 'the scope of Chapter 133 is limited to intrastate transactions.'").  Plaintiffs' allegation that GSK's anticompetitive activity increased the price of Wellbutrin SR in Wisconsin is sufficient to meet the requirements of the statute.  The Olstad court expressly noted that "the public interest and welfare of the people of Wisconsin are substantially affected if prices of a product are fixed or supplies thereof are restricted[.]" 700 N.W.2d at 146.

GSK argues alternatively that the Wisconsin statute requires allegations of a unilateral monopoly, citing statutory language that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal." WIS. STAT. § 133.03(1).  However, GSK fails to address subsection 2 of section 133.03, which provides criminal penalties for "every *person* who monopolizes, or attempts to monopolize" trade or commerce.  WIS. STAT. § 133.03(2).  A plain reading of this language indicates that it covers conduct by a single person separate and apart from contracts or conspiracies. Moreover, the Wisconsin Supreme Court has recognized that "[a]lthough subsection (2) [of WIS. STAT. § 133.03] implies government enforcement, Chapter 133 also authorizes private actions for persons injured by violations of its

-33-

prohibitions." Conley Publ'g, 265 Wis.2d at 139, 665 N.W.2d at 885 (citing WIS. STAT. § 133.18) *abrogated on other grounds by* Olstad, 700 N.W.2d 139.

Plaintiffs' allegation that GSK filed sham litigation to maintain higher prices for Wellbutrin SR in Wisconsin are sufficient to assert a cause of action under Wisconsin's broadly worded antitrust statute.  See Flonase Antitrust Litig., 692 F. Supp. 2d at 535. Therefore, I will deny GSK's motion to dismiss plaintiffs' monopolization claims under Wisconsin law.[9]

**B.      Plaintiffs' Unfair and Deceptive Trade Practice Claims**

The end-payor plaintiffs assert that GSK "engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection statutes" of Arizona, Arkansas, California, Colorado, Florida, Idaho, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New York, North Carolina, Oklahoma, Pennsylvania, and Rhode Island when they filed baseless litigation against Eon and Impax in order to prevent market entry of a generic version of Wellbutrin SR. SAC ¶¶ 196-202.

_____

[9]  GSK initially claimed Wisconsin's antitrust statute applies only to contracts or combinations in restraint of trade.  Plaintiffs respond that subsection (2) of Section 133.03, which provides criminal penalties for "[e]very person who monopolizes, or attempts to monopolize, or combines or conspires with any other person or persons to monopolize any part of trade or commerce," may be applied to their unilateral monopolization allegations against GSK.  I agree, and in their reply to plaintiffs' response to this argument, GSK conceded this point.  See Appx. To Def.'s Reply to Pl.'s Resp., 28.

The IBEW Plan alleges it purchased or reimbursed purchases of Wellbutrin SR in Florida, Missouri, Oklahoma, and Massachusetts and asserts causes of action based on those states' laws.  SAC ¶ 196.  For the same reason, plaintiff the Sheet Metal Workers Plan has asserted a claim in Florida; the UA Plan has asserted claims in Rhode Island and Idaho; the AFL Plan has asserted a claim in Florida; UFCW has asserted claims in Arkansas, Arizona, California, Colorado, Florida, Michigan, Minnesota, Missouri, Nevada, Oklahoma, and Pennsylvania; and Sidney Hillman Health Center has asserted claims in Florida, North Carolina, and New York.

### 1.    Arizona

On behalf of the plaintiffs, UFCW claims GSK violated the Arizona Consumer Fraud Act ("ACFA"), ARIZ. REV. STAT. ANN. § 44-1521, *et seq.*  SAC ¶ 203.  This statute prohibits:

> [t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise[.]

ARIZ. REV. STAT. § 44-1522 (A).  In construing the Act, Arizona courts "may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code §§ 45, 52 and 55(a)(1)."  Id. § 44-1522 (C).  The ACFA "applies to acts committed within Arizona in violation of its provisions."  State ex rel. Corbin v.

Goodrich, 726 P.2d 215, 221 (Ariz. Ct. App. 1986).  The state may enforce its statute

"against a person or persons conducting business within the state."  Id.

GSK argues that plaintiffs' ACFA claim should be dismissed on two separate

grounds.  First, it claims the ACFA requires some intrastate conduct or effect and that

plaintiffs have failed to meet this intrastate requirement.  Mot. To Dismiss, 14-15.

Additionally, it claims that, because the ACFA only applies to fraudulent or deceptive

conduct aimed at consumers, plaintiffs' allegations that GSK filed objectively baseless

lawsuits are not sufficient to state a claim.  Id. at 15-16.

GSK's intrastate conduct argument is weak.  As discussed in the context of

plaintiffs' antitrust claims, plaintiffs' allegations that GSK's conduct caused consumers in

each named state, including Arizona, to pay more for Wellbutrin SR, are sufficient at the

pleading stage to show effect in Arizona.

However, GSK's second argument has merit.  To succeed on a claim of consumer

fraud in violation of the ACFA, a plaintiff must show "a false promise or

misrepresentation made in connection with the sale or advertisement of merchandise and

consequent and proximate injury resulting from the promise."  Kuehn v. Stanley, 91 P.3d

346, 351 (Ariz. App. Div. 2004) (citing Correa v. Pecos Valley Dev. Corp., 126 Ariz.

601, 605, 617 P.2d 767, 771 (App.1980)).  In Flonase Antitrust Litig., Judge Brody

addressed whether allegations that defendants filed sham citizen petitions were sufficient

to state a cause of action under the ACFA.  692 F. Supp. 2d at 536-37.  Judge Brody

reasoned that, "[a]t most, Plaintiffs allege that Defendant made arguments that had little basis; this is distinct from alleging that Defendant made statements which it knew were false or arguments that it knew violated the FDA's policies, for example, by knowingly failing to include contradictory evidence." Id. Judge Brody also observed that "[if] the Plaintiffs had alleged facts to show that the petitions GSK filed made statements that GSK knew were contradicted by data and information, and that GSK knowingly excluded such information, this might be sufficient to allege a misrepresentation." Id.

Judge Brody's reasoning is sound and is supported by a ruling from the District of Arizona that "[t]o state a claim under the [ACFA], Plaintiffs must allege that there was a false promise or misrepresentation in connection with the sale and that they were injured. An injury occurs when *consumers* rely on the misrepresentation, even though that reliance is not reasonable." Persky v. Turley, Nos. 88-1830-PHX-SMM, 88-2089-PHX-SMM, 1991 WL 327434 at *9 (D. Ariz. Dec. 19, 1991) (emphasis added) (allowing plaintiffs' Arizona consumer protection claim to proceed because they pleaded "that they relied on the market price induced by the [defendant] company's allegedly false registrations statements and prospecti."). In other words, in order to maintain this claim, plaintiffs would need to allege that GSK not only made fraudulent misrepresentations of fact,[10] but

---

[10] Plaintiffs have alleged that GSK made false statements *to the PTO* about its intent to claim a BH composition when it applied for the '994 patent. However, I ruled on summary judgment, in an opinion that will become binding on the indirect purchasers following issuance of this opinion, that plaintiffs have not stated a claim for Walker Process fraud in connection with the '994 patent.

that those misrepresentations were relied upon by consumers of Wellbutrin SR.  Plaintiffs

allege GSK made objectively baseless legal arguments in its patent infringement suits and

misstatements to the PTO, but *not* that GSK misrepresented the nature or price of its

product to consumers.  Making arguments it knew to be objectively baseless, though

unfair and improper, is not necessarily *fraudulent*.  See In re New Motor Vehicles

Canadian Export Antitrust Litig., 350 F. Supp. 2d 160, 178 (D. Maine, 2004) ("Unlike the

FTC statute, the Arizona statute does not include a prohibition on unfair methods of

competition, and it does not prohibit unfair acts and practices in addition to deceptive acts

and practices.").

Therefore, I will grant GSK's motion to dismiss plaintiffs' ACFA claim.


### 2.    Arkansas

Plaintiff the UFCW alleges GSK violated the Arkansas Deceptive Trade Practices

Act ("ADTPA"), codified at  ARK. CODE ANN. § 4-88-101, *et seq.*  SAC ¶ 204.  The

ADTPA prohibits ten specific offenses as well as "any . . . unconscionable, false, or

deceptive act or practice in business, commerce, or trade."  ARK. CODE ANN. § 4-88-

107(a)(10).  The Supreme Court of Arkansas has ruled that a liberal construction of the

ADTPA is appropriate, and that section (a)(10), which is essentially a catchall provision,

is not too vague for enforcement.  See State ex rel. Bryant R&A Inv. Co., Inc., 336 Ark

289, 295, 985 S.W.2d 299, 302 (Ark. 1999).[11]  The court found support for its interpretation of subsection (a)(10) in the next subsection of the statute, noting that "[s]ection 4-88-107(b) illustrates that liberal construction of the DTPA is appropriate, as it provides that "[t]he deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." Id.

GSK claims plaintiffs' ADTPA claims must be dismissed because plaintiffs do not allege the type of conduct encompassed by the ADTPA.  GSK cites In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1125 (N.D.Cal 2008), where the court construed the ADTPA narrowly and dismissed plaintiffs' claims, refusing to apply the ADTPA to price-fixing claims and reasoning that it imposes no duty to disclose to consumers material facts about anti-competitive practices.  However, other courts have found that the broad wording and liberal construction of the ADTPA allow for consumer protection claims based on price-fixing or monopolization.  See New Motor Vehicles, 350 F. Supp. 2d at 178 (ruling that "unconscionable" conduct, defined as "showing no regard for conscience; affronting the sense of justice, decency, or reasonableness" extends to the maintenance of a monopoly designed to keep Canadian cars out of the United States); In re Chocolate Confectionary, 602 F. Supp. 2d at 583, n. 57 (comparing the narrow view of

---

[11]  Bryant dealt with the application of the ADTPA to a contract claim, so other courts have considered broader definitions of unconscionability in ruling on antitrust claims asserted under the ADTPA.  See New Motor Vehicles, 350 F. Supp. 2d at 178.

unconscionability adopted by some courts with the broader view espoused in New Motor Vehicles, concluding that the broader view of unconscionability is the more reasonable interpretation, and allowing plaintiffs' ADTPA claims based on coordination of market pricing for chocolate products).

Plaintiffs claim GSK violated the ADTPA when it filed baseless sham litigation against Eon and Impax in an attempt to monopolize the market for Wellbutrin SR.  As an alternative to the argument that their allegations fall under the ADTPA's catchall provision, they argue that GSK's actions violate subsections of the ADTPA prohibiting (1) "knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" and (2) "disparaging the goods, services, or business of another by false or misleading representation of fact."  Appx. To Pl.'s Reply to Mot. To Dismiss, 21-22 (citing ARK. CODE. ANN. § 4-88-107(1), (2)).  I believe plaintiffs have failed to allege GSK made a false representation about the characteristics, benefits, alterations, or source of Wellbutrin SR.  As stated previously, plaintiffs allege GSK made false representations to the PTO concerning the patent application process, but not that GSK ever misrepresented the nature of the drug to consumers.  Plaintiffs have also failed to allege that GSK disparaged the goods of a competitor, and they cite no portion of their complaint that does so.

The fact that GSK's alleged conduct does not constitute any enumerated offense in the ADTPA is not fatal to their claim.  I find the reasoning of the court in <u>New Motor Vehicles</u> recognizing the broad reach of the ADTPA persuasive.  In other words, plaintiffs' allegation that GSK engaged in a scheme designed to maintain its monopoly over the Wellbutrin SR market and prevent generic manufacturers from entering the market does fall under the catch all provision in subsection (10), which prohibits "any . . . unconscionable . . . act or practice in business [or] commerce."

Therefore, I will deny GSK's motion to dismiss plaintiffs' Arkansas consumer protection claims.


### 3.    California

Plaintiff the UFCW claims GSK engaged in unfair competition or unfair or deceptive acts in violation of California's Unfair Competition Law ("CUCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*  SAC ¶ 205.  The statute defines unfair competition as "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  CAL. BUS. & PROF. CODE § 17200.  GSK argues that plaintiffs' CUCL claim should be dismissed because the conduct alleged by plaintiffs does not fall within the purview of the statute.

The CUCL is sweeping in scope.  As explained by California's Supreme Court,

"[s]ection 17200 'borrows' violations from other laws by making them independently

actionable as unfair competitive practices," and its broad language also allows "a practice

[to be] deemed unfair even if not specifically proscribed by some other law." Korea

Supply Co. v. Lockheed Martin Corp., 29 Cal 4th 1134, 1143, 63 P.3d 937, 943 (Cal.

2003) (citing Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163,

180, 973 P.2d 527 (Cal. 1999)).  It "embraces anything that can properly be called a

business practice and that at the same time is forbidden by law." Id.  Other courts have

allowed what are essentially monopolization claims to proceed under the CUCL, both in

addition to, See Wellbutrin XL, 260 F.R.D. at 160, and independent from, In re

Terazosin, 160 F. Supp. 2d at 1378-79, monopolization claims under California's

Cartwright Act.  My decision to grant GSK's motion to dismiss plaintiffs' Cartwright Act

monopolization claims does not in any way prevent me from allowing their CUCL claim

to proceed.  See Terazosin, 160 F. Supp. 2d at 1379 (finding that plaintiffs' unilateral

monopolization claims did not state a cause of action under the Cartwright Act, but

reasoning that the CUCL "governs anti-competitive business practices as well as injuries

to consumers, and the Court can find no authority for the proposition that unilateral

monopolization of the market for a prescription drug would not offend its provisions."

(internal citations omitted)).  Plaintiffs claim GSK engaged in an unfair and illegal

business practice by filing sham lawsuits designed to prevent the entry of generic

alternatives into the market for Wellbutrin SR.  This allegedly anti-competitive conduct

falls under the broad scope of the CUCL.  I will deny GSK's motion to dismiss plaintiffs' CUCL claims.

Although the range of activities that fall under the CUCL is broad, the remedies available to plaintiffs are limited.  The Act provides that:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

CAL. BUS. & PROF. CODE § 17203.  This section expressly limits courts in their remedial authority, allowing them only to enjoin further unfair competition or restore money or property lost as the result of such practices.  See Korea Supply, 63 P.3d at 946.  The plaintiffs may recover restitution for violations of the CUCL, but not compensatory damages.  See id. at 947 ("[A]n individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest.").

While the plaintiffs' remedy may be limited, GSK's sale of Wellbutrin SR to the indirect purchasers is sufficient to state a claim under the CUCL.  Therefore, I will deny GSK's motion to dismiss plaintiffs' California consumer protection claim.

4.      **Colorado**

Plaintiff the UFCW asserts a cause of action for violation of the Colorado

Consumer Protection Act ("CCPA"), COLO. REV. STAT. § 6-1-105.  SAC ¶ 206.  The

CCPA begins with the words "[a] person engages in a deceptive trade practice, when, in

the course of such person's business, vocation, or occupation, such person . . ."  COLO.

REV. STAT. § 6-1-105 (1).  It then sets forth a number of such practices, which include:

> Knowingly [making] a false representation as to the characteristics,
> ingredients, uses, benefits, alterations, or quantities of goods, food, services,
> or property or a false representation as to the sponsorship, approval, status,
> affiliation, or connection of a person therewith;
> or
> [failing] to disclose material information concerning goods, services, or
> property which information was known at the time of an advertisement or sale
> if such failure to disclose such information was intended to induce the
> consumer to enter into a transaction.

Id. at § 6-1-105(e), (u).  The only reference to "unfair" business practices in the CCPA

states that "[t]he deceptive trade practices listed in this section are in addition to and do

not limit the types of unfair trade practices actionable at common law or under other

statutes of this state."  Id. at § 6-1-105 (3).

GSK claims the Supreme Court of Colorado's decision in Rhino Linings USA, Inc.

v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 144 (Colo. 2003), establishes that

allegations of anti-competitive behavior are not sufficient to state a cause of action under

the CCPA, and that plaintiffs have not adequately alleged the deceptive trade practices

required to establish liability under the act.  Appx. B To Mot. To Dismiss, 6.  Plaintiffs

-44-

counter that <u>Rhino Linings</u> concerned only the definition of "deceptive trade practice"

and that, since they allege an *unfair* business practice, they have met the CCPA's pleading

requirements.  Appx. To Pl.'s Resp., 23.  <u>Rhino Linings</u> concerned a CCPA claim brought

by a plaintiff who negotiated an exclusive and geographically restricted dealer contract

with Rhino Linings and then sued it for breach of contract when it entered into a contract

with another dealer who did business in the plaintiff's geographic area.  <u>See</u> <u>Rhino</u>

<u>Linings</u>, 62 P.3d at 144, 145.  The Court addressed whether plaintiff had established a

CCPA violation for Rhino Linings' false representation about the exclusivity of his sales

territory.  <u>Id.</u> at 145-46.  It affirmed that to state a private cause of action under the

CCPA, a plaintiff must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that
> the challenged practice occurred in the course of defendant's business,
> vocation, or occupation; (3) that it significantly impacts the public as actual or
> potential consumers of the defendant's goods, services, or property; (4) that the
> plaintiff suffered injury in fact to a legally protected interest; and (5) that the
> challenged practice caused the plaintiff's injury.

<u>Rhino Linings</u>, 62 P.3d at 146-47 (citing <u>Hall v. Walter</u>, 969 P.2d 224, 235 (Colo. 1998)).

Despite its use of "unfair" in addition to "deceptive," in the above-quoted section, the

court did not consistently refer to "unfair or deceptive" trade practices throughout its

opinion.  Rather, it limited its opinion to a discussion of whether plaintiff's claim against

Rhino Linings constituted a deceptive trade practice.  <u>See</u> <u>id.</u> at 147-48 ("[A] party may

establish a deceptive trade practice by proof that a defendant knowingly made a

misrepresentation that induces a party's action or inaction.").  In this context, the court

observed that the CCPA was enacted with the goal of protecting customers from misrepresentations by persons covered under the Act.  See id. ("[I]t is in the public interest to . . . prevent the use of methods that have a *tendency or capacity to attract customers* through deceptive trade practices." (citing People ex rel. Dunbar v. Gym of America, Inc., 177 Colo. 97, 113, 493 P.2d 660, 668 (Co. 1972) (emphasis in original)).

Rhino Linings appears limited in its scope to a discussion of what constitutes a deceptive trade practice.  But plaintiffs rely solely on the use of the word "unfair" in the initial portion of the test for a CCPA claim (stating that a plaintiff must show "that the defendant engaged in an unfair or deceptive trade practice") for its argument that, because it alleged unfair trade practices, its claim should proceed.  Plaintiffs provide no Colorado or other case where a plaintiff proceeded with a CCPA claim based on an unfair but not deceptive trade practice.  Neither do plaintiffs attempt to argue that their allegations are sufficient to state a claim for a deceptive trade practice.[12]

In support of its argument, GSK also cites New Motor Vehicles, 350 F. Supp. 2d at 180 n. 28, in which Judge Hornby concluded that, although Rhino Linings and other Colorado cases seem to establish that deceptive *or* unfair business practices fall under the CCPA, because no Colorado court applied the term "unfair" to substantively broaden the scope of the Act, he could not do so.  Plaintiffs counter that they, unlike the plaintiffs in

---

[12]  As discussed *infra* Section IV.B.1, plaintiffs have failed to state a claim for a deceptive trade practice aimed at consumers.  They claim only that GSK made false statements to the PTO, and not that it ever falsely misrepresented the nature of its product to consumers.

<u>New Motor Vehicles</u>, have met the pleading requirements under the CCPA by alleging that GSK's initiated sham lawsuits designed to artificially maintain their monopoly over the Wellbutrin SR market.  I believe Judge Hornby's limited reading of the reach of the CCPA is correct.  Although the <u>Rhino Linings</u> court limited its discussion to what constitutes a deceptive trade practice under the CCPA, nowhere in its opinion did it infer that unfair trade practices constitute a *distinct* claim under the CCPA.  Moreover, it cited cases from other jurisdictions in which misrepresentations aimed at consumers constituted violations of those jurisdictions' consumer protection statutes, which addressed unfair or deceptive trade practices.  <u>See</u> <u>Rhino Linings</u>, 62 P.3d at 148, n. 11.  In these courts, unfair or deceptive trade practices were defined generally as deceptive acts intended to induce consumer reliance.  <u>Id.</u>  In light of the <u>Rhino Linings</u> court's focus on deceptive acts or statements aimed at consumers and the absence of any case from Colorado allowing an unfair trade practice claim to proceed, I, too, will refrain from adopting any broader construction of the CCPA.

I will grant GSK's motion to dismiss plaintiffs' claim under the CCPA.

### 5.    Florida

Plaintiffs the IBEW Plan, the Sheet Metal Workers Plan, the AFL Plan, the UFCW, and Sidney Hillman claim GSK violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.*  As noted in Section III.A.3 of

the memorandum, plaintiffs have conceded that they assert a cause of action under this provision only, and do not claim GSK violated Florida antitrust law.  One stated purpose of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.202 (2).  The Act provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  FLA. STAT. §§ 501.204(1).

GSK argues plaintiffs' claim under the FDUTPA are barred because they fail to allege the required nexus with intrastate commerce.  Appx. To Def.'s Reply, 13.  In support of its reasoning, GSK cites Montgomery v. New Piper Aircraft, Inc., 209 F.R.D. 221, 227 (S.D. Fla. 2002), in which the District Court dismissed plaintiffs' FDUTPA claims because the alleged injuries had not taken place entirely within Florida.  However, the court rejected the plaintiffs' claims in New Piper Aircraft because they were attempting to apply the FDUTPA to the claims of *all* members of a nationwide class.  Id. ("In this case, there is no evidence in the record of any putative class members having suffered any alleged injury in Florida.").  Here, plaintiffs seek to assert FDUTPA claims only as to indirect purchasers who purchased Wellbutrin SR in Florida and plan members who purchased Wellbutrin SR in Florida.

Courts in this district have held that indirect payor plaintiffs may assert a cause of

action under the FDUTPA for claims arising in Florida based on reimbursement for

purchases of over-priced drugs, even when the alleged injuries did not take place entirely

within Florida.  See In re Wellbutrin XL Antitrust Litig., 260 F.R.D. at 162; In re Flonase

Antitrust Litig., 692 F. Supp. 2d at 537-38.  There is simply no language in the FDUTPA

implying a limitation of its scope to harm taking place within Florida alone.  Rather, the

Act proscribes unfair and unconscionable business practices "in the conduct of any trade

or commerce[.]"  FLA. STAT. § 501.204(1).  Therefore, I will deny GSK's motion to

dismiss plaintiffs' FDUTPA claims.


### 6.     Idaho

Plaintiff the UA Plan claims GSK violated the Idaho Consumer Protection Act

("ICPA") codified at IDAHO CODE ANN. §§ 48-601, et seq.  SAC ¶ 208.  The stated

purpose of the Act is "to protect both consumers and businesses against unfair methods of

competition and unfair or deceptive acts and practices in the conduct of trade or

commerce."  IDAHO CODE ANN. § 48-601.  GSK argues (1) that indirect purchasers lack

standing under the ICPA and (2) that the ICPA does not proscribe the type of conduct

plaintiffs allege in their complaint.  Appx. B To Mot. To Dismiss, 1, 7.

In support of its argument that indirect purchasers cannot file a claim under the

ICPA, GSK cites In re Static Random Access Memory (SRAM) Antitrust Litig., 580 F.

Supp. 2d 896, 907 (N.D. Cal. 2008), where the court dismissed an indirect purchaser

action under the ICPA after indirect purchaser plaintiffs conceded that they were barred

from asserting that claim.  In its ruling, the court relied on State ex rel. Wasden v. Daicel

Chem. Indus., Ltd., 141 Idaho 102, 106, 106 P.3d 428, 432 (Idaho 2005), where the court

found that the Supreme Court's holding in Illinois Brick applied to claims under the Idaho

Antitrust Act and therefore barred indirect purchaser claims.  Id.  Plaintiffs are correct

that Wasden did not address the issue of indirect purchaser standing under the ICPA.

Because it is clear that GSK's second ground for dismissal of plaintiffs' complaint is

meritorious, I will not rule on whether indirect purchasers have standing to sue under the

ICPA.

What is perhaps the most broadly worded subsection of the ICPA prohibits

"[e]ngaging in any unconscionable method, act or practice in the conduct of trade or

commerce, as provided in section 48-603C, Idaho Code[.]" IDAHO CODE ANN. § 48-

601(18).  Idaho Code Section 48-603C states that "any unconscionable method, act or

practice in the conduct of any trade or commerce violates the provisions of this chapter

whether it occurs before, during, or after the conduct of the trade or commerce."  IDAHO

CODE ANN. § 48-603C(1).  In determining whether a method, act or practice is

unconscionable, one circumstance courts can consider is "whether the sales conduct or

pattern of sales conduct would outrage or offend the public conscience, as determined by

the court."  IDAHO CODE ANN. § 48-603C(d).

GSK claims the Supreme Court of Idaho's ruling that subsection (d) of Idaho Code

§ 48-603C "is designed to prohibit unconscionable 'sales conduct' that is directed at the consumer," Wasden, 106 P.3d at 435, precludes plaintiffs from asserting a cause of action for unconscionable conduct based on GSK's filing of allegedly sham litigation.  Appx. B To Mot. To Dismiss, 7.  The plaintiffs in Wasden alleged defendants had engaged in a price-fixing scheme, and the court ruled price-fixing did not fall under the scope of §48-603C(d).  The court reasoned that, "[w]hen construed in the context of the first three subsections, [the "unconscionable"] subsection is designed to prohibit unconscionable "sales conduct" that is directed at the consumer."  Id.

Wasden precludes plaintiff's claims, since they do not allege GSK engaged in unconscionable sales conduct directed at consumers.  Plaintiffs appear to concede as much.  See Appx. to Pl.s' Resp., 24-25 ("Defendants' conduct easily meets a number of the specifically enumerated 'unfair methods and practices' set out in Idaho Code Ann. § 48-603.").  They argue instead that their allegations of GSK's unlawful and deceptive scheme to monopolize the Wellbutrin SR market state a claim for violation of subsections prohibiting "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services," IDAHO CODE ANN. § 48-603(2), "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[,]" id. at § 48-603(5), "representing that goods or services are of a particular standard, quality, or grade . . . if they are of another[,]" id. at § 48-603(7), "disparaging the goods, services, or business of

another by false or misleading representations of fact[,]" id. at § 48-603(8) and "engaging

in any act or practice which is otherwise misleading, false, or deceptive to the consumer,"

id. at § 48-603(17).

The first four subsections quoted above, when plainly read, do not apply to the

plaintiffs' allegations against GSK.  The remaining question is whether there exists a

construction of subsection 17, which prohibits "[e]ngaging in any act or practice which is

otherwise misleading, false, or deceptive to the consumer,"  IDAHO CODE ANN. § 48-

601(17), that covers the plaintiffs' claims.  The ICPA is "intended to deter unfair and

deceptive trade practices and is to be construed liberally[.]" In re Edwards, 233 B.R. 461

(Bkrtcy D. Idaho 1999).  Idaho courts construing the ICPA look to the Federal Trade

Commission Act, 15 U.S.C. 45(a)(1) ("FTCA"), for guidance.  See State ex rel. Kidwell

v. Master Distrib., Inc., 101 Idaho 447, 453,  615 P.2d 116, 122 (Idaho, 1980).  However,

in doing so, the Idaho Supreme Court has focused on the importance in the FTCA of

preventing fraudulent advertising and other misleading statements aimed at consumers.

See id., 615 P.2d at 122-23 ("An act or practice is unfair if it is shown to possess a

tendency or capacity to deceive consumers.").

I will dismiss plaintiffs' ICPA claims for the same reason I will dismiss their

Arizona consumer protection claims.  Arizona's consumer protection statute, the language

of which is somewhat similar to the language of § 48-601(17),[13] also applies to business

---

[13]  The relevant language of the Arizona statute prohibits "[t]he act, use or employment by
any person of any deception, deceptive act or practice, fraud, false pretense, false promise,

transactions directly involving consumers.  Plaintiffs have presented no authority

supporting a broad construction of subsection (17) of the ICPA to include conduct which,

though generally deceptive, was not aimed at consumers, but rather was aimed at the PTO

and other drug manufacturers.  In the absence of any such authority, I will read this

section to prohibit misleading conduct *directed at* the consumer.  Even if plaintiffs'

claims in this case prove to be true, GSK's conduct was at all times directed towards the

PTO and generic manufacturers.  It is not accused of providing false information about

Wellbutrin SR or otherwise misleading consumers about the nature of Wellbutrin SR.

 Therefore, I will grant GSK's motion to dismiss plaintiffs' claim under the Idaho

Consumer Protection Act.[14]


### 7. Massachusetts

 Plaintiff the IBEW Plan asserts a claim under MASS. GEN. LAWS ch. 93A, *et seq*.

SAC ¶ 209.  GSK claims this cause of action must be dismissed because plaintiffs failed

---

misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise[.]"  ARIZ. REV. STAT. § 44-1522(A).

 [14]  In characterizing the nature of numerous state unfair and deceptive trade practice statutes, the court in In re Pharmaceutical Industry Average Wholesale Price Litig. 252 F.R.D. 83, Appx. D n. 27 (D. Mass. 2008), observed that "while Idaho's UDTPA refers to 'unfair or deceptive acts or practices,' its general prohibition refers to an enumerated list of prohibited practices, instead of simply prohibiting all unfair or deceptive practices.  For this reason, Idaho's UDTPA has been excluded from the list of statutes that more closely track the FTC Act[,]" which prohibits all *unfair or deceptive* acts.

to file a mandatory pre-filing notice.  Appx. B To Mot. To Dismiss, 9.  At least thirty days prior to the filing of a complaint under the act, a plaintiff must mail or deliver a written demand for relief to the defendant, identifying the claimant and describing the unfair or deceptive trade practice alleged.  MASS. GEN. LAWS. Ch. 93A § 9(3).

This statutory notice requirement is "not merely a procedural nicety, but, rather, 'a prerequisite to suit.'"  Rodi v. S. New England Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004).  "A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a *special element must be alleged and proved*."  Spring v. Geriatric Authority of Holyoke, 475 N.E.2d 727, 735 (Mass. 1985) (emphasis in original).  In other words, a later allegation that plaintiffs sent a demand letter does not suffice to meet the requirement of ch. 93A § 9(3); that a demand letter was sent must be alleged in the complaint.  Plaintiffs claim in their response to GSK's motion to dismiss that they sent written notice and/or demand letters both in 2002 and 2007.  Appx. to Pl.'s Resp. To Def.'s Mot., 6.  However, I cannot find, and the plaintiffs nowhere point to, an allegation in the SAC that the demand letters were properly filed.  While this may seem a trite technicality, Massachusetts courts have been clear that failure to *allege* delivery of a demand letter is fatal to a complaint.  See City of Boston v. Aetna Life Ins. Co., 506 N.E.2d 106, 109 (Mass. 2008).  Judge Brody has dismissed consumer protection claims asserted under Massachusetts law for the same reason.  See In re Flonase Antitrust Litig., 692 F. Supp. 2d at 540.

Therefore, I will grant GSK's motion to dismiss plaintiffs' Massachusetts consumer protection claim.

### 8.    Michigan

Plaintiff UFCW asserts a claim under the Michigan Consumer Protection Act ("MCPA") codified at MICH. STAT. §§ 445.901, *et seq.*  SAC ¶ 210.  The MCPA prohibits "unfair, unconscionable or deceptive" business practices and provides an exclusive list of offenses that constitute such practices.  See MICH. STAT. §§ 445.903. The Act explicitly states that, though "[t]he attorney general may promulgate rules to implement this act . . . [t]he rules shall not create an additional unfair trade practice not already enumerated by this section."  Id. at 445.903(2).  In other words, although the Act prohibits "unfair" practices, those practices are limited to the enumerated examples in section 445.903.  See Forton v. Lazar, 239 Mich.App. 711, 609 N.W.2d 850, 853 (Mich.App. 2000) *overruled on other grounds by* Liss v. Lewiston-Richards, Inc., 478 Mich. 203, 732 N.W.2d 514 (Mich. 2007).  Prohibited practices include "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"and "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  MICH. STAT. §§ 445.903 (1)(s), (bb).

In explaining the scope of the MCPA, the Michigan Court of Appeals has observed that the Act is broad in scope because it prohibits "not only 'deceptive' business practices but also those which are 'unfair' and 'unconscionable.'"  Mayhall v. A.H. Pond Co., Inc., 129 Mich.App. 178, 182, 341 N.W.2d 268, 270 (Mich. App. 1983).  It continued:

> Nevertheless, the great majority of the specific prohibited practices enumerated in the statute -- including those relied upon by plaintiff -- involve fraud.  Hence, insofar as § 11 [of the MCPA, which allows a person who suffers loss as a result of a violation of the act to sue for actual damages or $250.00] applies to those practices, we construe it as well with reference to the common-law tort of fraud.
>
> Construing the above provisions with the tort of fraud in mind, their meaning becomes clearer. It has long been the law that to constitute actionable fraud a plaintiff must have "suffered injury" as a result of his reliance on the defendant's false representation.

Id. at 182-83, 270.

GSK claims plaintiffs' claims must be dismissed because they have not alleged that GSK had an intent to deceive consumers, and because their actions do not fall within any of the enumerated prohibited practices listed in section 445.901.  Plaintiffs respond that their allegations are sufficient to show that GSK made misrepresentations upon which a reasonable person would have relied.  Appx. To Pl.'s Resp., 26.

In support of their argument, GSK cites Rodriguez v. Berrybrook Farms, Inc., 1990 U.S. Dist. LEXIS 7678, at *39 (W.D. Mich. June 20, 1990) for its statement that, for a class action to proceed under the MCPA, "an intent to deceive on the part of the

defendants must be shown." Appx. B To Mot. To Dismiss, 7. In <u>Rodriguez</u>, plaintiffs, migrant laborers, were not paid in full the wages owed to them and were the victims of defendants' failure to honor the terms of their working arrangement. 1990 U.S. Dist. LEXIS 7678 at *37-39. The court found, however, that though defendants' conduct was wrong, plaintiffs had not proven an intent to deceive the plaintiffs. <u>Id.</u> at *39.

Although the facts of this case are different, in that plaintiffs have pleaded that defendants knowingly filed sham litigation against generic drug manufacturers, I believe GSK's motion to dismiss must be granted on this ground. Even construing the allegations of the second amended complaint broadly, plaintiffs have failed to claim that GSK made misrepresentations *directed* at them or upon which they, as consumers of Wellbutrin SR, relied. They have also failed to allege that GSK had the intent to deceive consumers rather than the PTO or generic manufacturers. Therefore, I will grant GSK's motion to dismiss plaintiffs' MCPA claims.

### 9.   Minnesota

Plaintiff UFCW asserts a claim under "MINN. STAT. ANN. § 8.31, *et seq*.," which itself sets forth the duties of the Attorney General of Minnesota in enforcing, and provides a private right of action for violation of a number of Minnesota statutes. SAC, ¶ 211. Because both parties argue the viability of claims asserted under Minnesota's Prevention of Consumer Fraud Act and its Uniform Deceptive Trade Practices Act, both

of which are covered by section 8.31, I will discuss whether plaintiffs' factual allegations meet the requirements of those acts.

Minnesota's Prevention of Consumer Fraud Act prohibits:

> [t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby[.]

MINN. STAT. ANN. § 325F.69(1). The Uniform Deceptive Trade Practices Act prohibits a number of enumerated practices that constitute misrepresentations concerning the nature, origin, price, or other characteristics of goods. See MINN. STAT. ANN. § 325D.44.

GSK claims plaintiffs have not stated a claim under the Prevention of Consumer Fraud Act because it requires the making of a fraudulent statement "with the intent that others rely thereon in connection with the sale of any merchandise." MINN. STAT. ANN. § 325F.69(1). In support of its argument, GSK cites Alsides v. Brown, 592 N.W.2d 468 (Minn. App. 1999).[15] Alsides contains only a cursory review of the requirements to state

---

[15] In arguing for dismissal of plaintiffs' Minnesota claims, GSK also cites Arrowhead Bluffs, Inc. v. Blackburn, No. C8-03-301, 2003 WL 22778336 at *2 (Minn. Ct. App. Nov. 25, 2003), which dismissed claims asserted under the Minnesota Prevention of Consumer Fraud Act, codified at MINN. STAT. ANN. § 325F.69(1). Appx. B To Mot. To Dismiss, 7. Arrowhead Bluffs does not describe in detail the nature of plaintiffs' allegations before dismissing them, instead relying on the fact that defendants had not made representations but had rather made investment predictions. 2003 WL 22778336 at *2. It does not contain the kind of detailed reasoning that will assist us in assessing plaintiffs' claims here. GSK also cites New Motor Vehicles, 350 F. Supp. 2d at 189-190, in which the court dismissed plaintiffs' claims under both the Prevention of Consumer Fraud Act and the Minnesota Uniform Deceptive Trade Practices Act, relying largely on Alsides v. Brown. Plaintiffs' response simply states that their allegations "satisfy the pleading requirements under Minnesota law." Appx. To Pl.'s Resp. To Def.s' Motion, 27.

a claim under Minnesota's consumer protection statutes, but it states that "[t]o sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon regardless of whether any person has, in fact, been misled, deceived, or damaged."  592 N.W.2d at 470.

In the context of Arizona's consumer protection statute, I found that plaintiffs had not stated a claim because they failed to allege, as required under the statute, that GSK made fraudulent statements directed at consumers.  However, I believe that, under the broad construction of the Minnesota statutes adopted by the Minnesota Supreme Court (after the decision in Alsides was issued), plaintiffs have stated a claim.

"Minnesota Statutes §§ 325D.44, 325F.67, and 325F.69 reflect 'clear legislative policy encouraging aggressive prosecution of statutory violations' and therefore, 'are generally very broadly construed to enhance consumer protection.'" Kinetic v. Medtronic, 672 F. Supp. 2d 933, 945 (D.Minn. 2009) (citing State of Minnesota v. Philip Morris Inc., 551 N.W.2d 490, 496 (Minn. 1996)).  Minnesota courts have ruled that these statutes support a cause of action by *any person injured* as a result of prohibited acts, as long as that cause of action benefits the public, and even if that person did not purchase the defendant's goods.  Id. (citing Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000); see also Group Health Plan, Inc. v. Philip Morris, Inc., 621 N.W.2d 2, 8-9 (Minn. 2001)).  Although the decision in Group Health Plan v. Philip Morris, for example, was largely concerned with whether plaintiffs had standing to bring a cause of action, and not with

whether the defendants' actions constituted a violation of the statute, I believe the Minnesota Supreme Court's continued insistence on the importance of construing the statutes broadly applies here.

Plaintiffs' claim, which is based on GSK's making a baseless legal argument in a legal proceedings and to the Patent and Trademark Office, is *not* a claim that GSK made a fraudulent argument *to a consumer* in connection with the sale or merchandising of Wellbutrin SR.  However, broadly interpreted, Section 325 F.69, which prohibits "[t]he act, use, or employment by any person of any . . . misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise," applies to GSK's alleged actions here.  GSK is accused of filing litigation without probable cause, in order to maintain its monopoly on the market for Wellbutrin SR.  Read strictly, plaintiffs do not have a cause of action.  But read in light of the Minnesota Supreme Court's ruling that "these statutes are generally very broadly construed to enhance consumer protection," Group Health Plan, 621 N.W.2d at 10 (citing State by Humphrey v. Philip Morris, Inc., 551 N.W.2d 490, 496 (Minn. 1996), I have no ground to dismiss plaintiffs' claim.

Therefore, I will deny GSK's motion to dismiss plaintiffs' claims under the Minnesota consumer protection statutes.

### 10.   Missouri

Plaintiffs the UFCW and the IBEW plan assert a claim under the Missouri

Merchandising Practices Act ("MMPA").  SAC ¶ 212.  The MMPA provides:

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.

MO. REV. STAT. § 407.020(1).  The statute also provides:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lesser resides or in which the transaction complained of took place, to recover actual damages.

MO. REV. STAT. § 407.025.

GSK asserts three grounds for dismissal of plaintiffs' MMPA claim.  It argues that

indirect purchasers lack standing to sue, that the MMPA requires allegations of intrastate

conduct or effects, which plaintiffs fail to plead, and that plaintiffs fail to allege acts

covered by the statute.  See Appx. B To Mot. To Dismiss, 1, 5, 7.

In support of their argument that indirect purchasers lack standing to sue in

Missouri, GSK cites Ireland v. Microsoft Corp., No. 00-201515, 2001 WL at 1868946, at

*1 (Mo. Cir. Ct. Jan. 24, 2001), where the claims of indirect purchasers of Microsoft

licenses were dismissed.  The <u>Ireland</u> opinion contains no reasoning supporting the court's conclusion that <u>Illinois Brick</u> barred the claims of the indirect purchaser plaintiffs, stating instead that plaintiffs' claims failed because "the Act is limited to persons who purchased goods and services. Licenses are not defined as goods and services[.] <u>Id.</u> Plaintiffs counter that the Missouri Supreme Court's 2007 ruling in <u>Gibbons v. Nuckolls, Inc.</u>, 216 S.W.3d 667, 669-670 (Mo. 2007), abrogated <u>Ireland</u>, and they are correct.  In <u>Gibbons</u>, the court ruled that "[t]he statute's broad language of 'any person who has suffered any ascertainable loss' contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct" are entitled to sue under the MMPA.  216 S.W.3d at 669.  The court squarely addressed the argument of the defendant, an automobile wholesaler, that the plaintiff, who purchased a car from a dealer, did not fall under the act.  It reasoned that:

> Nuckolls undertakes an exercise in strained statutory construction and urges a limited application of [prior cases], arguing that the MPA accords broader authority to the attorney general, while private plaintiffs can only sue a direct seller. This Court declines to impose such a significant limitation on Missouri consumers. Relevant precedent consistently reinforces the plain language and spirit of the statute to further the ultimate objective of consumer protection, regardless of whether the suit is filed by the state or by an individual.

<u>Id.</u> at 670.  In light of <u>Gibbons</u>, I must reject GSK's indirect purchaser argument.

GSK's second argument, that the MMPA applies only to intrastate activities or to those having intrastate effects, is also misplaced.  GSK and the plaintiffs dispute the meaning of the most recent Missouri case to address this issue, <u>State ex rel Nixon v.</u>

Estes, 108 S.W.3d 795 (Mo. Ct. App. 2003).  There, the defendant argued that the MMPA does not apply to consumers located in states other than Missouri or to business conducted outside Missouri.  Id. at 798.  The court began by noting that the words "trade" or "commerce" as used in Section 407.020.1 of the MMPA are defined within the act as including "any trade or commerce directly or indirectly affecting the people of this state."  Id. at 798-99 (citing MO. REV. STAT. § 407.010(7)).  The court then concluded that, because defendant had engaged in deceptive acts and conducted his business within Missouri, the lower court did not err in awarding restitution to his non-Missouri victims.  Id. at 799.  Here, plaintiffs bring MMPA claims on behalf of themselves and plan members who purchased Wellbutrin SR in Missouri.  The plaintiffs have alleged that GSK directed its advertising and marketing efforts to Missouri, and that the Missouri plans and plan members paid more for Wellbutrin SR in Missouri as a result.  This conduct falls within the literal wording of the MMPA, and Nixon does not mandate a different ruling.

Finally, GSK argues plaintiffs do not allege it engaged in conduct that falls within the purview of the MMPA.  This argument, too, is unavailing.  As is the case with consumer protection statutes in Arizona, Colorado, Idaho, Michigan, and Minnesota, the second section of the MMPA applies to misrepresentations aimed at consumers ("or the concealment, suppression, or ommission of any material fact in connection with the sale or advertisement of any merchandise").  However, the portion of the statute covering

-63-

"unfair practice[s]" is not connected with the sale or advertisement of merchandise, and therefore may apply to plaintiffs' claims.

GSK cites <u>Willard v. Bic Corp.</u>, 788 F.Supp. 1059, 1071 (W.D.Mo. 1991), in arguing that plaintiffs have not stated a cause of action for an unfair business practice. Appx. To Def.'s Reply, 23.  In <u>Williard</u>, the District Court dismissed the plaintiff's claim under the MMPA, which was filed in conjunction with a  products liability claim for inadequate warnings on a lighter.  788 F.Supp. at 1062.  There, the court noted a common fact pattern of defendants making "misleading and deceptive representations or omissions directed toward the complaining customer[.]"  <u>Id.</u>  However, the court did not make this observation in order to establish that an "unfair" business practice under the MMPA requires a misrepresentation.  Rather, the court concluded that plaintiffs simply had not shown that any part of the lighter's label contained a misrepresentation or omission, and instead contained adequate warnings and instructions about the product.  <u>Id.</u>  <u>Willard</u> is therefore unhelpful to GSK's argument.[16]

_____

[16]  GSK insists that <u>Willard</u> requires dismissal of plaintiffs' Missouri claim, arguing the court ruled "that defendant's conduct could not constitute an unfair practice within the meaning and intent of the act."  Appx. To Def.'s Reply to Plaintiff's Response, 23.  GSK's reading oversimplifies the holding in <u>Willard</u>.  The <u>Willard</u> court found that because there was no evidence that Bic, the manufacturer of the lighter, had concealed or suppressed material facts in creating the warning label for the lighter, plaintiffs had no cause of action for an unfair practice based on Bic's marketing of the lighter.  <u>See Willard</u>, 788 F.Supp. 1071 ("Bic maintains that it has supplied adequate warnings and instructions with its product. Bic submits that these warnings and instructions are reasonably calculated to result in safe product usage. The warnings given are not misleading, deceptive or untrue. Consequently, Bic asserts that its conduct in marketing the disposable lighter does not  amount to an unfair practice under the Act and this claim should be dismissed.")

Plaintiffs claim the plain language of the MMPA makes clear that they have stated a claim for "unfair" business conduct, and that decisions of Missouri courts support their reasoning.  They are correct.  Missouri courts have held that an unfair practice under the MMPA is one that either: "(1) offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions or (2) is unethical, oppressive, or unscrupulous; and (3) presents a risk of, or causes, substantial injury to consumers."  Schuchmann v. Air Serv. Heating and Air Conditioning, Inc., 199 S.W.3d 228, 233 (Mo. Ct. App. 2006).  The Supreme Court of Missouri has stated that "the literal words [of the MMPA] cover every practice imaginable and every unfairness to whatever degree."  Ports Petroleum Co., Inc. of Ohio v. Nixon, 37 S.W.3d 237, 240 (Mo. 2001).

Plaintiffs' sham litigation allegations clearly fall under the MMPA's expansive scope.  Therefore, GSK's motion to dismiss plaintiffs' Missouri consumer protection claims is denied.

### 11.   Nevada

Plaintiff UFCW brings a claim under Nevada's consumer protection statute, codified at NEV. REV. STAT. § 41.600, et seq.  SAC ¶ 213.  Section 41.600 of the statute provides that "[a]n action may be brought by any person who is a victim of consumer fraud," and states that consumer fraud can be a violation of one of a number of unlawful

acts.  NEV. REV. STAT. § 41.600.  For purposes of this motion, the relevant definition of consumer fraud is "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."  Id. at § 41.600(e).[17]  The list of prohibited acts contained in Section 598.0915 includes consumer-related false advertising or merchandising, misrepresentations as to the source, origin, quality, or standard of goods, and other such practices.  See NEV. REV. STAT. § 598.0915.  Plaintiffs claim subsection (8), which prohibits "disparaging the goods, services, or business of another person by false or misleading representation of fact," covers its allegations against GSK.  Appx. To Pl.'s Resp., 30.

Even if plaintiffs' allegation that GSK made legally baseless allegations to the PTO and in the context of litigation against generic manufacturers proves true, this does not fall under subsection 8, which explicitly requires disparaging the goods of another. "Disparage" is not defined within Nevada's statute.  Its accepted meaning is "to lower in rank or reputation" or "to depreciate by indirect means (as invidious comparison): speak slightingly about."  Merriam Webster's Collegiate Dictionary, Eleventh Edition, 360 (2005)  Making a baseless legal argument does not constitute disparagement in this sense. Therefore, I will grant GSK's motion to dismiss plaintiffs' claims under Nevada law.

### 12.   New York

Plaintiff Sidney Hillman has asserted a cause of action under New York's

---

[17]  The practices constituting consumer fraud set forth in subsections (a)-(d) of Section 41.600 could not be construed to relate to the scheme alleged here.

consumer protection statute, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  SAC ¶ 214 (citing N.Y. GEN. BUS. LAW. § 349).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).

GSK argues plaintiffs' claims are barred because any alleged deceptive acts were not aimed at the consumers and indirect purchasers represented in this purported class. Appx. To Def.'s Reply, 24.  Judge McLaughlin, addressing a similar argument in In re Wellbutrin XL Antitrust Litig., found that, although GSK may have been deceptive in its representations to the FDA and federal courts by filing sham litigation, "[t]he defendants' competitors, and then direct purchasers, were the first entities to feel the effect of that deceit . . . [t]he indirect purchaser [plaintiffs] are too remote from the allegedly deceptive acts to state a claim for relief under New York law."  In my memorandum deciding GSK's motion for judgment on the pleadings, I noted that "the alleged deceptive conduct in this case neither occurred in New York nor was directed at consumers."  Sheet Metal Workers, 263 F.R.D. at 214.

No allegations in the second amended complaint cure this defect.  Although

plaintiffs argue GSK's actions were consumer-oriented "in that they were designed to prevent the consuming public's access to a less-expensive form of Wellbutrin SR," this argument is weak.  Although GSK's alleged actions were, at some level, deceitful, and they also eventually affected consumers, the disconnect between any deception and consumers of Wellbutrin SR is simply too great to state a consumer protection claim in New York.  Therefore, I will grant GSK's motion to dismiss plaintiffs' New York consumer protection claims.


13.    **North Carolina**

Plaintiff Sidney Hillman claims GSK violated North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"), codified at N.C. GEN. STAT. ANN. § 75-1.1, *et seq.*  SAC ¶ 215.  Section 75-1.1 states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  Although the Act's purpose is to protect the consuming public, it also allows for suits by one business against another when the unfair acts involved produce a harmful effect for consumers.  See Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 519-520 (4th Cir. 1999).  There is no question that the NCUDTPA encompasses both deceptive and unfair business conduct.  See Marshall v. Miller, 302 N.C. 539, 276 S.E.2d 397, 403 (N.C. 1981) (finding that a practice is unfair and deceptive "when it offends established public policy as well as when the practice is immoral,

unethical, oppressive, unscrupulous, or substantially injurious to consumers.")

GSK asserts two grounds for dismissal of plaintiffs' claims.  It argues Sidney Hillman is not eligible to bring a claim because it is a business engaged in commercial dealings with GSK, and that plaintiffs have not adequately pleaded intrastate conduct or effects.  Appx. B to Mot. To Dismiss, 2, 4.

First I will address GSK's claim that a welfare benefit plan does not have a cause of action under the NCUDTPA because it is a business.  In support of this argument, GSK cites <u>Food Lion, Inc.</u>, 194 F.3d at 520, where the Fourth Circuit prohibited a business from asserting a NCUDTPA claim against another company because the two were not competitors or potential competitors.  Appx. B to Mot. To Dismiss, 2.  Plaintiffs claim <u>Food Lion</u> simply stressed that businesses can not assert NCUDTPA claims against one another unless the challenged business conduct has some effect on consumers.  Appx. To Pl.'s Resp., 6.

The Court of Appeals of North Carolina, after noting that "[w]e have held that N.C. Gen. Stat. § 75-1.1 should not be narrowly construed," ruled that:

> to determine who may pursue a claim for unfair and deceptive trade practices, we . . . look to N.C. Gen. Stat. § 75-16[,] [which] "provides in pertinent part: *If any person* shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done[.]

<u>Walker v. Fleetwood Homes of North Carolina, Inc.</u>,176 N.C.App. 668, 673-74, 627

S.E.2d 629, 633 (N.C.App.,2006) (emphasis in original).  In affirming the judgment of the Court of Appeals in <u>Walker</u>, the Supreme Court of North Carolina observed that, "any consumer injured by unfair or deceptive trade practices can bring a UDTP claim." <u>Walker v. Fleetwood Homes of North Carolina, Inc.</u>, 362 N.C. 63, 67, 653 S.E.2d 393, 397 (N.C. 2007).  The court also cited its own precedent stating that "[i]n enacting G.S. 75-16 . . . our Legislature intended to establish an effective private cause of action for *aggrieved consumers* in this State."  <u>Id.</u> (citing <u>Marshall</u>, 302 N.C. at 543) (emphasis added in <u>Walker</u>).

The plaintiffs present the stronger argument.  Federal courts interpreting the NCUDTPA have allowed claims asserted by businesses against one another as long as the challenged practices affect commerce or the marketplace.  <u>See</u> <u>e.g.</u>, <u>In re Brokers, Inc.</u>, 396 B.R. 146, 162 (Bkrtcy. M.D.N.C. 2008) ("Acknowledging the spirit and purpose of the UDTPA, the court does not find that Mr. Anderson's acts were in or affecting commerce . . . [m]atters of internal corporate management do not affect commerce as defined by the UDTPA."); <u>Lindner v. Durham Hosiery Mills, Inc.</u>, 761 F.2d 162, 167 (4th Cir. 1985) ("While it is true that North Carolina and federal court have applied § 75-1.1 in a variety of commercial settings, that fact does not mean that §75-1.1 applies to all commercial transactions or to securities transactions. . . In most of the cases cited above, the [defendants'] anti-competitive conduct necessarily injured the consuming public.").  The <u>Food Lion</u> court found plaintiffs could not bring a claim against the defendant

because, although the defendant engaged in deceptive conduct, it "did not harm the consuming public." Food Lion, 194 F.3d at 520.

The NCUDTPA provides a remedy for a "person, firm, or corporation" injured as the result of an unfair business practice, and North Carolina courts have restricted the Act only to ensure that challenged activities affect consumers or commerce. Plaintiffs have stated a cause of action in North Carolina. They claim GSK engaged in unethical conduct in the course of its dealings with the PTO and with generic drug manufacturers, and that this conduct resulted in third party purchasers and consumers of Wellbutrin SR paying an inflated price for the product. This falls within the scope of the NCUDTPA, and GSK's motion to dismiss plaintiffs' claims under North Carolina law should not be granted for this reason.

GSK also claims that the NCUDTPA requires plaintiffs to show substantial effects within North Carolina. Appx. B. To Mot. To Dismiss, 4. This argument, too, is without merit.[18] In support, GSK cites only Lawrence v. UMLIC-Five Corp., 2007 WL 2570256 at *7, where the court granted a motion to dismiss plaintiff's NCUDTPA claim because it was not "persuaded that the Defendants' alleged acts have had a substantial in-state effect on North Carolina trade or commerce." Id. The court reached this conclusion because the plaintiffs were suing under North Carolina law for the defendants' attempt to

---

[18] Judge Brody allowed plaintiffs to proceed with their North Carolina claims in In re Flonase Antitrust Litig, 692 F. Supp. 2d at 540-41, because"[p]laintiffs have alleged substantial in-state effect on North Carolina trade or commerce."

foreclose on their land, which was located in Texas.  Id.  Plaintiffs rightly argue that the NCUDTPA only requires plaintiffs to prove a substantial injury in North Carolina.  See The In Porters, S.A. v. Hanes Printables, Inc., 663 F.Supp 494, 501 (M.D.N.C. 1987); Merck & Co., Inc. v. Lyon, 941 F.Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing plaintiffs' NCUDTPA claim because defendant had no business operations in North Carolina).

Plaintiffs have alleged a substantial effect in North Carolina in pleading that they and members of their plans paid more for Wellbutrin SR in North Carolina as a result of GSK's patent infringement lawsuits.  Because GSK has not asserted a valid ground for dismissal of plaintiffs' NCUDTPA claim, I will deny its motion to dismiss this claim.

## 14.    Oklahoma

Plaintiffs the IBEW Plan and UFCW claim GSK violated the Oklahoma Consumer Protection Statute ("OCPA"), codified at OKLA. STAT. tit. 15, § 751, *et seq.*  SAC ¶ 216. The Act provides that "[a] person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act . . . when, in the course of the person's business, the person . . . [c]ommits an unfair or deceptive trade practice as defined in Section 752 of this title."  OKLA. STAT. tit. 15, § 753(20).  "'Unfair trade practice' means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  OKLA.

STAT. tit. 15, § 752(14).

GSK argues for dismissal of plaintiffs' Oklahoma claims on three grounds.  It cites

Major v. Microsoft Corp., 60 P.3d 511, 517 (Okla Civ. App. 2002) for its argument that

indirect purchasers lack standing under the OCPA.  Appx. B To Mot. To Dismiss, 1.  It

also claims plaintiffs are also barred from filing an anti-competitive conduct claim as a

consumer protection claim.  Id. at 2.  Finally, it claims the conduct alleged by plaintiffs

does not fall under the prohibited acts in the OCPA.  Id. at 8.

Because I believe plaintiffs' claim should be dismissed on the second ground cited

by GSK, I will address that ground only.  In Major, the Court of Appeals of Oklahoma

affirmed the dismissal of an indirect purchaser's claim under the OCPA.  See 60 P.3d at

517.  The court reasoned that the Oklahoma Legislature's clear intent to interpret

Oklahoma antitrust law in accordance with federal antitrust law, which limits recovery to

direct purchasers under the Supreme Court's decision in Illinois Brick,[19] precluded the

assertion of an indirect purchaser's anti-competitive conduct claims under the OCPA.  Id.

The plaintiffs, the court found, were "recasting their claims of anticompetitive conduct as

a Consumer Protection Claim."  Id.

Plaintiffs respond that their OCPA claim should stand because their "allegations

satisfy the statutory requirements at this juncture."  Appx. To Pl.'s Resp. To Def.'s

Motion, 4.  Though it may be true that the conduct plaintiffs allege is covered by the

---

[19]  A complete discussion of Illinois Brick follows in Section III (C) of this memorandum.

OCPA, it does not distinguish this case from <u>Major</u>.  In <u>Major</u>, the plaintiff's claims of price-fixing and monopolization, like plaintiffs' claims here, would fall under the OCPA's broad definition of an "unfair trade practice."  However, because those claims were based on the same *facts* as the plaintiff's monopolization claims, they were dismissed.  Here, the facts underlying plaintiffs' monopolization and unfair competition claims are essentially the same, and I believe an Oklahoma court following <u>Major</u> would dismiss plaintiffs' OCPA claim.

Therefore, I will grant GSK's motion to dismiss plaintiffs' Oklahoma consumer protection claims.

### 15.   Pennsylvania

Plaintiff the UFCW asserts a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (PUTPCPL), codified at 73 PA. STAT. ANN. §§ 201-1, *et seq*.  SAC ¶ 217.  The PUTPCPL prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 PA. STAT. ANN. § 201-3.  The section of the PUTPCPL describing unfair or deceptive acts or practices contains twenty subsections describing unlawful acts relating to consumer deception, creating a likelihood of confusion, misrepresenting the nature of goods, etc., and also contains a catchall provision that prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73

PA. STAT. ANN. § 201-2(4)(i)-(xxi).

GSK argues plaintiffs' PUTPCPL claims should be dismissed because plaintiffs, as welfare benefit plans, lack standing to sue, Appx. B to Mot. To Dismiss, 2, and because the PUTPCPL bars only the acts enumerated in subsections (i) - (xxi) and acts involving fraud or deception, which are not alleged here, id. at 8.

Although past courts have ruled that the PUTPCPL requires a plaintiff to allege common law fraud, see Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co., 953 F. Supp. 617, 668 (E.D.Pa. 1997), recent courts in this district have concluded that this interpretation is no longer sound.  More importantly, these courts have ruled that the PUTPCPL has a wider scope than its language might suggest.  As noted by Judge McLaughlin in Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 432 (E.D.Pa. 2002), the version of the catchall provision of the PUTPCPL in place prior to 1996 prohibited only "fraudulent" conduct.  See 73 PA. STAT. ANN. § 201-2(4)(xxi) (Historical and Statutory Notes).  The act was then amended to prohibit both fraudulent and "deceptive" conduct.  Id.  I agree with Judge McLaughlin that In re Patterson, 263 B.R. 82, 92-93 (Bankr. E.D.Pa. 2001) is persuasive in its reasoning that the addition of the word "deceptive," along with the Pennsylvania Supreme Court's broad construction of the PUTPCPL as a remedial law designed to address both fraudulent and unfair business practices, renders previous interpretations requiring plaintiffs to allege common law fraud erroneous.  Id.; see also Creamer v. Monumental Props., Inc., 459 Pa. 450, 457-58 (Pa.

1974) ("The Legislature sought by the Consumer Protection Law to benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices[.] [T]his law attempts to place on more equal terms seller and consumer."); id. at n.5 ("There is no indication of an intent to exclude a class or classes of transactions from the ambit of the Consumer Protection Law.").

Plaintiffs have adequately pleaded deceptive conduct by GSK and have therefore stated a claim under the PUTPCPL.  They allege that GSK filed sham patent infringement lawsuits knowing they would not be successful, in an attempt to retain their monopoly on the Wellbutrin SR market.  Under the broad scope of the PUTPCPL, these allegations are sufficient.

GSK also argues that plaintiffs' PUTPCPL claims must be dismissed because they are not "consumers" within the meaning of the statute.  Appx. To Def.'s Reply, 6.  To state a claim under the act, a plaintiff must be a "person" who made a "purchase" "primarily for personal, family, or household purposes."  73 PA. STAT. ANN. § 201-9.2(a). This argument, too, ignores the legislative history of the PUTPCPL.  Pennsylvania courts have ruled that the act "should be interpreted very broadly so as to effectuate as fully as possible the legislature's purpose of preventing unfair or deceptive practices.'" S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, No. 95-7058, 1996 WL 200603 at *3 (E.D.Pa. Apr. 25, 1996) (citing Culbreth v. Lawrence J. Miller, Inc., 477 A.2d 491, 495 (Pa. Super. 1984)).  In allowing a trust to assert a claim on behalf of its beneficiaries, the

court in <u>S. Kane</u> observed that the PUTPCPL confers standing on corporations, trusts, incorporated or unincorporated associations, and any other legal entities, and allowed the claim to proceed because the trust had purchased the securities on behalf of its beneficiaries.  <u>Id.</u> at *3.

I believe the situation here is sufficiently analogous.  The plaintiff welfare benefit plans purchased or reimbursed their plan members for purchases of Wellbutrin SR for the members' personal use.  Other courts that have interpreted the ambit of the act have done so broadly, allowing legal entities to assert claims on behalf of personal users.  The plans qualify as legal entities under the terms of the act.  Therefore, GSK's arguments for dismissal of plaintiffs' Pennsylvania consumer protection claims are not convincing, and I will deny GSK's motion to dismiss this claim.

### 16.    Rhode Island

Plaintiff the UA Plan claims GSK violated the Rhode Island Deceptive Trade Practices Act, codified at R.I. GEN. LAWS §§ 6-13.1-1, *et seq.*  SAC ¶ 218.  Under the RIDTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."  R.I. GEN. LAWS § 6-13.1-2.  The prohibited methods, acts, or practices are enumerated consumer-based advertising and merchandising misrepresentations, and one section prohibits "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material

respect." R.I. GEN. LAWS §§ 6-13.1-1(6)(i)-(xx), 6-13.1-1(6)(xiv).  The RIDTPA confers

standing on:

> [a]ny person who purchases or leases goods or services primarily for personal,
> family, or household purposes and thereby suffers any ascertainable loss of
> money or property, real or personal, as a result of the use or employment by
> another person of a method, act, or practice declared unlawful by § 6-13.1-2.

R.I. GEN. LAWS. § 6-13.1-5.2.  To determine whether a practice is "unfair" under the

statute, a reviewing court must consider "(1) whether the practice affronts public policy,

as delineated by the common law, statutes, and "other established concept[s] of

unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3)

whether it causes substantial injury to consumers (or competitors or other businessmen)."

Ames v. Oceanside Welding & Towing Co., 767 A.2d 677, 681 (R.I. 2001).

GSK argues for dismissal of plaintiffs' Rhode Island claims on two grounds.  It

argues first that plaintiffs are not consumers protected by the RIDTPA, Appx. B to Mot.

To Dismiss, 2, and second, that the conduct prohibited under the RIDTPA must be

directed towards misleading a member of the public into purchasing a product he or she

did not intend to purchase, id. at 8.

GSK's second argument is baseless.  As the court in In re Chocolate Confectionary

correctly observed, the Supreme Court of Rhode Island's ruling in ERI Max

Entertainment v. Streisand, 690 A.2d 1351, 1353 (R.I. 1997) that "a finding of unfair

competition must be predicated upon conduct . . . that reasonably tended to mislead the

general public into purchasing [the defendant's] product when the actual intent of the

purchaser was to buy the product of [another]," was an interpretation of common law, and not a construction of the RIDTPA.  See In re Chocolate Confectionary, 602 F. Supp. 2d at 586 n. 61.

That leaves me to consider GSK's first argument, that plaintiffs are not "consumers" within the meaning of the RIDTPA.  The RIDTPA plainly includes in its definition of those covered "any person."  R.I. GEN. LAWS. § 6-13.1-5.2.  In support of its argument, GSK directs the court to cases finding that corporations are not persons under the Act.  See Appx. To Def.'s Reply, 6 (citing ERI Max Entertainment, 690 A.2d at 1353 and Magnum Def., Inc. v. Harbour Grp., Ltd., 248 F. Supp. 2d 64, 71 (D.R.I. 2003)).  Though the plaintiff welfare plans are not corporations, neither are they individuals who purchased Wellbutrin SR for "personal, family, or household purposes."  This language, when read plainly, does appear to restrict standing to individual persons and to exclude welfare plans, which represent purchasers of the drug and do not purchase it for personal, family, or household purposes.  The District of Rhode Island has strictly construed this requirement, and I will defer to its reasoned interpretation of the RIDTPA.  See Rhode Island Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc., 99 F. Supp. 2d 174, 188-89 (D.R.I. 2000) ("The Fund has not alleged, nor do the facts suggest, that it was a purchaser or lessee of any of Defendants' goods or services that were intended to be used primarily for personal, family, or household purposes."); Scully Signal Co. v. Joyal, 881 F.Supp. 727, 741 (D.R.I.1995).  Therefore, I will grant GSK's

motion to dismiss plaintiffs' Rhode Island Deceptive Trade Practices Act claims.

### C.   **Plaintiffs' Unjust Enrichment Claims**

Plaintiffs have also filed unjust enrichment claims under the laws of twenty-seven

states: Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Idaho, Iowa,

Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri,

Nevada, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, Tennessee,

Texas, West Virginia, and Wisconsin.

Plaintiffs' second amended complaint asserts that:

- GSK has "benefitted from the monopoly profits on their sales of Wellbutrin
  SR resulting from the unlawful and inequitable acts alleged in this
  complaint." SAC ¶ 226;

- GSK has had "financial benefits resulting from their unlawful and
  inequitable conduct [ ] traceable to overpayments for Wellbutrin SR by
  Plaintiffs and members of the Class." Id. ¶ 227;

- "Plaintiffs and the Class have conferred upon Defendants an economic
  benefit, in the nature of profits resulting from unlawful overcharges and
  monopoly profits, to the economic detriment of Plaintiffs and the Class."
  Id. at ¶ 228.

- "The financial benefits derived by Defendants rightfully belong to Plaintiffs

and the Class, as Plaintiffs and the Class paid anticompetitive and
monopolistic prices during the Class Period, inuring to the benefit of
Defendants." Id. ¶ 230.

• "It would be inequitable and violative of the laws of the states named within
this count concerning unjust enrichment for the Defendants to be permitted
to retain any of the overcharges for Wellbutrin SR derived from the
Defendants' unfair and unconscionable methods, acts and trade practices
alleged in this complaint." Id. ¶ 231.

Plaintiffs seek an order compelling GSK to disgorge its unlawful and inequitable
proceeds into a common fund for the benefit of the plaintiffs and class members, and seek
creation of a constructive trust on all unlawful sums received by GSK traceable to the
Plaintiffs and the putative class.  Id. ¶ 232-33.  GSK urges dismissal of plaintiffs' unjust
enrichment claims on three general grounds, each of which I will discuss in turn.

### a.  Can the Plaintiffs Bring Unjust Enrichment Claims in States Where Indirect Purchasers Have Been Barred From Pursuing Antitrust and Consumer Protection Claims?

The first ground asserted by GSK for dismissal of plaintiffs' unjust enrichment
claims is the argument that allowing such claims in states that prohibit indirect purchasers
from recovering under their antitrust or consumer protection statutes would result in an
"end-run" around the limitations of those statutes.  Mot. to Dismiss at 19-20; Appx. B To

Mot. To Dismiss, 10-11.  GSK claims nine states—New York, California, Florida,

Indiana, Louisiana, Massachusetts, Minnesota, Pennsylvania, and West Virginia—have

addressed this question specifically.  Id.  Although in the following sections of this

memorandum I will address each state claim separately, I believe a general discussion of

this argument is necessary.

The exact elements of an unjust enrichment claim vary among the states, but most

require plaintiffs to show that the defendant received a benefit from the plaintiff, that the

defendant accepted and retained the benefit conferred, and that it would be inequitable for

the defendant to retain that benefit without paying.  See Powers v. Lycoming Engines,

245 F.R.D. 226, 231 (E.D.Pa. 2007); *Undoing the Otherwise Perfect Crime — Applying*

*Unjust Enrichment To Consumer Price-Fixing Claims*, Daniel R. Karon, 108 W. Va. L.

Rev. 395, 409 (2005).

The availability of unjust enrichment claims to indirect purchasers becomes a

difficult question as a result of the Supreme Court's decision in Illinois Brick, 431 U.S.

720.  As described in the introduction to this memorandum, Illinois Brick established that

indirect purchasers may not sue under Section 4 of the Clayton Act and limited private

federal antitrust remedies to direct purchasers, cutting off "others in the chain of

manufacture or distribution."  Id. at 729.  The Court was concerned with exposing

antitrust defendants to "multiple liability" by allowing pass-on claims by consumers and

third party payors.  Id. at 727-29.[20]  This is why the indirect purchasers bring claims under state, and not federal, antitrust laws.  Years after the Court issued its decision in Illinois Brick, it clarified that Illinois Brick did not preempt state antitrust statutes, clearing the way for indirect purchasers to assert antitrust claims in those states whose laws allowed for indirect purchaser suits.  See ARC America, 490 U.S. 93.

In the wake of Illinois Brick and ARC, states reacted in a number of ways.  Some have adopted the policy of Illinois Brick and applied its reasoning to their own antitrust statutes, disallowing indirect purchasers to pursue antitrust claims.  See In re Terazosin, 160 F. Supp. 2d at 1372; In re Flonase Antitrust Litig., 692 F. Supp. 2d at 542.  One of the questions presented here is whether indirect purchaser unjust enrichment claims should be dismissed in states that have implicitly accepted the reasoning of Ilinois Brick by precluding indirect purchaser suits under their state antitrust and consumer protection statutes.  GSK claims allowing indirect payor plaintiffs to recover through unjust enrichment for what are essentially antitrust violations, when states do not allow recovery under the antitrust statutes *themselves*, would circumvent state policy on this issue.  Plaintiffs respond that "[a]sking this Court to hold that Plaintiffs cannot pursue unjust enrichment claims in states that have not adopted Illinois Brick repealer statutes imposes a privity requirement into unjust enrichment claims that does not exist: whether Plaintiffs are indirect purchasers is not relevant because what matters is that a benefit was conferred

---

[20]  For further analysis of Illinois Brick, see Judge Brody's opinion in In re Flonase Antitrust Litig., 692 F. Supp. 2d at 541-543.

on Defendants." Pl.'s Resp. at 21.

In deciding the motion for judgment on the pleadings, I observed that, "as a general matter, if a state . . . prohibits claims against an antitrust defendant under its antitrust and consumer protection statutes, plaintiffs foreclosed from statutory relief may be circumventing this legislative decision by seeking equitable relief." See In re Wellbutrin SR, 263 F.R.D. at 214-215. However, I recognized that in D.R. Ward Constr. Co. v. Rohm & Hass Co., 470 F. Supp. 2d 485, 506 (E.D.Pa. 2006), Judge Davis seemed to reject this argument, allowing plaintiffs to assert unjust enrichment claims in states that either expressly permitted independent unjust enrichment claims by indirect purchasers or had no statutes or case law barring such claims.[21] It is to this extent that I will follow Judge Davis' reasoning in D.R. Ward.[22] As GSK correctly points out, I observed in my previous decision that if a state *has* addressed this question specifically in its statute or in case law, I must respect legislative direction or defer to state court interpretations of state laws.

Therefore, in accordance with well-reasoned opinions both in this Court and in

---

[21] These states were Tennessee, Arizona, and Vermont.

[22] Judge Davis observed that "the success of plaintiffs' common law unjust enrichment claims should not necessarily depend upon the success of their state antitrust claims . . . because in practice, equitable remedies for unjust enrichment claims are often awarded when state statutory claims prove unsuccessful." D.R. Ward, 264 F.R.D. at 506. It appears Judge Davis might have, if presented with an unjust enrichment claim in a state where indirect purchaser antitrust claims were barred, allowed those claims to proceed nonetheless. However, he never reached this ultimate issue.

other jurisdictions, I will dismiss unjust enrichment claims in those states that explicitly

disallow indirect purchasers from pursuing antitrust or consumer protection claims.

Allowing such recovery would result in circumvention of the policies expressed by state

legislatures through the limitations inherent in these laws.  See Steamfitters Local Union

No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 937 (3d Cir. 1999) ("We can

find no justification for permitting plaintiffs to proceed on their unjust enrichment claim

once we have determined that the District Court properly dismissed the traditional tort

claims because of the remoteness of plaintiffs' injuries from defendants' wrongdoing.");

see also In re New Motor Vehicles Antitrust Litig., 350 F. Supp. 2d at 209-212 ("For

those states that have maintained the Illinois Brick prohibition on indirect purchaser

recovery, I conclude that it would subvert the statutory scheme to allow these same

indirect purchasers to secure, for the statutory violation, restitutionary relief at common

law (or in equity)."); In re Flonase Antitrust Litig., 692 F. Supp. 2d at 542 ("[W]here an

antitrust defendant's conduct cannot give rise to liability under state antitrust and

consumer protection laws, Plaintiffs should be prohibited from recovery under a claim for

unjust enrichment. This is true although unjust enrichment has in some cases provided a

remedy where there was no adequate remedy at law."); In re Terazosin, 160 F. Supp. 2d at

1380; In re Microsoft Corp. Antitrust Litig., 241 F. Supp. 2d 563, 565 (D.Md. 2003); In

re TFT-LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d 1179, 1192 (N.D.Cal. 2009).

There are some states—Alabama, Georgia, Illinois, Indiana, Kentucky, Louisiana,

Tennessee, and Texas—in which the plaintiffs *do not assert* any antitrust or consumer protection claims.  I will dismiss the unjust enrichment claims in these states unless plaintiffs have presented convincing caselaw establishing that a state recognizes unjust enrichment as an autonomous cause of action.

### b.   Can the Plaintiffs Bring Claims in States Where Applicable Antitrust and Consumer Protection Statutes Do Not Provide for an Equitable Remedy?

GSK presents a second generalized argument for dismissal of plaintiffs' unjust enrichment claims: because fourteen states—Alabama, Arkansas, Colorado, Georgia, Illinois, Louisiana, Massachusetts, Minnesota, Nevada, New York, North Carolina, Rhode Island, Texas, and West Virginia—do not allow equitable remedies for antitrust violations, claims in those states should be barred.  Motion to Dismiss at 19-20.[23]

I will dismiss plaintiffs' unjust enrichment claims in those states where indirect purchasers do not have a remedy under the relevant state antitrust or consumer protection laws, because allowing indirect purchasers to pursue an equitable remedy in states where they have no antitrust or consumer protection remedy at law would subvert state legislative attempts to limit antitrust liability for defendants.  I will diverge from this

---

[23]  Of these states, I will dismiss plaintiffs' New York antitrust claims and allow antitrust claims to proceed in Minnesota, Nevada, North Carolina, and West Virginia.  Of these states, I will dismiss consumer protection claims in Colorado, Massachusetts, Minnesota, Nevada, and Rhode Island.  I will allow consumer protection claims to proceed in Arkansas and North Carolina.

ruling in those cases where plaintiffs can show that the relevant state recognizes a broad unjust enrichment cause of action unlinked to a statutory or common law claim.  The second ground for removal urged by GSK essentially asks us to take the next step of barring claims for an equitable remedy in states where a statutory remedy for plaintiffs exists, but is limited to damages and is not restitutionary in nature.  At least one court has rejected this argument, reasoning that allowing indirect purchaser plaintiffs to elect either restitution or damages is reasonable as long as they have standing to sue under the relevant state antitrust or consumer protection statutes.  See In re New Motor Vehicles, 350 F. Supp. 2d at 211-212 ("The defendants have presented no authority to show that where state law *does* allow an indirect purchaser to recover for violating state antitrust statutes, the recovery must be measured only by the damage to the plaintiff rather than by the illicit gain to the defendant. . . . The requests for restitutionary relief can remain for the states where state antitrust remedies remain."), 213 ("As with state antitrust laws, the defendants have pointed me to no authority that state consumer protection statutes limit relief to compensation of a plaintiff's damage rather than disgorgement of a defendant's gain. Therefore, the request for the alternate restitutionary remedy will remain for those states where I have concluded that indirect purchaser plaintiffs may pursue the consumer protection remedy.").

One case relied on by the court in New Motor Vehicles contains a lengthy analysis of this argument, which links the availability of an equitable antitrust remedy with the

availability of any equitable remedy.  In this case, <u>In re Cardizem Antitrust Litig.</u>, the court addressed defendants' argument that "Plaintiffs' unjust enrichment claims are dependent upon the allegations supporting their state law antitrust claims and thus suffer from the same flaws that preclude Plaintiffs from stating an antitrust claim."  105 F. Supp. 2d 618, 669 (E.D.Mich. 2000).  The court rejected it, reasoning that the defendants' argument "fails to read Plaintiffs' complaint in the light most favorable to Plaintiffs and confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws."  <u>Id.</u>  The court went on to observe that, "[r]ather than allegations and proof of the elements necessary for its antitrust claims, Plaintiffs' common law claims for unjust enrichment depend upon allegations and proof that 'the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" <u>Id.</u> (internal citations omitted).  The court quoted numerous state court decisions addressing the basic elements of an unjust enrichment claim: that a defendant received a benefit from the plaintiff which it would be unjust for the defendant to retain.  <u>Id.</u> at 670.

GSK claims "[t]his court's equitable power to remedy unjust enrichment should not be applied to override state legislation authorizing specific types of remedies for injuries caused by the conduct alleged."  Def.'s Reply at 12.  It urges that, should I again

look to D.R. Ward for guidance in this decision, I note its observation that defendants in that case failed to analyze the relevant antitrust statutory language to determine whether the statutes permitted equitable remedies.  Mot. To Dismiss, 20.  GSK also cites New Motor Vehicles, both in its motion to dismiss and in its reply.  See Mot. To Dismiss, 20; Reply to Response, 12.  GSK cites the portion of the opinion where the court reasons in the context of the availability of restitutionary relief, that "I do not have unlimited compass as a common law judge to determine what that remedy should be."  New Motor Vehicles, 350 F. Supp. 2d at 210.  However, the court noted before making this statement that the plaintiffs made claims under (1) federal antitrust, (2) state antitrust, and (3) state consumer protection statutes, and then went on to determine whether restitution was available under each.  Id. at 210-213.  The court determined that restitution was not available for violations of federal antitrust law by operation of the Illinois Brick bar on indirect purchaser actions.  Id. at 211.  However, it then concluded, in the portions of the opinion I cite above, that in the absence of some authority that state antitrust and consumer protection statutes bar restitution unless restitution is specifically named as a remedy in the statute, it would not limit the plaintiffs' remedy.  Id. at 211-213.

I believe that, in those states in which plaintiffs have successfully pleaded antitrust and consumer protection claims, they should be able to assert unjust enrichment claims where they meet the common law unjust enrichment requirements.  In these states there is no expressed legislative intent to protect antitrust defendants by restricting indirect

purchasers from pursuing antitrust and consumer protection claims.  Therefore, it violates

no state policy to allow plaintiffs to pursue a differently measured remedy for their

claims.  Federal procedural rules allow plaintiffs to plead in the alternative, and I see no

reason plaintiffs cannot rely on an alternative theory of recovery as long as there is no

relevant state policy precluding them from recovering for GSK's alleged acts.  Therefore,

in the absence of controlling state case law to the contrary, I will allow plaintiffs to assert

unjust enrichment claims in those states where they have successfully pleaded an antitrust

or consumer protection claim, regardless of whether the relevant statute expressly allows

for an equitable remedy.


   **c.    Do Plaintiffs Need To Show Conferral of A Direct Benefit
         In Order to Maintain An Unjust Enrichment Claim?**

Finally, GSK argues that nine[24] states—Florida, Georgia, Idaho, Michigan,

Missouri, North Carolina, Oklahoma, Pennsylvania, and Wisconsin—require conferral of

a direct benefit by the plaintiff on the defendant which was not here conferred.  See

Motion to Dismiss at 21.  As observed by Judge Brody in Flonase, "as a general matter,

unjust enrichment does not require that the benefit conferred be done so directly."  692 F.

Supp. 2d at 544.  However, Judge Brody dismissed unjust enrichment claims in both

Florida and North Carolina on the "direct benefit" ground, concluding that those states

---

[24] GSK states in its motion to dismiss that this argument applies to ten states but only
lists nine.

did explicitly require that the benefit conferred be direct, and not indirect or incidental.
See id.

Plaintiffs argue both that they "need not allege that they had *direct* dealings with
Defendant in order to state a claim for common law unjust enrichment," and that
"Defendants were unjustly enriched as a result of a benefit directly conferred by
plaintiffs."  Pl.'s Resp. To Def.'s Motion at 21, 22.  I believe plaintiffs mean to argue
that, while they had no direct dealings, contractual or otherwise, with GSK, they may still
assert that they conferred a benefit on GSK by purchasing Wellbutrin SR at inflated
prices.  Plaintiffs present the stronger argument here.  Many courts in addition to this one
have ruled that a direct relationship between an antitrust plaintiff and defendant is not
necessary to assert an unjust enrichment claim.  See In re Cardizem Antitrust Litig., 105
F. Supp. 2d at 671 ("Contrary to Defendants' argument, there is no additional requirement
that a benefit flow solely from Plaintiffs to Defendants . . . [w]hether or not the benefit is
directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must
show that his detriment and the defendant's benefit are related and flow from the
challenged conduct." (internal citations omitted)); In re K-Dur Antitrust Litig., 338 F.
Supp. 2d 517, 543 (D.N.J. 2004) ("To the extent that Third-Party Payors have pled that
they reimbursed insured members for the cost of K-Dur products themselves . . . they
would appear to have pled sufficiently a direct injury to survive a motion to dismiss.);
Karon, *Undoing the Perfect Crime - Applying Unjust Enrichment to Consumer Price-*

*Fixing Claims,* 108 W.V.L.R. at 423-428 (collecting cases holding that a direct relationship is not required to state an unjust enrichment claim).

I reject GSK's argument on this point.  As long as plaintiffs have adequately stated a claim under the applicable state antitrust or consumer protection law, the absence of a direct relationship should not interfere with their remedial unjust enrichment claim.  The indirect payors' overpayment for monopolized Wellbutrin SR is not so attenuated from the acts they claim caused the monopolization that an otherwise valid unjust enrichment claim should be dismissed.  Although I will address each state-specific direct benefit argument, I will not rely on this ground for dismissal unless GSK presents clear authority for it.  This argument is related to GSK's assertion that plaintiffs' claims under three states' laws are barred because the relationship between plaintiffs and defendants is too attenuated.  See Def.'s Motion to Dismiss, 21.  I will address these claims individually.

### 1.      Alabama

In ruling on GSK's motion for judgment on the pleadings, I rejected the argument that plaintiffs' Alabama unjust enrichment claim should be dismissed because Alabama courts do not allow unjust enrichment claims in class actions.  See In re: Wellbutrin SR, 263 F.R.D. at 216-217.  I denied GSK's motions to dismiss plaintiffs' claims arising under Alabama's unjust enrichment law.

GSK now argues plaintiffs' Alabama claim should be dismissed because

Alabama's antitrust statute does not provide for an equitable remedy.  Plaintiffs have not asserted a claim under Alabama's antitrust statute and as a result, their unjust enrichment claim will be dismissed.

Plaintiffs' unjust enrichment claim is essentially based on GSK's claimed antitrust violations.  The plaintiffs have not filed a claim under Alabama law, and rightly so.  The Supreme Court of Alabama has ruled that Alabama's antitrust statute, ALA. CODE §6-5-60, applies only to intrastate *conduct*.  See Abbott Labs. v. Durrett, 746 So.2d 316 (Ala. 1999).  Although indirect purchasers have standing to sue under the antitrust act, GSK's antitrust violations as claimed by the plaintiffs do not violate Alabama's antitrust statute because they involve interstate, and not purely intrastate, conduct.

Therefore, the question remains whether plaintiffs may assert an autonomous unjust enrichment independent of any statutory allegations.  The Alabama legislature has expressed an intent to limit the scope of its antitrust statute by imposing antitrust liability for conduct involving intrastate conduct.  It would evade the expressed intent of the Alabama legislature to allow a restitutionary remedy for the kind of conduct not covered by Alabama's statute.  See Flonase, 692 F. Supp. 2d at 542 n. 13 ("[A]llowing such restitution would undermine state legislative policies and an entire body of substantive law.").  I recognize the apparent inconsistency in allowing plaintiffs' Alabama unjust enrichment claim to proceed in my earlier opinion and dismissing it now.  However, I was not fully faced with GSK's end-run argument until this point, and upon considering it,

find it an appropriate ground for dismissal in this situation.

### 2.    Arkansas

GSK argues that plaintiffs' Arkansas claim should be dismissed because the Arkansas antitrust statute does not provide for an equitable remedy.

Arkansas enacted its Illinois Brick repealer statute in 2003.  See ARK. CODE ANN. § 4-75-315 (effective Apr. 8, 2003).  In In re Relafen Antitrust Litig., the court concluded that because the repealer statute was only prospective in application, and the defendants' allegedly anticompetitive conduct took place before the repealer statute became effective, plaintiffs could not state an unjust enrichment claim.  225 F.R.D. 14, 26-27 (D.Mass. 2004).  There, the court refused to instead look to the plaintiffs' alleged time of injury, noting the importance of allowing individuals to conform their conduct to the law.  Id. at 27 n. 7.

Although this argument is not raised by the parties, I think the Relafen opinion on this point is well reasoned.  Here, the alleged anti-competitive conduct, GSK's filing of sham litigation against Eon, took place in 2000.  This is three years prior to the effective date of Arkansas' Illinois Brick repealer statute, and therefore, plaintiffs' Arkansas unjust enrichment claims will be dismissed.

### 3.    Arizona

GSK does not seek dismissal of plaintiffs' Arizona unjust enrichment claim.

### 4.    California

GSK claims plaintiffs' California unjust enrichment claim should be dismissed because California has expressly addressed whether indirect purchasers may file unjust enrichment claims and has ruled in the negative.

In support of its argument, GSK cites In re Abbott Labs Norvir Antitrust Litig., 562 F. Supp. 2d 1080, 1090 (N.D.Cal. 2008).  The Norvir plaintiffs asserted both federal Sherman Act antitrust claims and claims under California's unfair and deceptive trade practices act.  Norvir Antitrust Litig., 562 F. Supp. 2d at 1084.  The court rejected the plaintiffs' unjust enrichment claim because it "appears to be premised wholly on Abbott's alleged violation of *federal* antitrust law," which barred indirect purchasers from recovering.  Id. at 1090 (emphasis added).  In fact, the court acknowledged that the defendants' Illinois Brick argument "does not specifically address Plaintiffs' claims under California's Business and Professional Code § 17200, *et seq.*"  Id., n. 4.  The Norvir court rejected Cardizem, 105 F. Supp. 2d 618, and K-Dur, 338 F. Supp. 2d 517, where unjust enrichment claims were allowed, on the ground that the claims in those cases were "independent of" plaintiffs' antitrust claims.  Id. at 1090.  The Cardizem court allowed unjust enrichment claims to proceed because plaintiffs depended on allegations and proof

separate and apart from that necessary for the antitrust claims - specifically, that defendants had retained a benefit conferred on them by plaintiffs in an unconscionable fashion.  In re Cardizem, 105 F. Supp. 2d at 669-70.

Plaintiffs allege GSK violated both California's antitrust statute and its unfair competition law.  I will dismiss their antitrust claims and allow their unfair competition claims, asserted under CAL. BUS. & PROF. CODE § 17200, to proceed.  See supra sections IV(A)(2) and IV(B)(3).  Illinois Brick is not a bar to their unjust enrichment claims here as it was in Norvir, because the plaintiffs here have asserted viable state statutory claims, and are not barred from doing so because they are indirect purchasers.  Norvir does not support GSK's argument.

However, some courts have dismissed independent unjust enrichment claims on the ground that restitution is a remedy, and not a cause of action, under California law. See Berry v. Bryan Cave LLP, No.3:08-CV-2035-B, 2010 WL 1904885 at *8 (N.D.Cal. 2010) (citing McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227, 254 (Ct.App. 2006)).  More importantly, multiple California courts have ruled that unjust enrichment claims may proceed only where the underlying cause of action is adequately pleaded and restitution is an available remedy.  See Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (Cal. App. 2 Dist. 2003) (observing that "[u]njust enrichment is 'a general principle, underlying various legal doctrines and remedies,' rather than a remedy itself" and finding that, because plaintiff argued he was

-96-

entitled to restitution under a quasi-contract theory and did not plead this theory of recovery, his restitution claim was properly dismissed); Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1596, 80 Cal. Rptr. 3d 316 (Cal. App. 4 Dist. 2008) (finding that plaintiffs were barred from bringing a claim for unjust enrichment because they lacked standing to pursue other claims asserted under the California Unfair Competition Law and the California Insurance Code).  On the other hand, at least one California court has allowed an unjust enrichment claim where it is grounded in equitable principles of restitution.  See Hirsch v. Bank of America, 132 Cal. Rptr. 2d 220, 229-230 (Cal. App. 1 Dist., 2003) (allowing plaintiffs to plead unjust enrichment based on a bank's retention of excessive fees and reasoning that "[a]n individual is required to make restitution when he or she has been unjustly enriched at the expense of another.  A person is enriched if he or she receives a benefit at another's expense.  The term 'benefit' connotes any type of advantage." (internal citations omitted)).

A California court ruling on plaintiffs' unjust enrichment claim would look to the underlying theory for recovery, and grant or deny a motion to dismiss the unjust enrichment claim based on whether the underlying claim could proceed.  See Melchior, 106 Cal. App. 4th at 793, Peterson, 164 Cal. App. 4th at 1596.  In theory, plaintiffs' unjust enrichment claim should proceed insofar as it is premised upon their allegations that GSK violated California's Unfair Competition Law.  However, under the CUCL, "disgorgement of unfairly obtained profits into a fluid recovery fund is not an available

-97-

remedy in a representative action brought under the UCL." <u>Korea Supply</u>, 63 P.3d at 944 (citing <u>Kraus v. Trinity Mgmt. Serv., Inc.</u>, 23 Cal.4th 116, 999 P.2d 718 (Cal. 2000)). Plaintiffs' unjust enrichment claim seeks disgorgement of GSK's profits into a common fund, which is expressly prohibited under the CUCL.  Plaintiffs are already entitled to restitution as a remedy for GSK's alleged violation of the CUCL, <u>see</u> *supra* Section IV(B)(3), so allowing their separate claim for unjust enrichment and disgorgement of profits would be duplicative of the plaintiffs' CUCL claim insofar as it seeks restitution, and would circumvent the limitations of the CUCL insofar as it seeks disgorgement of profits.  Therefore, I will grant GSK's motion to dismiss plaintiffs' California unjust enrichment claim.


### 5.     Colorado

GSK argues plaintiffs' Colorado unjust enrichment claim should be dismissed because Colorado's antitrust statute does not provide for an equitable remedy.  I first note that plaintiffs do not assert a claim under Colorado's antitrust statute.  They do, however, state a claim under Colorado's consumer protection statute, which I will dismiss because the Colorado statute is aimed at deceptive statements and representations to consumers and Colorado courts have not yet applied it broadly to cover more general "unfair" business practices.  <u>See</u> *supra* section IV(B)(4).  Therefore, I am left to consider whether plaintiffs may assert a standalone unjust enrichment claim.

In Colorado, "[t]he test for recovery under an unjust enrichment theory requires a showing that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1007 (Colo. 2008) (citing DCB Constr. Co., Inc. v. Cent. City Dev. Co., 965 P.2d 115, 119 (Colo.1998)). In Colorado, unjust enrichment "does not depend in any way upon a promise or privity between the parties." DCB Constr. Co. 965 P.2d at 119.

In Robinson, the Colorado Supreme Court was faced with the question whether an unjust enrichment claim premised on a tort was valid. It held that it was, observing that "[t]he scope of the [unjust enrichment] remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another." Robinson, 179 P.3d at 1007. Plaintiffs claim this language can be interpreted as an invitation to hold that unjust enrichment is a "standalone cause of action" in Colorado, independent of any claim plaintiffs might make under Colorado's antitrust or consumer protection statute. Plaintiffs' argument is misguided. The Robinson court considered whether the plaintiff could properly seek a restitutionary remedy against the Colorado State Lottery Division for its sale of scratch off tickets after the top prizes had already been awarded. Id. at 1006-1007. It had, in the same opinion, dismissed plaintiff's claims because they could lie in tort, and because governmental immunity applied to any such claims under the

Colorado Government Immunity Act ("CGIA").  Id. at 1004-1005.  Faced with whether the plaintiff could assert an unjust enrichment claim for essentially the same underlying, allegedly tortious conduct, the court reasoned that the damages plaintiff could seek in restitution were basically the same damages she would receive had the tort claim advanced.  Id. at 1007-1008.  The court then dismissed the unjust enrichment claim, on the ground that:

> in this particular instance, where the nature of the injury underlying the unjust enrichment claim arguably arises out of tortious conduct and the request for relief is effectively equivalent to the damages that [plaintiff] could seek in tort, the claim lies in tort or could lie in tort. Accordingly, Robinson's unjust enrichment claim is barred by the CGIA.

Id. at 1008.

Robinson does not stand for the proposition that Colorado recognizes a standalone unjust enrichment claim.  Rather, in Robinson, the court determined whether the conduct underlying a claim for unjust enrichment was the same as the underlying conduct for a common law remedy.  The court concluded that because the conduct was the same, and the underlying common law claim could not be asserted, there was no claim for unjust enrichment.  Robinson affirms that I must dismiss plaintiffs' Colorado unjust enrichment claim because the unfair conduct plaintiffs allege, which is the same unfair conduct underlying their unjust enrichment claim, is not actionable under Colorado's consumer protection statute.

### 6.     Florida

GSK seeks dismissal of plaintiffs' Florida unjust enrichment claim on the ground that Florida courts require a plaintiff seeking restitution to have conferred a benefit directly on the defendant.  Plaintiffs concede this argument.  Resp. To Motion to Dismiss at 23, n.5.  Therefore, GSK's motion to dismiss plaintiffs' Florida unjust enrichment claim will be granted.

### 7.     Georgia

GSK seeks dismissal of plaintiffs' Georgia unjust enrichment claim, arguing that the relief provision of Georgia's antitrust statute, GA. CODE ANN. § 13-8-40(a), only provides for injunctive relief or damages, and that Georgia law requires conferral of a direct benefit in order to state a claim for unjust enrichment.  Appx. B to Mot. To Dismiss, 15, 12.

Plaintiffs argue that, although they make no claim under the antitrust or consumer protection statutes of Georgia, they should be permitted to pursue their unjust enrichment claim because Georgia common law recognizes unjust enrichment as a "standalone legal claim."  In support of their argument, they cite Infor Global Solutions (Michigan), Inc. v. Hanover Foods Corp., No. 08-CV-3757, 2009 WL 2778258 at *2 (N.D.Ga. Aug. 28, 2009).  Plaintiffs' argument is weak.  The court in Infor Global merely observed that unjust enrichment is available as an alternate claim where a breach of contract claim is

also pleaded.  Id.  This is the original quasi-contractual origin of the remedy of unjust

enrichment.  In Infor Global, the parties were in dispute over the validity of the

agreements under which the plaintiff sued, and the plaintiff's unjust enrichment claim

was pleaded in the alternative to a claim for contractual damages.  Id.  Here, plaintiffs do

not assert, in the alternative to their unjust enrichment claim, a contract or even a tort

claim against GSK.  Plaintiffs have no other cause of action against GSK, making Infor

Global particularly inapposite.

        GSK asserts two arguments against plaintiffs' Georgia unjust enrichment claim.

The first is that Georgia's antitrust statute does not provide for an equitable remedy, and

the second is that Georgia requires conferral of a direct benefit in order to state a claim

for unjust enrichment.[25]  Because plaintiffs have not shown that Georgia courts explicitly

recognize unjust enrichment as an autonomous claim and they have not asserted any other

claims under Georgia law, I will grant GSK's motion to dismiss plaintiffs' Georgia unjust

enrichment claim.

---

        [25]  In support of this argument, GSK cites Brenner v. Future Graphics, LLC, 258 F.R.D.
561, 576, (N.D.Ga. 2007), where the court dismissed an unjust enrichment claim asserted by
indirect purchasers because "[t]here is no evidence to establish that any of named plaintiffs
conferred a benefit directly to [defendant]."  The court cited no Georgia law in support of this
statement.  GSK has not cited, and I cannot find, any statement from a Georgia court affirming
that Georgia requires conferral of a direct benefit in order to state a claim for unjust enrichment.
On the contrary, the District of Georgia, in identifying the rare states that would not recognize an
unjust enrichment claim brought by a consumer against a manufacturer due to some sort of direct
benefit requirement, did not name Georgia.  See In re ConAgra Peanut Butter Prods. Liability
Litig., No. 1:07-MD-1845-TWT, 2008 WL 2132233 at *2-3 (N.D.Ga. May 21, 2008).
Therefore, I do not believe this is a legitimate ground for dismissal of plaintiffs' Georgia unjust
enrichment claim.

### 8.    Idaho

GSK asserts only one argument for dismissal of plaintiffs' Idaho claims, which is

that Idaho courts require conferral of a direct benefit in order to maintain an unjust

enrichment claim.  Plaintiffs did not assert an Idaho antitrust claim but did assert an Idaho

consumer protection claim.  I will dismiss that claim because plaintiffs failed to allege

that GSK engaged in fraudulent conduct directed at consumers.  I have already concluded

that allowing plaintiffs to pursue unjust enrichment claims where their statutory claims

have failed would circumvent state legislative policies.[26]  Therefore, I will dismiss

plaintiffs' Idaho unjust enrichment claims.

### 9.    Iowa

GSK seeks dismissal of plaintiffs' Iowa unjust enrichment claim, arguing that

under Iowa law, a plaintiff "too remote" from the defendant may not state a claim for

---

[26]  Even if plaintiffs had presented authority in support of the argument that Idaho allows standalone unjust enrichment claims, I would dismiss this claim based on GSK's direct benefit argument.  In Hayden Lake Fire Prot. Dist. v. Alcorn, the Idaho Supreme Court affirmed the lower's court dismissal of an unjust enrichment claim and recognized a precedential Idaho Supreme Court ruling establishing that unjust enrichment claims require conferral of a direct benefit.  111 P.3d 73, 91-92, 141 Idaho 388 (Idaho 2005) (citing Beco Constr. Co., Inc. v. Bannock Paving Co., 118 Idaho 463, 797 P.2d 863 (1990)).  In Beco, the court considered a number of unjust enrichment cases in Idaho and noted that, in each, "the plaintiff and defendant had a contractual relationship or a claim to real property which were the underlying reasons for the unjust enrichment or quasi contract claims between the parties."  797 P.2d at 867.  This Court has also recognized that Idaho requires conferral of a direct benefit in order to maintain a cause of action for unjust enrichment.  See Powers v. Lycoming Engines, 245 F.R.D. 226, 232 & n. 19 (E.D.Pa. 2007).  Plaintiffs have cited no contrary authority.

unjust enrichment.  Appx. To Mot. To Dismiss, 17.  Plaintiffs have filed no Iowa statutory claims.  However, I believe that Iowa courts would not consider the injury suffered by plaintiffs here to be too remote from GSK's actions.  Additionally, Iowa law recognizes a broad standalone unjust enrichment remedy such that plaintiffs' autonomous Iowa unjust enrichment claim may proceed.

Iowa's antitrust statute "creates a cause of action for all consumers, regardless of one's technical status as a direct or indirect purchaser." Comes v Microsoft Corp., 646 N.W.2d 440, 452 (Iowa, 2002).  Faced with determining whether Comes applies to plaintiffs asserting antitrust claims against credit card companies, the Supreme Court of Iowa clarified that, "[b]ecause the plaintiffs in Comes qualified as indirect purchasers who had standing under state law, we had no need in that case to determine whether persons who were *not* indirect purchasers and who suffered injuries even more remote than those sustained by indirect purchasers had standing." Southard v. Visa U.S.A. Inc., 734 N.W.2d 192, 196 (Iowa, 2007).  The Southard court concluded that the plaintiffs in Comes were not too remote to assert antitrust claims because they "ultimately obtained the products [sold by defendants] through the stream of commerce." Id. (citing Comes v. Microsoft Corp., 696 N.W.2d 318, 320 (Iowa 2005)).  However, it ruled that the plaintiffs before it were *not* indirect purchasers and did *not* have standing under the antitrust statute because "they did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and MasterCard-debit processing services." Id. at 196-

97.  The court concluded that, because the plaintiffs did not ultimately obtain the products sold by the defendants, they had suffered only derivative injury and did not have antitrust standing.  Id. at 197-199 ("[The] plaintiffs are neither consumers of the defendants' products nor competitors of the defendants. Therefore, the plaintiffs are not 'participants in the relevant market,' and their injuries are not of the type sought to be compensated by antitrust laws.").

The indirect purchasers in this case fall into the same category as those in Comes and did not suffer derivative injuries as the non-consumer plaintiffs in Southard did. They obtained the product that was the subject of allegedly anticompetitive activity, Wellbutrin SR, through the chain of commerce.  The remaining question is whether this is strong enough evidence to recognize an exception in Iowa to my finding that standalone unjust enrichment claims generally cannot proceed where plaintiffs have no statutory cause of action.

The Iowa Supreme Court has been explicit and clear in its acceptance of unjust enrichment as a broad theory for recovery that does not depend on an underlying violation.  State of Iowa, Dept. of Human Services ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 149-150 (Iowa, 2001) ("[The] idea of unjust enrichment is deeply engrained in our law and is widely applied.  It not only cuts across many areas of law, such as contract and tort, but it also occupies much more territory that is its sole preserve.  It is a theory to support restitution, with or without the existence of some underlying wrongful

-105-

conduct.  Moreover, it . . . can stand on its own as an open-ended, broad theory of restitution.") (internal quotations and citations omitted)).  Because an Iowa court would recognize plaintiffs' unjust enrichment claim notwithstanding the lack of an underlying antitrust or consumer protection claim, I will deny GSK's motion to dismiss it.


### 10.    Illinois

In my decision on GSK's motion for judgment on the pleadings, I allowed the plaintiffs' Illinois unjust enrichment claim to proceed.  At that stage, plaintiffs had asserted no Illinois antitrust claim but had asserted a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), which I dismissed because plaintiffs are barred from asserting what are essentially antitrust claims under that statute.  See In re Wellbutrin SR Antitrust Litig., 263 F.R.D. at 214.  However, I allowed plaintiffs' Illinois unjust enrichment claim to proceed, distinguishing the cases cited by GSK where courts dismissed unjust enrichment claims after finding that the ICFA claims failed on the merits from those dismissed for a non-merits based reason.  See id. at 218.

I am now faced with the argument I only provisionally addressed in the motion for judgment on the pleadings: the end-run argument that plaintiffs cannot assert unjust enrichment claims where their statutory claims fail.  In accordance with the opinion of Judge Brody, I will grant GSK's motion to dismiss plaintiffs' autonomous unjust enrichment claims because plaintiffs have presented no evidence that Illinois expressly

recognizes such claims.

### 11.    Indiana

GSK seeks dismissal of plaintiffs' Indiana unjust enrichment claim on the ground that Indiana courts, having expressly addressed the availability of indirect purchaser remedies for antitrust violations, would not allow plaintiffs' claim to proceed.

GSK's argument is sound.  Upon invitation to overturn lower court dismissal of an indirect purchaser antitrust claim, the Court of Appeals of Indiana ruled that, because the Indiana legislature had not adopted an Illinois Brick repealer statute, the indirect purchaser's antitrust claims were properly dismissed.  See Berghausen v. Microsoft Corp., 765 N.E.2d 592, 596 (Ind. Ct. App. 2002); see also Brownsburg Cmty. Sch. Corp. v. Natare Corp., 824 N.E.2d 336, 348 (Ind. 2005) (citing Berghausen for the proposition that "Indiana courts have generally followed federal precedent in interpreting the Indiana Antitrust Act.").  The court in Berghausen also affirmed the dismissal of a restitution claim based on the alleged antitrust violations, reasoning that "[a] claim for restitution on behalf of indirect purchasers in an antitrust case implicates the same issues of multiple liability and duplicative recovery that were of concern in Illinois Brick."  Id. at 596, n.4. Plaintiffs have presented no authority that convinces me to abandon the Court of Appeals ruling.  Therefore, I will grant GSK's motion to dismiss plaintiffs' Indiana unjust enrichment claim.

### 12.    Kentucky

GSK seeks dismissal of plaintiffs' Kentucky unjust enrichment claim, arguing that Kentucky law requires a plaintiff suing for unjust enrichment to exhaust available administrative remedies against the defendant.[27]  Plaintiffs have filed no other Kentucky claims.  In Arnold v. Microsoft Corp., the Court of Appeals of Kentucky ruled (1) that indirect purchasers do not have standing to sue under Kentucky's antitrust statute, KEN. REV. STAT. ANN. § 446.070; and (2) that they may not recast monopoly claims as claims falling under Kentucky's unfair and deceptive trade practices act, KEN. REV. STAT. ANN. 367.170.  No. 2000-CA-002144-MR, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001).  I acknowledge that an unpublished opinion from the Court of Appeals of Kentucky is not the strongest possible authority supporting dismissal of plaintiffs' unjust enrichment claim, but because I believe a Kentucky court is better equipped than I to determine the legislative intent behind Kentucky's antitrust and consumer protection statutes, I will follow its reasoning insofar as it concluded that indirect purchasers do not have a cause of action under those statutes.  Because I have already ruled that, absent some strong evidence showing otherwise, plaintiffs may not assert autonomous unjust enrichment

---

[27]  The case GSK cites in support of this argument is inapposite.  Guarantee Elec. Co. v. Big Rivers Elec. Corp., 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987), concerns a specific statute, which requires the filing of a mechanics lien prior to initiating suit and applies to contract claims asserted by one who performs labor or furnishes materials - in Guarantee Electric, a subcontractor - when that plaintiff asserts claims against one with whom he is not in privity of contract.  Id.  The narrow scope of the mechanic's lien statute does not reach the type of unjust enrichment claim asserted here.

claims where they lack a statutory remedy, I will dismiss plaintiffs' Kentucky unjust enrichment claims.  At least one other court has ruled that, in light of Kentucky's indirect purchaser bar, it would subvert Kentucky's statutory scheme to allow plaintiffs to assert a common law unjust enrichment claim for antitrust damages.  In re Microsoft Corp. Antitrust Litig., 241 F. Supp. 2d 563, 565 (D.Md. 2003).

Plaintiffs have presented no authority establishing that Kentucky recognizes a standalone unjust enrichment claim, and therefore, I will grant GSK's motion to dismiss it.

### 13.    Louisiana

GSK claims plaintiffs' Louisiana unjust enrichment claim should be dismissed because the Fourth Circuit has explicitly issued a ruling on this issue.[28]  While I do not find the Fourth Circuit's ruling apposite, I will follow the Fifth Circuit's decision in Free v. Abbott Labs., 176 F.3d 298, 301 (5th Cir. 1999), holding that Louisiana courts would not allow indirect purchasers to pursue state antitrust claims.

The Fifth Circuit has ruled that if faced with the question of indirect purchaser standing under Louisiana's antitrust statute, the Supreme Court of Louisiana would find

---

[28]  GSK cites Aikens v. Microsoft Corp., 159 F. App'x 471, 477 (4th Cir. 2005). Authority from the Fourth Circuit, while relevant, is not binding on this court.  Moreover, the Fourth Circuit case cited by GSK is an unpublished opinion that is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case."  See Fourth Circuit Local Rule 32.1.

that indirect purchasers do not have standing to assert state antitrust claims.  See Free, 176 F.3d at 299-301 (noting that the Louisiana Supreme Court had denied certification on the question of indirect purchaser antitrust standing submitted to it by a Fifth Circuit panel and holding that "[i]n our best judgment, the Louisiana courts would follow the federal indirect purchaser rule and deny standing to the [indirect purchaser] appellants.") aff'd 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000).

Accordingly, I will dismiss plaintiffs' Louisiana unjust enrichment claim.  Because indirect purchasers lack standing to sue under Louisiana antitrust laws, allowing them to assert an autonomous unjust enrichment claim would subvert Louisiana's legislative choice.

### 14.  Massachusetts

I have found that plaintiffs' Massachusetts consumer protection claim must be dismissed due to plaintiffs' failure to meet mandatory pre-filing notice requirements. Indirect purchasers who meet this pre-filing requirement do have standing to pursue claims under MASS GEN. LAWS ch. 93A, which provides that a cause of action may be brought by "[a]ny person, [other than a businessperson entitled to bring an action under § 11], who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two."  MASS GEN. LAWS ch. 93A, § 9(1). Section 2 of the act provides that "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Id. § 9(2).  I have interpreted other such broadly worded statutes to cover plaintiffs' claims against GSK because filing sham patent litigation would qualify as an unfair and deceptive trade practice.

Therefore, the question here is whether the plaintiffs—indirect purchasers who would have standing to sue under MASS GEN. LAWS ch. 93A but who have failed to meet mandatory pre-filing notice requirements—should be able to assert a claim for unjust enrichment even though they cannot assert a cause of action under the consumer protection statute.  I will allow plaintiffs' unjust enrichment claims to proceed.  It is not circumventing any legislative bar on indirect purchaser actions under the Massachusetts consumer protection statute to allow for restitution as an alternative remedy.  See In re New Motor Vehicles, 350 F. Supp. 2d at 213.  Here, the plaintiffs are barred from asserting their Massachusetts claim solely because they have failed to allege that they served GSK with the mandatory pre-filing notice, not because GSK's alleged conduct is not covered under the relevant statute.  GSK has presented no authority that disgorgement of profits for violation of the consumer protection law is prohibited under Massachusetts law.

In Massachusetts, an unjust enrichment claim requires "unjust enrichment of one party and unjust detriment to another party."  Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).  "Massachusetts courts

emphasize the primacy of equitable concerns" in assessing unjust enrichment claims.  Id.;

accord Flonase 692 F. Supp. 2d at 545 (citing DeSanctis v. Labell's Airport Parking Inc.,

1991 Mass App. Div. 37, 40 (Mass. Dist. Ct. 1991)) (observing that in Massachusetts,

plaintiffs must prove some conduct by the defendant "which renders his retention of a

benefit at the expense of another contrary to equity and good conscience.").  In discussing

a claim for restitution by a plaintiff alleging a violation of Chapter 93A, the District Court

of Massachusetts observed that, "'[t]he relief available under c. 93A is sui generis. It is

neither wholly tortious nor wholly contractual in nature, and is not subject to the

traditional limitations of preexisting causes of action.'"  Linguistic Sys., Inc. v. U.S.

Pharmacopeial Convention, Inc., No. 07-10021-DPW, 2009 WL 723343 at *11 (D.Mass.

Mar. 11, 2009) (citing Kattar v. Demoulas, 433 Mass. 1, 12, 739 N.E.2d 246 (2000)).

Plaintiffs have made the requisite showing to state an unjust enrichment claim in

Massachusetts based on GSK's alleged retention of a benefit resulting from its

monopolistic control of the Wellbutrin SR market.  I will deny GSK's motion to dismiss

plaintiffs' Massachusetts unjust enrichment claim.


### 15.    Michigan

GSK seeks dismissal of plaintiffs' Michigan unjust enrichment claim on the

ground that Michigan requires conferral of a direct benefit.  Plaintiffs have also asserted

claims under Michigan's antitrust and consumer protection statutes.  I will allow their

antitrust claim to proceed but dismiss their consumer protection claim because they have failed to allege that GSK made misrepresentations directed at consumers, as is required to state a claim under Michigan's consumer protection statute.

In support of its argument, GSK cites A&M Supply Co. v. Microsoft Corp., where the Court of Appeals of Michigan affirmed dismissal of plaintiffs' antitrust claims for failure to prosecute, but noted that the unjust enrichment claims could have been dismissed on the merits because "there was no direct receipt of any benefit" by the defendants and, more specifically, because "Plaintiff here can point to no . . . direct contact between [the defendant] and the indirect purchasers in the class they seek to have certified."  No. 274164, 2008 WL 540883 at *2 (Mich. Ct. App. Feb. 28, 2008). However, as the court in In re TFT-LCD (Flat Panel) Antitrust Litig. observed, this case is not a Michigan Supreme Court case, and other courts have held that Michigan does not require direct contact between the parties in order to state a claim for unjust enrichment. 599 F. Supp. 2d at 1189 (citing  Kammer Asphalt Paving Co., Inc. v. East China Tp. Schools, 443 Mich. 176, 504 N.W.2d 635, 640-41 (1993); Morris Pumps v. Centerline Piping, Inc., 273 Mich.App. 187, 729 N.W.2d 898, 904-905 (2006); In re Cardizem CD Antitrust Litig., 105 F.Supp.2d 618, 670-71 (E.D.Mich.2000)).

I believe the Flat Panel ruling is persuasive.  The case cited by the court in A&M Supply Co. for the proposition that a claim for unjust enrichment requires conferral of a direct benefit, Bell Isle Grill Corp. v. City of Detroit, 256 Mich.App. 463, 666 N.W.2d

271, 280-81 (Mich. App. 2003) merely affirms that unjust enrichment requires that the court imply a contract, and that no contract will be implied where there is a valid contract covering the subject matter at issue.  I will deny GSK's motion to dismiss plaintiffs' Michigan unjust enrichment claim.

### 16.     Minnesota

GSK seeks dismissal of plaintiffs' Minnesota unjust enrichment claim, arguing that Minnesota courts have barred such claims because they circumvent Minnesota's adoption of Illinois Brick and because Minnesota's antitrust statute does not provide for an equitable remedy.  Appx. To Mot. To Dismiss, 10, 13.  I will allow plaintiffs' antitrust and consumer protection claims to proceed.  Minnesota's Illinois Brick repealer provision explicitly confers standing on "any person . . . injured directly or indirectly" by a violation of Minnesota's antitrust statute.  MINN. STAT. § 325D.57.  Because I will deny GSK's motion to dismiss plaintiffs' Minnesota antitrust and consumer protection claims, the plaintiffs will have an adequate remedy at law if they prove these claims.

The equitable remedy of unjust enrichment is available in Minnesota "whenever one man has received or obtained the possession or the money of another, which he ought in equity and good conscience to pay over." Klass v. Twin City Fed. Savings & Loan Ass'n, 291 Minn. 68, 190 N.W.2d 493, 494-95 (1971).  Recovery under a theory of unjust enrichment is available where there is no adequate remedy at law.  See Kinetic Co. v.

Medtronic, Inc., 672 F. Supp. 2d 933, 948 (D.Minn. 2009).  I believe that, because

Minnesota explicitly confers standing on indirect purchasers in antitrust suits, allowing a

claim for unjust enrichment would not circumvent legislative policy.  Where plaintiffs

have a remedy under a state's antitrust or consumer protection statutes, I will not dismiss

their unjust enrichment claims simply because equitable relief is not available in the

statute.

     GSK also claims that plaintiffs's claim should be dismissed because the antitrust

statute does not provide for an equitable remedy.  In support of its argument GSK cites

Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc., 493 N.W.2d 137, 140 (Minn. Ct.

App. 1992), where the Court of Appeals of Minnesota wrote that, "[r]elief under the

theory of unjust enrichment is not available where there is an adequate legal remedy or

where statutory standards for recovery are set by the legislature."  The court rejected

unjust enrichment claims where the plaintiffs could have sued the defendant in contract or

on a mechanics lien, but failed to do so.  Id.  Here, plaintiffs have not failed to seek a

remedy under Minnesota law, and present their unjust enrichment claim along with their

claim for damages under Minnesota's antitrust statute.[29]  The District of Minnesota has

recognized that a plaintiff's right to plead claims in the alternative allows for assertion of

---

[29]     Plaintiffs cite In re Lorazepam & Clorazepate Antitrust Litig., 295 F. Supp. 2d 30
(D.D.C. 2003), where the District of Columbia District Court denied motions to dismiss
Minnesota antitrust and unjust enrichment claims, allowing both to proceed.  This case, while
relevant, does not contain a discussion of the argument that an unjust enrichment claim must be
dismissed because the Minnesota antitrust statute does not allow for equitable relief.

a Minnesota unjust enrichment claim in addition to statutory claims.  See Kinetic, 672 F.

Supp. 2d at 948.

I believe that, because plaintiffs are entitled to plead in the alternative and *are*

pursuing their remedies under Minnesota antitrust law, there is no basis on which to

dismiss their unjust enrichment claim as far as that claim represents an alternative theory

of recovery.  Therefore, I will deny GSK's motion to dismiss plaintiffs' Minnesota unjust

enrichment claim.

### 17.   Missouri

GSK seeks dismissal of plaintiffs' Missouri unjust enrichment claim, arguing that

a direct benefit is required under Missouri law.  Appx. B to Mot. To Dismiss, 16.

Plaintiffs' only other Missouri-based claim is asserted under Missouri's consumer

protection statute, and I will deny GSK's motion to dismiss that claim.

In making its direct benefit argument, GSK cites CCA Global Partners, Inc. v.

Yates Carpet, Inc., No. 4:06-15, 2006 WL 2883376 at *10 (E.D.Mo. Oct. 5, 2006) and

Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enter., Inc., No. 08-04148, 2009

WL 2391769 (W.D.Mo. Aug. 3, 2009).  Neither of these cases advances GSK's

argument.

In Missouri, a plaintiff must prove three elements to assert a cause of action for

unjust enrichment: "(1) that the defendant was enriched by the receipt of a benefit; (2)

that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit." Exec. Bd. Of Missouri Baptist Convention v. Windermere Baptist Conference Ctr., 280 S.W.3d 678, 697 (Mo. App. W.D. 2009) (citing Miller v. Horn, 254 S.W.3d 920, 924 (Mo. App. 2008)). The court in CCA Global Partners addressed whether a counterclaim for unjust enrichment asserted by the defendant was valid. Pursuant to an agreement, rebates for purchases made by defendant Yates from third party suppliers went to plaintiff CCA. 2006 WL 2883376 at *1. Yates claimed CCA retained some of the rebates that should have been returned to him. Id. CCA argued that, because it received the benefits from the suppliers and not from Yates, there was no direct receipt of a benefit from Yates that could be the basis for an unjust enrichment claim. Id. at *10. The court denied the plaintiffs's motion to dismiss the unjust enrichment counterclaim, observing that the defendant had pleaded the necessary elements of an unjust enrichment claim—"1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of the fact of such benefit and 3) acceptance and retention of the benefit by defendant under circumstances where retaining it would be unjust"—and that "the mere fact the Plaintiff received the rebates directly from the suppliers instead of from Yates is meaningless for purposes of an unjust enrichment claim. No rebates, i.e. no benefit, would have been conferred upon the Plaintiffs without Yates' purchases." Id. This reasoning directly contradicts any argument that Missouri law requires the conferral of a direct benefit to state a claim for

unjust enrichment.

The court in <u>Speaks Family Legacy</u> simply did not rule that conferral of a direct benefit is necessary to state a claim for unjust enrichment in Missouri.  It granted a motion to dismiss an unjust enrichment claim on the ground that plaintiffs had conferred *no* benefit on the defendants, as the basis of their unjust enrichment claim was actually that, *but for* the defendants' wrongful conduct, they would have received a benefit.  <u>See</u> 2009 WL 2391769 at *4.

GSK has not provided any clear authority that Missouri courts require that a benefit flow directly from the plaintiff to the defendant to state a claim for unjust enrichment.  Plaintiffs have pleaded all the elements necessary to state a claim for unjust enrichment in Missouri—they assert that GSK unjustly retained profits from the sale of monopolized Wellbutrin SR to purchasers in the chain of commerce.  I will deny GSK's motion to dismiss this claim.

### 18.    Nevada

GSK argues that I should dismiss plaintiffs' Nevada unjust enrichment claim because Nevada's antitrust statute does not provide for equitable relief.  Appx. B To Def.'s Mot. To Dismiss, 13.  Plaintiffs have asserted a claim under Nevada's antitrust statute, and I will allow that claim to proceed.

In Nevada, the elements of an unjust enrichment claim are: "(1) a benefit conferred

on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment." Kennedy v. Carriage Cemetary Services, Inc., -- F.Supp.2d --, 2010 WL 2926083 at *5 (D. Nev. July 19, 2010) (citing Leasepartners Corp., Inc. v. Robert L. Brooks Trust, 113 Nev. 747, 942 P.2d 182, 187 (Nev.1997)). Nevada courts recognize that acceptance and retention of an indirect benefit is sufficient to state an unjust enrichment claim. See Topaz Mut. Co., Inc. v. Marsh, 108 Nev. 845, 856, 839 P.2d 606 (Nev. 1992).

It does not circumvent the Nevada antitrust statute to allow plaintiffs' unjust enrichment claim, and plaintiffs have stated a claim for unjust enrichment based on its allegation that GSK inequitably retained the benefits resulting from its monopolized sales of Wellbutrin SR. Because plaintiffs are entitled to seek an alternative measure for relief, I will allow their Nevada unjust enrichment claim to proceed.

### 19.    New York

GSK claims plaintiffs' New York unjust enrichment claims must be dismissed because New York courts have required a direct relationship—short of privity of contract but stronger than that between a manufacturer and a consumer along the chain of commerce—between the plaintiff and the defendant in order to state a claim for unjust enrichment.

-119-

GSK raised this argument in its motion for judgment on the pleadings, and I found

that, in light of relevant New York decisions, plaintiffs' relationship with GSK was too

attenuated to support an unjust enrichment claim there.  See In re Wellbutrin SR Antitrust

Litig., 263 F.R.D. at 216 (citing Sperry v. Crompton, 863 N.E.2d 1012, 1018 (N.Y.

2007); In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 532

(S.D.N.Y. 2008)).

Plaintiffs respond in the context of this motion that conferral of an indirect benefit

*is* sufficient to state an unjust enrichment claim in New York.  Because I have already

considered whether the harm to the plaintiff is sufficiently related to GSK's actions and

decided that it is not, I will not revisit this issue.  I will grant GSK's motion to dismiss

plaintiffs' New York unjust enrichment claim.[30]

### 20.    North Carolina

GSK seeks dismissal of plaintiffs' North Carolina unjust enrichment claim on two

grounds, arguing that the North Carolina Unfair and Deceptive Trade Practices Act, under

which plaintiffs have stated a claim, does not provide for an equitable remedy, and that

North Carolina requires conferral of a direct benefit in order to state a claim for unjust

---

[30]  GSK also argues two other grounds for dismissal of plaintiffs' New York unjust
enrichment claim—that allowing such a claim would circumvent the limitations inherent in New
York's antitrust statute, and that New York's antitrust statute, if applicable, does not provide for
an equitable remedy.  See Appx. B to Mot. To Dismiss, 11, 13.  Because I will dismiss plaintiffs'
claim on the ground discussed above, I will not address these arguments.

enrichment.  Appx. B to Mot. To Dismiss, 13.

To prevail on an unjust enrichment claim in North Carolina, the plaintiff must show that it (1) conferred a benefit on the defendant, (2) "the benefit was not conferred gratuitously or officiously," (3) that benefit was measurable, and (4) the defendant "consciously accepted the benefit."  Fireman's Fund Ins. Co. v. Safeco Ins. Co. of America No. 3:07-CV-86, 2007 WL 4233317 at *2 (W.D.N.C. Nov. 28, 2007) (citing Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C.Sup.Ct.1988)).  Because plaintiffs are entitled to plead in the alternative and they have stated a claim under the NCUDTPA, I will not dismiss their claim on the ground that the relevant statute does not provide for an equitable remedy.

GSK also claims that North Carolina requires conferral of a direct benefit.  In Flonase, Judge Brody addressed this question, finding that North Carolina courts require conferral of a direct benefit in order to state an unjust enrichment claim.  See In re Flonase Antitrust Litig., 692 F. Supp. 2d at 545.  Judge Brody relied on the North Carolina Court of Appeals decision in Effler v. Pyles, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989) in reaching this decision.  See id.  The Effler decision, as far as it addresses the requirements for unjust enrichment in North Carolina, consists of two paragraphs explaining the court's affirmance of entry of summary judgment in favor of the defendant on plaintiff's unjust enrichment claim.  See Effler, 380 S.E.2d at 152.  There, the plaintiff had helped her daughter and son-in-law purchase a house; after the plaintiff's daughter

-121-

died, the plaintiff's son-in-law remarried and transferred ownership in the property to his new wife.  Id.  Instead of suing her former son-in-law, the plaintiff sued the new wife, and the court ruled that the relationship between the husband and his new wife "did not satisfy plaintiff's burden of showing that she conferred a benefit directly on defendant (the new wife)."  Id.

At least one other court has found that Effler does not stand for a direct benefit requirement, and that plaintiffs' payment of higher prices for a product as a result of unlawful conduct on the part of the defendant is sufficient to state an unjust enrichment claim under North Carolina law.  See In re TFT-LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d 1179, 1190; see also Perkins v. HealthMarkets, Inc., No. 06-CVS-21053, 2007 WL 2570242, at *9 (N.C.Super.Ct. July 30, 2007).  Moreover, the Fourth Circuit Court of Appeals, in an unpublished decision, has stated that "[u]nder North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction."  Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 72 Fed.Appx. 916, 921 (4th Cir. 2003).

Because the cases following Effler place into serious question any argument that Effler stands for a direct benefit requirement in North Carolina, I do not believe this is a valid ground for dismissal of plaintiffs' North Carolina unjust enrichment claim.  I will deny GSK's motion to dismiss this claim.

### 21.    Oklahoma

GSK seeks dismissal of plaintiffs' Oklahoma unjust enrichment claim on the ground that Oklahoma requires conferral by the plaintiff of a direct benefit on the defendant.  Appx. B to Mot. To Dismiss, 16.  Plaintiffs asserted a claim under Oklahoma's consumer protection statute which I will dismiss because Oklahoma courts have determined that a plaintiff cannot, relying on the same underlying facts, recast an anticompetitive conduct claim as a claim under the consumer protection statute.  The Court of Civil Appeals of Oklahoma has ruled that the holding in Illinois Brick bars indirect purchasers from filing claims under Oklahoma's antitrust statute.  See Major v. Microsoft Corp., 60 P.3d at 513.

I believe allowing an unjust enrichment claim would circumvent Oklahoma's adoption of Illinois Brick, because plaintiffs are barred from asserting statutory antitrust or consumer protection claims in Oklahoma.  I will dismiss plaintiffs' Oklahoma unjust enrichment claim.[31]

---

[31]  In support of its direct benefit argument, GSK cites Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1280 (N.D. Okla. 2006), in which the District Court granted a motion to dismiss unjust enrichment claims against certain defendants.  I note that this case is factually inapposite.  The individual defendants against whom plaintiffs filed the unjust enrichment claim were sales agents of the co-defendant life insurance company, and they had not acted as selling agents to the plaintiffs or had any other specific contact with them.  Id.  Any monies paid to the insurance company were not, therefore, paid to the individual defendants. More importantly, the case cited by the Slover court does not stand for the proposition that an unjust enrichment claim requires conferral of a direct benefit.  In fact, in this case, N.C. Corff Partnership, Ltd. v. OXY USA, Inc., the Court of Appeals of Oklahoma stressed that, "[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has

### 22.    Pennsylvania

GSK claims plaintiffs' Pennsylvania unjust enrichment claim should be dismissed because a Pennsylvania court has addressed the issue of whether unjust enrichment is available as an alternate remedy when antitrust claims are barred.  Appx. B to Mot. To Dismiss, 11.  GSK also argues plaintiffs' claim should be dismissed because plaintiffs did not confer a direct benefit on GSK when they purchased Wellbutrin SR.  Id. at 16.

Plaintiffs do not assert claims under any antitrust statute in Pennsylvania.  No private remedy for antitrust damages exists in Pennsylvania.  See Stutzle v. Rhone-Poulenc S.A., No. 002768, 2003 WL 22250424 at *2 (Pa. Com. Pl. Sep. 26, 2003); In re K-Dur Antitrust Litig., No. 01-1652, 2008 WL 2660780 at *4 (D.N.J. Feb. 28, 2008) (collecting cases holding that no private antitrust remedy exists in Pennsylvania). Plaintiffs, have, however, stated a viable claim under Pennsylvania's consumer protection statute, and GSK does not argue that restitution would be an inappropriate remedy under that statute.  Therefore, I do not believe allowing plaintiffs' unjust enrichment claim to proceed would circumvent state legislative intent, since indirect purchasers do have a claim based on GSK's alleged acts.  The K-Dur court only considered whether plaintiffs' failure to state a claim under Pennsylvania antitrust law barred its unjust enrichment claim, and was not presented with the question whether plaintiffs' ability to plead a

---

come to him at the expense of another . . . [It] arises . . . where an expenditure by one person adds to the property of another."  929 P.2d 288, 295 (Okla. App. 1996) (citing 66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1973)).

consumer protection claim opened the door to an alternatively pleaded unjust enrichment claim.  2008 WL 2660780 at *4-5; see also Dynamic Random Access Memory (DRAM) Antitrust Litigation, 516 F. Supp. 2d 1072, 1100 (N.D.Cal. 2007).  Moreover, at least one other court has allowed unjust enrichment claims to stand where plaintiffs have adequately stated a consumer protection claim.  See New Motor Vehicles, 350 F. Supp. 2d at 213 ("[T]he request for the alternate restitutionary remedy will remain for those states where I have concluded that indirect purchaser plaintiffs may pursue the consumer protection remedy.").  Because I will allow plaintiffs' Pennsylvania consumer protection claim to proceed, it does not subvert Pennsylvania's expressed legislative intent to allow their unjust enrichment claim to proceed as well.

However, GSK also argues that, in order to state a claim for unjust enrichment in Pennsylvania, a plaintiff must have had a direct relationship with the defendant.  In support of its argument, GSK cites Stutzle, where plaintiffs' unjust enrichment claims were dismissed because they were "indirect purchasers and had no direct dealings with defendants."  2003 WL 22250424 at *1 (noting that "[p]erhaps defendants appreciated the value of the benefits, but any unjust enrichment claim would belong to the direct purchasers, not to indirect purchasers[.]").  Obviously, a case from the Court of Common Pleas operates as persuasive authority only and does not carry the weight a declaration from the Supreme Court of Pennsylvania would.

Although courts in this District may appear to be divided on the reach of unjust

enrichment in Pennsylvania, I believe any difference is essentially one of wording.
Compare Goldsmith Assoc., Inc. v. Del Frisco's Rest. Grp., LLC, No. 09-1359, 2009 WL
3172752 at *5 (discussing relevant Pennsylvania precedent and concluding that, while a
plaintiff need not have *contracted* directly with the defendant in order to maintain an
unjust enrichment claim, he or she must allege "facts showing that the defendants
specifically requested benefits or misled [the plaintiff].") with Global Ground Support,
LLC v. Glazer Enter., Inc., 581 F. Supp. 2d 669, 676 (E.D.Pa. 2008) ("The claim of
unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does
not require that plaintiff 'directly confer' those benefits.").  Courts to have addressed this
issue are in agreement that the key inquiry in determining whether a Pennsylvania unjust
enrichment claim may proceed is whether the defendant received a benefit *unjustly*, and
that while *direct* conferral of a benefit is not required, the relationship between plaintiff
and defendant may not be too remote.  See Century Indem. Co. v. URS Corp., No.
08-5006, 2009 WL 2446990 at *6-9 (E.D.Pa. Aug. 7, 2009) (rejecting an unjust
enrichment claim as too remote where "any benefit from Plaintiff to Defendant was
filtered through two independent layers of auditing"); Powers v. Lycoming Engines, 2007
WL 2702705 at *3 (allowing unjust enrichment claim of a purchaser of an airplane part
who did not purchase the part directly from the manufacturer, and reasoning that "[t]he
plaintiffs need not have purchased the product at issue directly from Lycoming to have
'conferred benefits on the defendant.'").

-126-

The relationship between plaintiffs and GSK is not so remote that plaintiffs' unjust enrichment claim should be dismissed outright.  I believe the Pennsylvania Supreme Court would conclude that the plaintiffs' purchase of Wellbutrin SR was a benefit conferred on GSK even though plaintiffs did not purchase the drug directly from GSK.  GSK also cites Stutzle in arguing that Pennsylvania requires conferral of a direct benefit in order to maintain an unjust enrichment claim.  I do not believe Stutzle stands for a direct benefit requirement, and as stated above, the general thrust of relevant cases in Pennsylvania is that unjust enrichment claims require, first and foremost, that the defendant have unjustly retained a benefit.  The case cited by Stutlze concerning directness is Phillips v. Selig, No. 1550, 2001 WL 1807951 at *8 (Pa. Com. Pl. Sep. 19, 2001).  In that case, the plaintiffs, a law firm that had represented a baseball umpires' union before essentially being abandoned by the umpires in favor of a newly formed union represented by a different attorney, sued the newly formed union, which it had never represented and for which it had provided no services.  Id.  The court rejected the unjust enrichment claim on the ground that the plaintiffs had conferred no benefit on the *new* union.  Id.  There was no allegation that any services provided by the plaintiffs had been provided to the new union.  Here, the plaintiffs allege that monies they paid for Wellbutrin SR *did* end up in the hands of GSK.

I will therefore deny GSK's motion to dismiss plaintiffs' Pennsylvania unjust enrichment claim.  GSK's argument concerning the availability and direct benefit

requirement of Pennsylvania unjust enrichment claims is based on one case, and other courts in this District have allowed claims similar to the one asserted here to proceed. This will not result in circumvention of a statutory bar on indirect purchaser claims, since Pennsylvania allows indirect purchasers to sue under its consumer protection law.

### 23.    Rhode Island

GSK seeks dismissal of plaintiffs' Rhode Island unjust enrichment claim.  The plaintiffs asserted a claim under Rhode Island's consumer protection statute that I will dismiss, because Rhode Island's statute has been strictly construed to apply only to purchasers of products for household or personal purposes.  Therefore, the plaintiffs have no statutory claims in Rhode Island.

GSK claims plaintiffs' Rhode Island unjust enrichment claim should be dismissed because Rhode Island's antitrust statute does not provide an equitable remedy.  This argument is inapposite, since plaintiffs asserted claims under Rhode Island's consumer protection statute.  However, because plaintiffs have *no* statutory Rhode Island claims remaining, and have not presented relevant case law establishing that Rhode Island recognizes a broad, standalone unjust enrichment claim, I will grant GSK's motion to dismiss this claim.

24.  **Tennessee**

GSK claims plaintiffs' Tennessee unjust enrichment claim must be dismissed

because a plaintiff alleging unjust enrichment in Tennessee must exhaust administrative

remedies against a party with whom they are in privity before filing suit.  Appx. B to Mot.

To Dismiss, 18.[32]  Plaintiffs have asserted no Tennessee statutory claims.  Although it is

undisputed that indirect purchasers may bring claims under Tennessee's antitrust statute,

see Sherwood v. Microsoft Corp. No. M2000-01850-COA-R9-CV, 2003 WL 21780975

at *29 (Tn. Ct. Appeals 2003), there is some question about whether Tennessee's antitrust

statute applies to monopolization claims that are not primarily intrastate in character.

*Compare* Blake v. Abbott Laboratories, Inc., No. 03A01-9509-CV-00307, 1996 WL

_____

[32] In support of its privity argument, GSK cites Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525-26 (Tenn. 2005), in which the Supreme Court of Tennessee set forth the basic elements of an unjust enrichment claim—that plaintiff conferred a benefit on the defendant; that defendant appreciated the benefit; and that it would be inequitable for the defendant to retain the benefit—and articulated a fourth element: "plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract."  Freeman, 172 S.W.3d at 525.  Although the cases cited by the Freeman court involved a requirement that a contractor or subcontractor obtain a mechanics lien against the party owing them payment for work or materials, the Freeman court extended this exhaustion requirement to the case before it, where the plaintiff alleged a price-fixing conspiracy. Id. at 525-26 (citing Paschall's Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 153-54; Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998)).  It recognized an exception to the exhaustion requirement where pursuit of a remedy "would be futile," but ruled that "a bare allegation that any attempt to exhaust its remedies against the [defendant] would be futile" is not sufficient to establish futility.  Id. at 526.
     Therefore, it does appear that a Tennessee court would require at least that plaintiffs plead an attempt to exhaust administrative remedies or in some way demonstrate that an attempt would have been futile.  Plaintiffs' Tennessee unjust enrichment claim would therefore likely fail on this ground, as they have not pleaded exhaustion of remedies against GSK.

134947 (Mar. 27, 1996) (finding that, concerning plaintiffs' claims under the Tennessee's

Consumer Protection Act and Trade Practices Act, "[i]f it is determined that the acts

complained of predominately affect interstate commerce, the defendants must prevail."),

*with* <u>In re Cardizem</u>, 105 F. Supp. 2d at 667 (finding that the same Tennessee statutes

"are not limited to anticimpetitive conspiracies that are hatched and implemented solely

or predominantly in Tennessee; they do not apply 'only to transactions that are intrastate

in character.'").  Therefore, a lack of indirect purchaser standing or failure to allege

intrastate conduct are not a bar to plaintiffs' statutory claims.

However, I believe the absence of an arrangement or conspiracy between two

actors *is* a bar to plaintiffs' assertion of Tennessee statutory claims.  Tennessee's Trade

Practices act is aimed solely at "arrangements, contracts, agreements, trusts, or

combinations between persons or corporations made with a view to lessen, or which tend

to lessen, full and free competition."  TEN. CODE ANN. § 47-25-101.  Because plaintiffs

do not allege an arrangement or agreement, I believe their claims do not meet the

substantive requirements of Tennessee's antitrust act.  Allowing them to state an unjust

enrichment claim would circumvent this legislative bar.  Because plaintiffs have not

provided convincing authority establishing that Tennessee courts recognize an

autonomous unjust enrichment claim, I will grant GSK's motion.

### 25.   Texas

GSK argues for dismissal of plaintiffs' Texas unjust enrichment claim on two grounds: first, because the Texas antitrust statute does not provide for an equitable remedy; and second, because Texas law requires that an unjust enrichment plaintiff not be too remote from the defendant.  Appx. B to Mot. To Dismiss, 14, 17.  Plaintiffs have not asserted antitrust or consumer protection claims in Texas.  Texas has adopted the reasoning of Illinois Brick and does not allow indirect purchasers to file suit under its antitrust statute.  Abbott Laboratories, Inc. (Ross Laboratories Div.) v. Segura, 907 S.W.2d 503 (Tex. 1995).  The Supreme Court of Texas has also ruled that indirect purchasers are barred from bringing claims under the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. §§ 17.41-17.63), when the predicate acts supporting each claims are virtually the same.  See id. at 505-06 ("Allowing the [indirect-purchaser] intervenors to sue under the DTPA on allegations that are virtually identical to the antitrust allegations  . . . would essentially permit an end run around the policies allowing only direct purchasers to recover under the Antitrust Act.").

Plaintiffs argue that Texas recognizes the assertion of an autonomous unjust enrichment claim, citing Walker v. Cotter Props., 181 S.W.3d 895 (Tex. App. Dallas 2006).  In Texas, "[the] unjust enrichment doctrine applies principles of restitution to disputes where there is no actual contract and is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution."

<u>Walker</u>, 181 S.W.3d at 900.  However, the <u>Walker</u> court explicitly stated that unjust enrichment "is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passive received under circumstances which give rise to an implied or quasi-contractual obligation to pay."  <u>Id.</u> One of the cases relied on by the <u>Walker</u> court also explicitly links the availability of the unjust enrichment remedy to one party's failure to deliver on a contractual obligation. <u>See</u> <u>id.</u> (citing <u>Oxford Finance Companies, Inc. v. Velez</u>, 807 S.W.2d 460, 465 (Tex. App. Austin, 1991), which states that "[u]njust enrichment is not an independent cause of action; however, an action for restitution based on unjust enrichment will lie "to recover money received on a consideration that has failed in whole or in part.").  Plaintiffs' argument that Texas courts view unjust enrichment as an independent cause of action is therefore unsupported.

Because a Texas court would not allow the end-payor plaintiffs to file their claims under either Texas's antitrust statute or its consumer protection statute, allowing plaintiffs' unjust enrichment claims would result in an end-run around this policy. Therefore, I will dismiss plaintiffs' Texas unjust enrichment claims.

### 26.    West Virginia

GSK claims plaintiffs' West Virginia unjust enrichment claim should be dismissed, citing two grounds: that allowing plaintiffs' West Virginia claim will result in

an end-run around its statutory limitations, and that West Virginia's antitrust statute does not allow for equitable remedies.  Appx. B to Mot. To Dismiss, 11, 14.  I will allow plaintiffs' claims under West Virginia's broadly-worded antitrust statute to proceed.

GSK cites Veolia ES Special Serv., Inc. v. Techsol Chem. Co., No. 07-0153, 2007 WL 4255280 (S.D.W.Va. Nov. 30, 2007) in arguing that allowing plaintiffs to assert their unjust enrichment claim would circumvent the limitations of West Virginia law.  In Veolia, the plaintiff asserted a claim for unjust enrichment based on the defendant's failure to meet its contractual obligations to pay plaintiff for its cleanup of an oil spill.  Id. at *1-2.  The plaintiff's primary claim was under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which the court characterized as a "a strict liability statute [that] requires no wrong-doing or culpability for a defendant to be held responsible."  Id. at *10.  Allowing the plaintiff to claim unjust enrichment based on a strict liability statute, the court found, would "effectively permit the plaintiff to indirectly assert a tort claim while circumventing essential tort principles," reasoning that "allegations required to show that a party meets a statutory definition for strict liability are far different than allegations required to show that a party created an unjust-in West Virginia, inequitable and unconscionable-situation."  Id.[33]  GSK claims this language somehow addresses plaintiffs' unjust enrichment claim, which is based not on a strict

---

[33]  The court concluded that the plaintiff's unjust enrichment claim was inappropriate because "[t]he allegations required to show that a party meets a statutory definition for strict liability are far different than allegations required to show that a party created an unjust—in West Virginia, inequitable and unconscionable—situation."

liability statute but on GSK's unjust retention of profits it obtained through the sale of monopolized goods.  In other words, plaintiffs *do* allege an underlying wrong here, and because they have standing to sue under West Virginia's antitrust statute, allowing them to state an alternate restitution claim does not circumvent any express legislative policy.

Alternatively, GSK argues for dismissal of this claim on the ground that West Virginia's antitrust statute does not provide for an equitable remedy.  I will allow plaintiffs to assert a claim for restitutionary relief when they have a remedy available to them at law.  Therefore, I will deny GSK's motion to dismiss plaintiffs' West Virginia unjust enrichment claim.

### 27.    Wisconsin

GSK claims plaintiffs' Wisconsin unjust enrichment claim should be dismissed because Wisconsin courts require conferral of a direct benefit.  Appx. B to Mot. To Dismiss, 16.  Plaintiffs have asserted a claim under Wisconsin's antitrust statute which I will allow to proceed.

Under Wisconsin law, in order to state a claim for unjust enrichment, the plaintiff must prove the following elements: "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." Watts v. Watts, 137 Wis.2d 506, 531,

405 N.W.2d 303 (Wis. 1987) (internal citations omitted).  GSK claims <u>In re Wright</u>, 196

B.R. 97, 103 (Bankr. W.D. Wis. 1995), mandates dismissal of plaintiffs' unjust

enrichment claim.[34]  The court in <u>Wright</u> dismissed an unjust enrichment claim.  The

plaintiff, a bank that intended to secure its interest in a debtor's assets but failed to do so,

sued another creditor that stood to benefit from the value of the loan the bank had issued

to the debtor.  <u>Id.</u> at 98-99.  The court reasoned that the plaintiff bank's unjust enrichment

claim against the other creditor could not stand because the other creditor was not

responsible for the bank's failure to secure its interest, and any advantage the other

creditor gained was not procured by any action it had taken.  <u>Id.</u> at 103 ("In the absence of

appropriate action by the bank to perfect its security interest, it cannot contend that CFSA

was unjustly enriched by the mere operation of law.").

I do not believe that <u>Wright</u> supports GSK's direct benefit argument.  Here,

plaintiffs have alleged that they conferred a benefit on GSK by paying for Wellbutrin SR

in a monopolized market, and that GSK's own actions were designed to and created these

inflated prices.  In other words, the plaintiffs have alleged that GSK took actions that

caused plaintiffs to pay a higher price and that GSK then benefitted from plaintiffs'

payment of a higher price.  I believe this is sufficient to state a claim for unjust

enrichment in Wisconsin and I will therefore deny GSK's motion to dismiss plaintiffs'

---

[34]  GSK also cites <u>A.B. Data, Ltd. v. Graphic Workship, Inc.</u>, No. 99-2813, 2000 WL
1742440 at *3 (Wis. Ct. App. Nov. 28, 2000).  However, this case sets forth the basic elements
of a Wisconsin unjust enrichment claim and provides no additional commentary on any direct
benefit requirement.

Wisconsin unjust enrichment claim.


V.     **CONCLUSION**

All named plaintiffs have stated at least one cause of action I will allow to

proceed.

- Plaintiff IBEW has stated consumer protection claims in Florida and
  Missouri and unjust enrichment claims in Massachusetts and Missouri;

- Plaintiff Sheet Metal Workers has stated a consumer protection claim in
  Florida;

- Plaintiff the UA Plan has stated an antitrust claim in West Virginia and an
  unjust enrichment West Virginia;

- Plaintiff the AFL Plan has stated a consumer protection claim in Florida;

- Plaintiff the UFCW Plan has stated antitrust claims in Arizona, Michigan,
  Minnesota, Nevada, and Wisconsin; consumer protection claims in
  Arkansas, California, Florida, Minnesota, Missouri, and Pennsylvania; and
  unjust enrichment claims in Arizona, Iowa, Michigan, Minnesota, Missouri,
  Nevada, Pennsylvania, and Wisconsin;

- Plaintiff Sidney Hillman Health Center has stated an antitrust claim in
  North Carolina, consumer protection claims in Florida and North Carolina,
  and unjust enrichment claims in North Carolina.

Therefore, I will grant GSK's motion in part and deny it in part.  Because each named end-payor plaintiff has asserted at least one viable cause of action, I will consider the end-payor plaintiffs' pending motion for class certification.  That ruling will be filed separately from and subsequent to the ruling in this opinion.

An appropriate order follows.